Stephen D. Weisskopf (SBN 213596)
sweisskopf@levatolaw.com
LEVATOLAW, LLP
2029 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone:  310-734-2026

Attorneys for PLUTOS SAMA
HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUTOS SAMA HOLDINGS, INC. | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| JAGEX LIMITED, SHANHAI HONGTU NETWORK TECHNOLIGIES, LLC, SHANGHAI HONGTU NETWORK TECHNOLOGIES TRUST, HUARONG TRUST, MINSHENG TRUST and DOES 1-20 | 1. **RICO Violations**<br>2. **Conversion**<br>3. **Tortious Interference With Contract**<br>4. **Tortious Interference with Prospective Economic Advantage**<br>5. **Violations Cal. Corp. Code § 25401** |
| Defendants. | **JURY TRIAL DEMANDED** |

1

Plaintiff, Plutos Sama Holdings, Inc. ("Plaintiff" or "PSH"), a Delaware corporation with its principal place of business located in Irvine, California, brings this Complaint against Defendants Jagex Limited ("Jagex"), Shanghai Hongtu Network Technologies LLC ("SHNT LLC"), Shanghai Hongtu Network Technologies Trust ("SHNT Trust"), Huarong Trust ("Huarong") and Minsheng Trust ("Minsheng") (collectively, the "Defendants").  PSH hereby complains and alleges as follows:

## I. NATURE OF THE ACTION

In this action, Plaintiff seeks to enjoin the Defendants from conducting a sale of an asset called "Jagex".  This action arises from the unlawful actions of the Defendants aimed at laundering ill-gotten funds through the investment in a legitimate United States business.  The Defendants' unlawful and tortious conduct has interfered with the Plaintiff's legal acquisition and operation of Jagex as a one hundred percent subsidiary of SHNT (the "Jagex Transaction") located in Irvine, California and Cambridge, England as well as Plaintiff's transaction to acquire licensure rights to expand Jagex. Unbeknownst to the Plaintiff, prior to and throughout its acquisition(s) of Jaxex, Defendants had been receiving financial renumeration from the former owner of SHNT in violation of the Foreign Corrupt Practices Act to make certain that the Defendants sold Jagex back to an entity involved, connected with, or introduced by its former owner, Yan Jinggang ("Yan").

On January 11, 2021, it was publicly announced on the US internet that China sentenced the former Chairman of Huarong Trust (an entity which will be identified in detail in this pleading) to death for taking over $200,000,000 USD in alleged bribes and of the loans often reported in the trade journals in China giving rise to this sentence was the loans made to SHNT.  It was the firm belief of Plaintiff that Defendants would not repeat such egregious conduct; yet here we are again and this time it has impacted two US companies and damaged Plaintiff for playing by the rules.

## II. JURISDICTION

1.      The Source of subject matter jurisdiction in this Court arises under the laws of the United States.  28 U.S.C. §§ 1331 and 1337.

2.      This Court has personal jurisdiction over the Defendants and venue is proper in this Court pursuant to 18 U.S.C.A. § 1965(b) because Jagex held itself out as doing business in Irvine, California and all Defendants have minimum contacts with the United States by and through this action.

## III. PARTIES

3.      The Plaintiff, PSH, is a Delaware corporation with a principal place of business at 400 Spectrum, Irvine CA 92618.

4.      Defendant Jagex was acquired by Macarthur Fortune Holding, LLC ("Macarthur"), a company with its principal place of business located at 18300 Von Karman, #760, Irvine, CA 92818, in April of 2020.   Upon information and belief, Macarthur still owns Jagex.

5.      Defendant SHNT LLC is a resident of Beijing China and has invested his illicit bribery proceeds in legitimate US businesses located in Irvine, California.

6.      Defendant SHNT Trust is a resident of Beijing China and has invested his illicit bribery proceeds in legitimate US businesses located in Irvine, California.

7.      Defendant Huarong Trust is a resident of Beijing China and has accepted interfered and interfered with Plaintiffs legitimate interests located in Irvine, California.

8.      Defendant Minsheng Trust is a resident of Beijing China and has accepted interfered and interfered with Plaintiffs legitimate interests located in Irvine, California.

9.      Plaintiff does not currently know the names of DOEs 1 through 20 and, therefore, sues said defendants by such fictitious names.  Plaintiff alleges that each DOE defendant is in some way liable and at fault for the occurrences alleged herein, and each DOE defendant is responsible for the damages incurred by Plaintiff.  Plaintiff

will amend this Complaint to allege the DOE defendants' true names and capacities when ascertained.

10.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, Defendants and each of the DOE defendants were the agents, servants, partners, affiliates, employees, co-conspirators and/or joint-ventures of their co-defendants and in doing the things alleged in this Complaint, were acting pursuant to the conspiracy alleged herein.

### IV. RELEVANT NON-PARTY INDIVIDUALS AND ENTITIES

11.     Mr. Yan is, upon information and belief, residing in Orange County, California and was the former 85% owner SHNT by and through his ownership of its former owner and listed company on the Shanghai Stock Exchange SSE:600634.

### V. FACTUAL BACKGROUND

12.     Jagex is not merely a company.  Based in Cambridge, England, Jagex is a PC gaming powerhouse and within the gaming community, it has become an empire which has withstood the test of time. The most well-known game produced by Jagex is RuneScape.  RuneScape is a virtual world where players can become their own heroes by completing quests and traveling through different landscapes with their teammates while searching for riches and battling rivals.  RuneScape has been on the market for over 20 years and has amassed 260 million players, easily making it an asset worth over $1 billion USD.[1]  While RuneScape is its most popular and profitable game, Jagex also offers other eSports games on its platform. Considering the level of loyalty, brand familiarity, and goodwill maintained by Jagex, it exceeds the scope of a mere business and should instead be considered a unique, one-of-a-kind asset.

PSH's Initial Involvement with Jagex

13.     The facts of this case unfold as if they were the plot of a blockbuster international suspense film.  In November of 2018, PSH learned of an opportunity to

---

[1] *See* Jagex Website, https://www.jagex.com/en-GB/products

acquire Jagex.  PSH researched the proposed transaction and after determining that Jagex was a very successful, unique, and valuable asset, it determined to bid on Jagex at auction. At the time, Jagex was owned by Shanghai Fukong as identified above the publicly listed company on the Shangha Stock Exchange SSE:600634 ("SSE:600634" or the Listed Company), who purchased it in 2015 for $350MM USD.[2] Fukong held Jagex in a wholly owned subsidiary of SSE:600634 called Shanghai Hongtou Network Technologies ("SHNT"), which was fully owned by SSE:600634 SHNT/Fukong's asking price for Jagex was achieved by launching an auction and soliciting bids from eleven bidders to which Plaintiff was one.  Originally secured at $500MM USD, the offer was later adjusted up to $530MM USD.  In June 2019, PSH successfully won the auction and Jagex was later acquired for the listed price of $530MM USD. The following press release was issued by the Listed Company that provided, in pertinent part:

> *The board of directors and all directors of the company guarantee that there are no false records, misleading statements or major omissions in the contents of this announcement, and bear individual and joint responsibility for the truthfulness, accuracy and completeness of the contents.*

> *Shanghai Fukong Interactive Entertainment Co., Ltd. (hereinafter referred to as "Company" and "Fukong Interactive") issued the "Prompt Announcement of Shanghai Fukong Interactive Entertainment Co., Ltd. on the Planning of the Sale of Major Assets" on January 23, 2019. Announcement No.: Pro 2019-019), Shanghai Hongtou Network Technology Co., Ltd. (hereinafter referred to as "Hongtou Network"), a wholly-owned subsidiary of the company, intends to sell its wholly-owned subsidiary, Jagex Limited (hereinafter referred to as " Jagex") 100% equity (hereinafter referred to as "target asset 1").*

> *On February 20, 2019, the company issued the "Shanghai Fukong Interactive Entertainment Co., Ltd. Announcement on the Progress of Planning the Sale of*

---

[2] *See* https://www.en.wikipedia.org/wiki/Jagex

*Major Assets and the Announcement of the Prospective Transferee of the Public Offering" (Announcement No.: Pro 2019-038), Hongtou The network intends to jointly 100% equity of Jagex together with 100% equity of Hongtou Network (Hong Kong) Co., Ltd. (hereinafter referred to as "Hongtou Hong Kong") (hereinafter referred to as "Target Asset 2", the underlying assets and the underlying assets 2 are collectively referred to as "target assets". Packaged for sale (hereinafter referred to as "this transaction" or "this major asset sale" or "this sale"), the company intends to openly collect the intended transferee.*

*I. The latest progress of this major asset restructuring:*

*The company has publicly collected the intended transferee and publicly invited the transferee to make quotations and other procedures. As of the disclosure date of this announcement, the progress of this major asset restructuring is as follows:*

*Beginning on April 15, 2019, the company began to conduct business negotiations on the contents and terms of the equity transfer agreement with a number of proposed transferees who submitted the quotation application materials and confirmed by the company's evaluation team. On May 3, based on the negotiations with the proposed transferee, the company finally determined Platinum Fortune, LP as the ultimate transferee of the major asset sale. **The transferee is a limited partnership established by PlatosSama Holdings, Inc. for the transaction.** Founded by leading American lawyers and financial professionals, Plutos Sama Holdings, Inc. is involved in global M&A transactions, intellectual property litigation, international trade disputes, corporate finance, M&A financing, real estate investment, non-performing asset acquisition and management. Its main partner-controlled company now has offices in several US states as well as the UK, Germany, Poland and the Middle East. The earliest investment management business within the corporate system controlled by its main partner began in 1978. Its main partners control hundreds of employees.*

14.     PSH verified its funds through its limited partner and executed a Stock Purchase Agreement ("SPC") to formalize the purchase.

1

<u>Fukong and SHNT's Association with Yan</u>

2      15.    Upon information and belief, SHNT's sale of Jagex was necessary

3   because the Listing Company was in severe financial distress.[3]  After PSH acquired

4   Jagex, PSH began receiving troublesome communications from third parties who

5   alleged that SHNT's financial distress was a result of participation in an alleged

6   fraudulent pier to pier lending scheme in China impacting over 30,000 victims and

7   1,200 shell companies (the Yan "P2P Scheme").  The discovery and investigation of

8   the scheme caused several key executives to flee China due to allegations of

9   misappropriation of billions of dollars in corporate funds.  For the sake of brevity, PSH

10   repeats only one of them that it collected and has redacted the person name for his own

11   stated fear of life as set forth below.  The format that PSH requested from each victim

12   was a Who, What, Where, How and When question and answer format:

13

14   Q:      Who the victim is. (So (a) Name (in English so a first last middle name);
        (b) Address (i) residence (ii) Email (iii) We Chat; Date of Birth, copy of
15      identification.

16   A:      There are about 30,000 victims all over China.  It is easy to find hundreds
        of victims but may be difficult to find them all.  I am [REDACTED] and I live in
17      Beijing.

18

19   Q:      Who the bad guys are — what they promised and told them— what was
        the expectation.

20

21   A:      Mr.    Liang Zhenbang  is    establisher    and    controller    of
        Jiangsu Baobei Company, the P2P platform, who was arrested about one year
22      ago by  the  police of Nanjing,  where Baobei was  registered. Mr.  Yan Jinggang is
        establisher    and    controller    of    Shanghai Zhongji Group,    shareholder
23      of Fukong. Baobei Company was established in 2013 and had been operating P2P
        since then. On 13th July, 2018, Baobei Company stopped repay the principal and
24      interest to the investors. It declared that it had a balance of 3.3 billion RMB, in
25      which about  1 billion  has  been  lent  to  individual  debtors,  while  the  other

26   _____

    [3] *See* SSE:600634 listing board SHANGHAI STOCK EXCHANGE (sse.com.cn)
27   https://sse.com.cn/home/search/index.shtml?webswd=600634.  See also China's Fukong to Sell Main UK Game
    Asset Jagex for USD530 Million to Pare Debt (yicaiglobal.com) https://www.yicaiglobal.com/news/china-
28   fukong-to-sell-main-uk-game-asset-jagex-for-usd530-million-to-pare-debt-

2.37 billion had been "lent" to Zhongji Group. Before that, Baobei told the investors that 2,300 small companies borrowed the money, one million for each one. In July 2018, Zhongji promised in a letter to repay 50 to 100 million in 3 month, but it did not repay the money.

Now, the police of Nanjing has issued 3 public reports about this case. These reports said that Liang Zhenbang was suspected to have two crimes, illegally absorbing public deposits and fraud in raising funds. However, None of the police reports mentioned Zhongji or Yan Jinggang. We think the reason may be to protect the interest of other big creditors of Zhongji, such as Huarong and Minsheng.

Q:      The identities and connections of the bad guys and anything that says or leads us to believe they are in America and California in particular. Concisely explain how they stole the money. And what date how was discovered and what the government has done if anything including any specific lawsuits pleadings or documents that show the person has been indicted or wanted as a criminal or tried as a criminal even though they are not there. Any warrants for his arrest or any information that demonstrates clearly and unequivocally that the money was stolen and who stole it. All of the information that you have that leads you to believe they are in America and what information that you have.

A:      A lot of people including some policemen said that Yan Jinggang had been out of China since 2017, before CSRC (China Securities Regulatory Commission) started investigation on Mr Yan in January 2018. I don't know his location now.

In July, 2018, when Baobei couldn't repay the principal and interest, it showed the victims the contract between Baobei and Zhongji, as well as a promise letter written by Zhongji. Some victims tried to initiate civil lawsuits against Baobei and Zhongji, but the court didn't accept such lawsuits and the reason is that crimes were involved here. A policeman in charge of Liang Zhenbang's case said that Mr Yan Jinggang would be ordered for arrest if he couldn't repay the principal, but no written documents have been issued about this by the government. The victims have gone to a lot of government authorities to plead arresting Yan, but the police has not done that for now. The police in Nanjing said that the Shanghai police should do that because Zhongji located in Shanghai, but the Shanghai police said it should be the duty of the Nanjing police because Baobei and Zhongji should be jointly investigated.

Q:      What - so what was invested, how much, in what way, and proof of their investment such as a check, bank statement or receipts or transfer papers showing money going into the investment.

A:      The victims all invested in cash, by bank transfers to Baobei company.

The transfers were not direct, but through some third-party payment service providers. There could be difficulties to prove how much has been taken away by Yan for each victims for these reasons: 1. The police had shut down the data server of Baobei company about one year ago and all data of investment could not be reached by the victims since then. Some victims had downloaded their data and contract but others hadn't done that. 2. The period was too long. Some victims had been investing since 2013 or 2015. The bank statements would be very long and very complicated because of the long time and that Baobei had changed its transfer channels for several times. 3. Even the bank statements could be clear, it is not possible to know which part of the money was in the 2.3 billion taken away by Yan or in the 1 billion. I think there are only two ways to make these clear: the police give the data or the victims had downloaded it before.

Q:       When (a) the investment took place (b) when they found out it was stolen (c) how they found out (d) documents showing how it was and when it was related to them that the money had been stolen.

A:       (a) The investment took place during a long period, from 2013 to 2018. (b) On July 13, 2018, Baobei suddenly announced it could not repay the principal and interests. (c) When Baobei stopped repaying, a lot of victims rushed into the office of Baobei, the staff of Baobei said that Zhongji took away the 2.3 billion RMB,       and       then Mr Liang Zhenbang showed       the       contract between Zhongji and Baobei to   the   victims   as well as a   promise   letter   issued by Zhongji. Some employees of Baobei were also victims but these employee victims   usually   knew   the   money   were   lent   to Zhongji and   they   just believed Zhongji could     repay     the     money. (d) I     attach     the     contract between Baobei and Zhongji,   and   the   letter.   There exist some   more   documents such     as announcement by Baobei,       at       least one       memo       signed by Baobei and Zhongji on repaying the money. These will be collected and sent to you later.

Q:       Where — the location of the transactions and each person may be difference.

A:       The 30 thousand victims were from all over China and they transferred money by mobile phone and computer.

Q:       How the money was stolen

A:       I prefer to call this a Ponzi scheme. Baobei was established in 2013 and it kept repaying interest and principal to the investors before July 2018. During these five years, Baobei's balance grew larger and larger. Most investors didn't know the money had been taken away by Zhongji until July 2018. Before that, most investors only knew Baobei and they even hadn't heard about Zhongji.

In January 2018, Yan was investigated by CSRC, I think this accelerated collapse

of Zhongji. Zhongji's two        subsidiaries, Fukong and Youfu's stock        prices collapsed rapidly at that time. The reason that CSRC started the investigation might be CSRC found Yan transferring money from Zhongji and its subsidiaries to himself. Before the investigation of CSRC, Yan might have been aware of that, so he went out of China to escape from criminal punishment.

16.    As clearly stated above, one of the key executives involved in the scheme was Yan, who, befitting with the gaming theme, turned out to be quite the villain and as this pleading will show, has made exhaustive attempts to control the SHNT and Jagex interests to the extreme financial detriment of Plaintiff and the trail of victims he left in China.  Third parties also disclosed to PSH that the funds supplied by PSH's limited partner to facilitate the purchase were **stolen funds** from the Listing Company, 600634.[4]

17.    PSH immediately inquired about these claims and received written assurances from its limited partner that the transaction did not involve stolen funds and that the transaction was being supervised by the Shanghai Stock Exchange. Unfortunately, in February of 2020, PSH received adequate proof that its limited partner was likely connected to Yan.

PSH's Separation from its Limited Partner

18.    As a result of the information uncovered in Paragraph 15 *supra*, PSH had no choice but to distance itself from the potentially illegal activity and terminate the relationship with its limited partner.  PSH negotiated a quick out through a Membership Unit Purchase Agreement ("**MUPA**"), executed on or about February 25, 2020, whereby PSH sold its general partner interest in Platinum Fortune to MacArthur Fortune Holdings, LLC ("**MacArthur**") and reported the matter to the local authorities. Due to the sale, MacArthur became the owner of Jagex on April 28, 2020 and started to operate in Irvine, California.

---

[4] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Continued Efforts to Acquire Jagex

19.     Despite the necessary separation from its limited partner and with the limited partners consent after they indicated they would no longer pursue the asset in an awkward attempt to throw PSH off the scent PSH remained engaged in the process and sought to independently acquire Jagex due to its extensive knowledge of the asset and the revelation that the current owners were not acting within the law, which made PSH. PSH's continued efforts resulted in the discovery that two creditors of SHNT had initiated foreclosure proceedings against SHNT and were preparing for a judicial auction to capture the outstanding debts.[5]

20.     PSH determined to participate in the auction and attempt to purchase SHNT, which would include a purchase of 100% interest in Jagex held by SHNT.  The first auction was held in March of 2020[6], but PSH was not ready to submit a bid. Luckily, no bids were submitted during the first auction, so a second auction was scheduled by the Chinese Court.  While preparing for the second auction, PSH had independent conversations with the Listing Company regarding a direct purchase of Jagex through a private sale. PSH submitted a formal offer for the Jagex purchase on or about March 21, 2020, and presented proof of funds through its lender.

21.     Surprisingly, soon after tendering the offer to purchase Jagex, allegations were made against PSH's lender which resulted in a temporary freeze of the lender's assets (including those necessary to complete the Jagex purchase).  Upon information and belief, the allegations made against the lender were made by Mr. Yan himself or those acting in concert with Yan, who was attempting to block the sale. It is believed that Mr. Yan's main interest in preventing the sale was not to acquire Jagex, but because he accepted a $150MM USD loan from SHNT which remained unpaid, and he likely believed that SHNT's successor in interest would attempt to enforce the debt and

[5] The creditors were Huarong International Trust Co., Ltd. ("Huarong") and China Misheng Trust Co. Ltd. ("Misheng").
[6] See https://www. gpai.net/sf/item2.do?Web_Item_ID=27569

collect same from Mr. Yan if he was not involved with the eventual buyer and brokered a deal to not pay it back; hence his frequent and often successful attempts a blocking PSH.

22. Unfortunately, Yan's villainous and nefarious actions were successful. As a result, PSH had to watch as the second judicial auction occurred. Thankfully, no other party bid on the asset and as a result of this second failed auction, on April 17, 2020 the Shanghai No. 2 Intermediate People's Court issued an order transferring 100% of the interest in SHNT to Huarong and Minsheng (Huarong received a 55% interest and Minsheng received a 45% interest) (the "**April 17th Order**"), the creditors referenced in Paragraph 17, *supra* As provided below the Court Ordered:

The (2018) Jingfangyuan Zhizi No. 0037 issued by the Beijing Fangyuan Notary Public Office on February 27, 2018 has become legally effective. The execution certificate is confirmed and the executed person is Shanghai Fukong Interactive Entertainment Co., Ltd., Shanghai Zhong Technology Enterprise Group Co., Ltd., Yan Jinggang, and Shanghai Hongtou Network Technology Co., Ltd. shall pay the applicant a loan principal of RMB 1.11 billion, interest of RMB 12,250,700, compound interest of RMB 96,795.84, and penalty interest of RMB 8,770,387.50; starting from February 23, 2018 To the day when the loan principal is 1.11 billion yuan, the unpaid loan principal is the base, and the daily penalty interest is calculated at 150% of the agreed daily loan interest rate, which is 13.545%; from February 23, 2018 until payable As of the day when the unpaid interest of RMB 12,250,700 is settled, the compound interest is calculated based on the unpaid interest payable at 150% of the agreed daily interest rate, which is 13.545%; liquidated damages of RMB 222 million; and notarization fee of RMB 3,232,613. Because Shanghai Fukong Interactive Entertainment Co., Ltd. The company, Shanghai China Technology Enterprise Group Co., Ltd., Yan Jinggang, and Shanghai Hongtou Network Technology Co., Ltd. failed to perform their obligations, and the right holder Huarong International Trust Co., Ltd. applied to this court for enforcement. During the execution of this court, on March 9, 2018, the executor Shanghai Fukong Interactive Entertainment Co., Ltd. held 100% of the equity of Shanghai Hongtou Network Technology Co., Ltd. (55% of which was pledged to the executor Huarong International Trust Co., Ltd.). This court found that on January 26, 2018, the People's Court of Shaoyang County, Hunan Province froze 100% of the equity of Shanghai Hongtou Network Technology Co., Ltd. held by Shanghai Fukong Interactive Entertainment Co., Ltd. On June 21, 2018, the Shaoyang County People's Court of Hunan Province handed over the right to

dispose of the above-mentioned frozen equity to this court. Therefore, from March 29th to April 1st, 2020, this court against the enforcee Shanghai Fukong Interactive The 100% equity of Shanghai Hongtou Network Technology Co., Ltd. held by Entertainment Co., Ltd. went through an online public auction, and finally passed the auction for RMB 2.0422.3 billion. Later, the executor Huarong International Trust Co., Ltd. applied to this court for debt settlement of the 55% equity of Shanghai Hongtou Network Technology Co., Ltd. held by Shanghai Fortune Interactive Entertainment Co., Ltd. and pledged to the executor. In accordance with Article 19, Article 23, and Paragraph 2 of Article 29 of the Provisions of the Supreme People's Court on the Auction and Sale of Property in Civil Enforcement by the People's Court, the court ruled as follows: 1. Lift the freezing of 100% equity of Shanghai Hongtou Network Technology Co., Ltd. held by Shanghai Fortune Interactive Entertainment Co., Ltd. 2. The 55% equity of Shanghai Hongtou Network Technology Co., Ltd. held by the executor Shanghai Fukong Interactive Entertainment Co., Ltd. will be valued at RMB 1,123,276,000 and delivered to the executor Huarong International Trust Co., Ltd. to offset the principal of RMB 11.1 100 million yuan and related interest and notarization fee of RMB 13,276,000. The ownership of the 55% equity of Shanghai Hongtou Network Technology Co., Ltd. held by Shanghai Fortune Interactive Entertainment Co., Ltd. will be transferred from the time this ruling is delivered to the executor Huarong International Trust Co., Ltd. 3. The executor Huarong International Trust Co., Ltd. can take this ruling to the registration institution and unit to go through the relevant equity transfer registration procedures. The presiding judge Qian Songqing Judge Zhu Wei Judge Huang Wenwei April 17, 2020

23.     Since Marcarthur seized control of SHNT and Jagex and registered itself as the owner, Hurarong and Minsheng took judicial action in the United Kingdom against Platinum Fortune and MacArthur in order to prevent the entities from selling or transferring Jagex shares or distributing Jagex dividends.   Their actions were successful, and the U.K. Court issued a "Stop Notice" on April 29, 2020, permanently enjoining Platinum Fortune from selling or transferring shares of or distributing dividends of Jagex.

PSH Enters into Negotiations with Huarong and Minsheng

24.     In its continued quest to acquire Jagex, PSH initiated discussions with Huarong and Minsheng to discuss a private acquisition of SHNT and its interests in Jagex and was constantly reassured that while the auction was ongoing and PSH was working on the action that the Stop Notice would remain in effect until PSH obtained

its beneficial interest. Initially, both entities seemed amenable to negotiating a sale, but once again, Mr. Yan entered the picture and interfered with PSH's efforts, allegedly bribing employees of Minsheng to block the sale. Minsheng being the easier Trust company to bribe by Yan as it is privately owned (whereas Huarong is a state owned Trust company), dragged PSH out through fourteen (14) versions of a term sheet for over two months in what was an apparent delay tactic to allow Yan time to come up with another solution, which he eventually did by partnering with a prominent entity called Carlyle Group to facilitate a sale of Huarong's ownership interest in SHNT to Yan.  Huarong informed both parties that it was obligated to proceed with an official auction of its interest in SHNT because more than one party was interested in purchasing it in accordance with SASAC (applicable Chinese law).

25.    Huarong placed its ownership interest of 55% of SHNT and interest in Jagex in auction with an opening bid price of approximately $195MM USD.  PSH through its subsidiary companies completed the requirements to become a registered bidder for these interests and received notification that it was a qualified bidder and needed to deposit $1.046MM with the seller to participate in the auction. PSH made the $1.046MM deposit on Sunday, August 30, 2020.  PSH was the only registered bidder for Huarong's assets, and as such, won the auction by default at the list price.  Pursuant to the Auction Guidelines, PSH was presented with the executed and sealed closing documents and become the beneficial owner of Huarong's 55% interest in SHNT on Friday, September 4, 2020, and would have been required to transfer the remaining approximate $211MM of the auction list price within five (5) business days.[7]

---

[7] According to the Auction Description detailed above, once a party is registered as a qualified bidder, the party is required to wire a deposit of approximately $1.046MM to the seller (here, Huarong). If there is only one qualified bidder registered, that bidder automatically wins the auction at the listing price and has three (3) business days to sign the closing documents, and an additional five (5) business days to wire the remainder of the funds to the seller.  On the other hand, Huarong had a duty to supply certain necessary documents and refused to all while PSH continued to comply with its duties to perform.  It was only when PSH pressed the issue by formal letter and Huarong completely ignored the request or in one instance actually pretended to permit access to the English lawyers (a previously agreed to request) that PSH sent a formal demand and held back the final closing funds. PSH sent in another negotiator to attempt to resolve the stale mate and consistently maintained it was ready, willing and able to perform if Huarong would.

26.     Despite the clear rights to the ownership interest within SHNT and PSH's compliance with all rules and regulations of the auction, Huarong did not hold up its end of the bargain and failed to transfer its interest in SHNT and Jagex to PSH by frustrating its obligations of producing required documents as mandated under the auction process causing a "stale mate" as to the process that remains unresolved to this day.  Both Huarong and Minshing told PSH fables and misled PSH representatives in a clear effort to controvert the status of the transaction and back out of the legitimate purchase.  PSH engaged more resources spending over $1,000,000 on fees in addition to the deposit it had already deployed to send a special negotiator to meet with Huarong and Minsheng Trusts for an in person meeting, which PSH normally would have done itself but for the COVID19 pandemic.  On or about November 16, PSH was informed by its main advisor that the Trust had agreed to sell 100% of SHNT to PSH and the documents were being drafted and PSH's CEO was asked to step back and let the team of lawyers and advisors close the deal.  On December 23rd, 2020 the U.K. court action and injunction magically disappeared, and the much-needed protection of Jagex's assets disappeared along with it.

Current Status of PSH's Negotiations

27.     PSH has diligently made attempts to discuss this situation with representatives of Huarong and Minsheng.  Unfortunately, both entities have "gone dark", refusing to answer PSH or honor its equitable position as rightful owner of the purchase rights to at least the 55% of Huarong's interest in SHNT and Jagex.  **These unethical business practices and frustration of PSH's intentions are all too familiar, and the Plaintiff is confident that the elusive Mr. Yan has once again used bribery, fraud, and scheming tactics to prevent PSH from acquiring its rightful position as owner of SHNT and Jagex.**

28.     The outlandish plot of this story became even more intense when, on January 21, 2021, the former Chairman of Huarong was **sentenced to death** in China for taking over $200,000,000 USD in alleged bribes.  Not surprising to the Plaintiff,

one of the top 10 loans reported in the trade journals in China giving rise to this sentence was a loan made to SHNT, i.e. Yan.

29.   PSH is a lawful US entity who is not accustomed to transacting with foreign criminals.  PSH is left without remedy and has been forced to resort to legal action to protect its interest and ensure that it does not lose its irreplaceable interest in Jagex.  PSH prays that this Court enjoin the Defendants from acting in furtherance of this scheme and ensure that Mr. Yan cannot continue to act as puppet master to all entities caught in the SHNT and Jagex web and also that this Court require Huarong to accept PSH's remittance of its purchase price for the 55% of SHNT and transfer the 55% beneficial ownership interest to PSH along with the required documents per the auction description.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Federal Civil RICO, 18 U.S.C. § 1962(a))

30.   Plaintiff incorporates by reference Paragraphs 1 through 29 above, as though fully set forth herein.

31.   Section (a) of the Federal RICO statute makes it unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering  activity or  through  collection  of  an unlawful  debt in  which such person has participated as a principal…to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

32.   In the immediate case, Huarong, Jagex, Minsheng, and SHNT each utilized funds which were stolen from corporate entities to maintain ownership of SHNT and Jagex.  Each party knew or should have known that Yen misappropriated funds from corporations, as evidenced by his prosecution in China, press releases, and his consistent interference with the attempted asset purchase of SHNT.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Federal Civil RICO, 18 U.S.C. § 1962(b))

33.     Plaintiff incorporates by reference Paragraphs 1 through 32, above, as though fully set forth herein.

34.     Section (b) of the Federal Civil RICO statute states it is unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

35.     There is no question that Yen and Platinum Fortune were involved in racketeering, as the funds supplied for the Jagex and SHNT purchase were traceable to stolen corporate funds.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Federal Civil RICO, 18 U.S.C. § 1962(c))

36.     Plaintiff incorporates by reference Paragraphs 1 through 35, above, as though fully set forth herein.

37.      Section (c) of the Federal Civil RICO statute states it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

38.     Huaong and Minsheng, who are the owners of SHNT and its interest in Jagex, had a clear relationship with Yen, as evidenced by the loan issued to Yen which resulted in the death sentence of the former Chairman of Huaong.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

## (Conspiracy to violate Federal Civil RICO, 18 U.S.C. §§ 1962(a), §§ 1962(b), and 1962(c))

39.     Plaintiff incorporates by reference Paragraphs 1 through 38, above, as though fully set forth herein.

40.     18 U.S.C. § 371 makes it unlawful for individuals to conspire to violate a federal law.  In California, the elements of civil conspiracy are: (1) the formation and operation of the conspiracy; (2) a wrongful act done in furtherance of the conspiracy; and (3) the resulting damage to the Plaintiff.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal 4th 503, 510-11*; State ex rel. Metz v. CCC Info. Servs., Inc.* (2007) 149 Cal.App.4th 402, 419.

41.     The facts make it evident that SHNT, Jagex, Hoang, and Minsheng had a "meeting of the minds" and planned, jointly, to prevent PSH from acquiring an ownership interest in SHNT and Jagex.  This shared plan was furthered by several overt acts, which included failing to complete the transfer of Hoang's ownership interest of SHNT to PSH despite PSH's lawful acquirement of same at auction and issuing a loan to Yen.

## FIFTH CAUSE OF ACTION AGAINST HUARONG AND MINSHENG

## (Conversion)

42.     Plaintiff incorporates by reference Paragraphs 1 through 41, above, as through fully set forth herein.

43.     Under California law, the elements required to prove a claim of conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066; *Regent Alliance Ltd. v. Rabizadeh* (2014) 231 Cal.App.4th 1177, 1181.

44.     Huarong and Minsheng were and remain aware of PSH's lawfully obtained interest in SHNT and Jagex through its participation and winning bid in the public auction.   Both entities have ceased communication with PSH, and Huarong failed to legally transfer its interests in SHNT and Jagex to the Plaintiff.  This lack of communication and failure to complete the transaction have caused Plaintiff financial harm and will cause irreparable harm in the event that Plaintiff is unable to acquire the ownership interest in SHNT and Jagex which it is legally entitled to.

## SIXTH CAUSE OF ACTION AGAINST SHNT AND JAGEX

### (Tortious Interference of Contract)

45.     Plaintiff incorporates by reference Paragraphs 1 through 44, above, as through fully set forth herein.

46.     To prevail in a claim of tortious interference of contract under California law, a Plaintiff must show (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587].

47.     Plaintiff had a valid contract with Huarong as a result of its successful bid in the public auction for Huarong's 55% ownership interest of SHNT and Jagex. Though Plaintiff is still investigating the influences which led to Huarong's refusal to honor the contract, upon information and belief, SNHT and Jagex intentionally interfered with PSH's contract with Huarong at the behest of Yen.  The existence of the contract and auction results were known to all interested parties, and the failure of Huarong to honor the terms of the contract have resulted in significant financial loss to the Plaintiff, and Plaintiff will suffer additional financial loss if Huarong and Minsheng are permitted to sell or transfer assets of SHNT and Jagex.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Tortious Interference with Prospective Economic Advantage)

48.     Plaintiff incorporates by reference Paragraphs 1 through 47, above, as through fully set forth herein.

49.     Intentional Tortious Interference with Prospective Economic Advantage (IWPEA) occurs when a defendant interferes with an economic relationship between the Plaintiff and a third party. The elements of IWPEA are: (1) An economic relationship that was likely to benefit the plaintiff; (2) The defendant's knowledge of this relationship; (3) Independent wrongful conduct by the defendant; (4) Intent on the defendant's part to disrupt the economic relationship, or knowledge that disruption was likely because of their conduct; (5) Disruption of the relationship; (6) Harm to the plaintiff; and (7) A causal connection between the wrongful act and the harm.  The interference must have been wrongful "by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal.4th 376, 393 (1995).

50.     All named defendants to this action were aware of PSH's relationship with SHNT and Jagex and its attempts to acquire SHNT and Jagex through legal channels.  Acquiring SHNT and Jagex would certainly benefit the Plaintiff, as Jagex is a unique asset which cannot be replicated on the market.  The Plaintiff's economic relationship with Huarong was established after PSH was the successful bidder of Huarong's 55% interest in SHNT and Jagex, and that economic relationship was damaged by interference from Minsheng and Jagex at the behest of Yan.   The Plaintiff's economic relationship with Minsheng was established during the initial discussions with Minsheng to acquire its interest in SHNT and Jagex, and subsequently after winning Huarong's interest in SHNT and Jagex at auction, which would have situated PSH as the entity with the majority interest of SHNT and Jagex.  Likewise, Huarong's failure to finalize the transfer of its interest in SHNT and Jagex to the Plaintiff disrupted PSH's economic relationship with Jagex as it stripped the Plaintiff of

its anticipated ownership and plans for expansion of the company.  In short, the defendants each individually engaged with PSH and, due to influence by Yen and his associates, committed several acts and omissions which served to block the Plaintiff from acquiring its bargained for interests in SHNT and Jagex.  These actions were intentional and committed for no other purpose other than to act in furtherance of the criminal enterprise controlled by Yen.

### EIGHTH CAUSE OF ACTION AGAINST ALL JAGEX AND SHNT

### (Cal. Corp. Code § 25401)

51.    Plaintiff incorporates by reference Paragraphs 1 through 50, above, as through fully set forth herein.

52.    Cal. Corp. Code § 25401 makes it "unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."

53.    Defendants Jagex and SHNT were participants in the Securities and Exchange market and allowed members of the public to purchase securities of each respective entity.  Both Jagex and SHNT knew or should have known that the funds used to purchase each respective entity were obtained through illegal channels (specifically, through theft of corporate funds).  The association with criminal activity is a material fact which was omitted from the published information presented by SHNT and Jagex and the absence of the association with criminal activity makes such statements misleading to shareholders due to the inability of the entities to ensure that assets will not be seized, transferred, or further manipulated by criminal activity.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants and the DOE defendants as follows:

1. For injunctive relief preventing the Defendants from selling, transferring, or conveying the shares of SHNT and Jagex or making distributions of dividends from SHNT and Jagex until this matter may be adjudicated by the Court;

2. For a declaratory judgment affirming PSH's ownership interest in SHNT and Jagex;

3. For general, compensatory, consequential, exemplary, punitive and trebled damages according to proof;

4. For attorneys' fees and costs;

5. For Plaintiff's cost of suit; and

6. For such other relief as the Court may deem just and proper.

DATED: January 21, 2021          LEVATOLAW, LLP

By: _____/s/_ Stephen D. Weisskopf_____

Stephen D. Weisskopf
ATTORNEYS FOR PLAINTIFF Plutos Sama
Holdings, Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action herein.

DATED: January 21, 2021          LEVATOLAW, LLP

By: _____/s/_ Stephen D. Weisskopf_____

Stephen D. Weisskopf
ATTORNEYS FOR PLAINTIFF Plutos Sama
Holdings, Inc.