James N. Kramer (SBN 154709)
jkramer@orrick.com
M. Todd Scott (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759

Kevin M. Askew (SBN 238866)
kaskew@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:  (213) 629-2020
Facsimile:   (213) 612-2499

Attorneys for Defendant
PLATINUM FORTUNE, LP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PLUTOS SAMA HOLDINGS, INC.<br><br>               Plaintiff,<br>     v.<br><br>JAGEX LIMITED; YAN JINGGANG; HUARONG INTERNATIONAL TRUST CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD TRUST; CHINA MINSHENG TRUST CO. LTD; PLATINUM FORTUNE, LP; THE CARLYLE GROUP; and DOES 1-20,<br><br>               Defendants. | Case No. 8:21-cv-00133-JVS (JDEx)<br><br>**DEFENDANT PLATINUM FORTUNE, LP'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>Hearing</u><br>Date:    July 12, 2021<br>Time:    1:30 pm<br>Judge:   Hon. James V. Selna<br>Ctrm:    10C |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on July 12, 2021, at 1:30 p.m. or soon after, before the Honorable James V. Selma, United States District Judge for the Central District of California, located at 411 West 4th Street, Santa Ana, CA 92701-4516, Defendant Platinum Fortune, LP ("Defendant"), will and hereby does move to dismiss Plaintiff Plutos Sama Holdings, Inc.'s ("Plaintiff") Amended Complaint against Platinum pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

    This Motion is based on this Notice of Motion, the Memorandum of Points of Authorities below, the other papers and pleadings on file in this action, and any oral argument this Court may choose to consider.

    This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 3, 2021.

Dated:  June 14, 2021

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By:       */s/ James N. Kramer*

JAMES N. KRAMER
Attorneys for Defendant
PLATINUM FORTUNE, LP

- i -

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   RELEVANT FACTUAL OVERVIEW ............................................... 3

      A.    Background Regarding Platinum ............................................. 3

      B.    Other Allegations in the AC .................................................... 4

      C.    Plaintiff's Accusations Against Platinum ............................... 5

III.  THE AC DOES NOT STATE A CLAIM AND SHOULD BE
      DISMISSED ....................................................................................... 8

      A.    Rule 9(b) Requires Dismissal Because Plaintiff's Fraud-Based
            Allegations Are Not Specifically Pled ................................. 10

      B.    The AC Does Not Even *Generally* Aver a Claim ............... 12

            1.    The AC Does Not State the Elements of a RICO
                  Conspiracy Claim Against Platinum ......................... 12

                  a.    The AC Does Not Allege That Platinum Committed
                        an Independently Wrongful Overt Act ........................... 13

                  b.    The AC Does Not Allege That Plaintiff Was
                        Proximately Injured by Platinum's Overt Acts .............. 15

                  c.    Even if Plaintiff Had Standing to Allege Its RICO
                        Conspiracy Claim, the AC Fails to State a Claim Under
                        Section 1962(d) ............................................................... 17

            2.    Plaintiff Fails to Allege Platinum Received Stolen Goods. ...... 18

IV.   CONCLUSION ................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*In re Actimmune Mktg. Litig.*,
614 F. Supp. 2d 1037 (N.D. Cal. 2009), *aff'd*, 464 F. App'x 651
(9th Cir. 2011) ................................................................................... 16

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .................................................................... 16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................... 8, 11

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) ............................................................. 18

*Beck v. Prupis*,
529 U.S. 494 (2000) .................................................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 8, 20

*Bulan v. JP Morgan Chase Bank*,
2011 WL 13266527 (N.D. Cal. Apr. 6, 2011) ................................. 17

*Canyon Cty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ........................................................... 15

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
765 F. Supp. 1467 (C.D. Cal. 1991) .................................................. 9

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........................................................ 9, 15

*Fodor v. Blakey*,
2012 WL 12893985 (C.D. Cal. Feb. 21, 2012) .................................. 9

*Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*,
2013 WL 11323601 (C.D. Cal. Dec. 13, 2013) ................................ 13

*Freeney v. Bank of Am. Corp.*,
2016 WL 5897773 (C.D. Cal. Aug. 4, 2016) .................................... 20

*GEC US 1 LLC v. Frontier Renewables, LLC*,
  2016 WL 4677585 (N.D. Cal. Sept. 7, 2016)..................................................19

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................8

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ............................................................................10

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
  2016 WL 5930273 (N.D. Cal. Oct. 12, 2016)..................................................22

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ..............................................................................................16

*Hennessy v. Infinity Ins. Co.*,
  358 F. Supp. 3d 1074 (C.D. Cal. 2019)............................................................22

*Hill v. Opus Corp.*,
  841 F. Supp. 2d 1070 (C.D. Cal. 2011)............................................................16

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ............................................................................12

*Instant Brands, Inc. v. DSV Sols., Inc.*,
  2020 WL 5947914 (C.D. Cal. Aug. 20, 2020) .................................................22

*Kamal v. Cty. of Los Angeles*,
  2019 WL 7195903 (C.D. Cal. Nov. 26, 2019) .................................................16

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................8

*Lavigne v. Herbalife, LTD*,
  2019 WL 6721619 (C.D. Cal. Oct. 22, 2019)..................................................18

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ..............................................................................9

*Oscar v. Univ. Students Co-op. Ass'n*,
  965 F.2d 783 (9th Cir. 1992), *abrogated on other grounds by Diaz
  v. Gates*, 420 F.3d 897 (9th Cir. 2005).............................................................10

*Pace v. Quintanilla*,
  2015 WL 652719 (C.D. Cal. Feb. 13, 2015) ....................................................11

*In re Packaged Seafood Prod. Antitrust Litig.*,
    338 F. Supp. 3d 1118 (S.D. Cal. 2018) .......................................................... 14, 21

*People v. Wooten*,
    44 Cal. App. 4th 1834 (1996) ........................................................................... 21

*Ryan v. Microsoft Corp.*,
    2015 WL 1738352 (N.D. Cal. Apr. 10, 2015) .................................................... 9

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) .............................................................................. 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986) .......................................................................... 14

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ......................................................................... 9, 12

*Siry Inv., L.P. v. Farkhondehpour*,
    45 Cal. App. 5th 1098 (2020) ........................................................................... 19

*Siry Inv. v. Farkhondehpour*,
    468 P.3d 701 (Cal. 2020) .................................................................................. 19

*Solis v. City of Fresno*,
    2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ................................................... 11

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
    366 F. Supp. 3d 516 (S.D.N.Y. 2018) ........................................................ 14, 15

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................. 9, 10, 11

*United States v. Perez*,
    962 F.3d 420 (9th Cir. 2020) ........................................................................... 22

*Verdugo-Gonzalez v. Holder*,
    581 F.3d 1059 (9th Cir. 2009) .......................................................................... 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................ 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2019 WL 4581340 (N.D. Cal. Sept. 20, 2019) ................................................ 16

DEFENDANT PLATINUM'S MOTION TO DISMISS AMENDED COMPLAINT

**Statutes and Rules**

18 U.S.C.
   § 201 ................................................................................................ 15
   § 201(a)(1) ...................................................................................... 15
   § 1962(d) ..................................................................... 6, 12, 17, 17
   § 1964(c) .......................................................................... 12, 13, 15

Cal. Pen. Code
   § 496(c) ........................................................................................ 19
   § 777 .............................................................................................. 22
   § 484(a) ........................................................................................ 21
   § 496 ...................................................................................... *passim*
   § 496(a) ...................................................................... 6, 9, 19, 20

Fed. R. Civ. P.
   Rule 8(a) ........................................................................ 14, 16, 23
   Rule 9(b) ............................................................................... *passim*
   Rule 12(b)(6) ..................................................................... 2, 8, 9

### I.     INTRODUCTION

Plaintiff's Amended Complaint (the "AC") alleges an admittedly "outlandish plot" (AC ¶ 51) about a conspiracy purportedly designed to prevent "Plaintiff from legally acquiring Jagex, a gaming company" based in England (*id.* ¶ 2).  As alleged, Plaintiff "won a 55% interest" in Jagex's Chinese parent company "in September of 2020" (*id.* ¶ 19), but because of the alleged "bribery and wire fraud," Jagex was "ripped . . . from [its] hands" (*id.* ¶ 3), causing it to file claims of racketeering, conspiracy and receipt of stolen goods, among other things, against 27 defendants across three continents.

While Plaintiff named investment fund Platinum Fortune, LP ("Platinum") as one of those defendants, the AC does not allege facts to show that Platinum ever had any role in the alleged wrongdoing.  To the contrary, the AC admits that Plaintiff itself originally formed Platinum for the express purpose of purchasing Jagex, and that in June 2019, when Plaintiff was still Platinum's general partner, Platinum executed an agreement to purchase Jagex's Chinese parent company, Shanghai Hongtou Network Technology Co. Ltd. ("SHNT").  The AC also admits, as it must, that in February 2020, two months before Platinum's purchase of SHNT closed in April 2020, Plaintiff sold its interest in Platinum to MacArthur Fortune Holdings, LLC ("MacArthur"), another investment group.

Perhaps regretting that decision, Plaintiff now insists there was something "unlawful" about Platinum's purchase of SHNT.  AC ¶ 14.  But even if that were true (and it is not—as the AC admits, the purchase was "validated" by the Shanghai stock exchange (*id.* at n. 8)), Platinum's *April* 2020 purchase of SHNT could not have harmed Plaintiff, because Plaintiff had sold its interest in Platinum in *February* 2020, and admittedly did not acquire its alleged "55% interest in SHNT" until five months later, in "*September* of 2020" (*id.* ¶ 19, emphasis added).  Put simply, Plaintiff could not have been harmed by Platinum's April 2020 acquisition of SHNT because it had no ownership interest over SHNT at that time.

That temporal disconnect is fatal to Plaintiff's theory of liability.  For two independently dispositive reasons, the claims against Platinum should be dismissed pursuant to Rule 12(b)(6).

*First*, while Plaintiff accuses Platinum of conspiring to racketeer and "receipt of stolen property," the AC does not offer any particularized facts to support those salacious claims, as required by Rule 9(b).  In fact, as the chart included below demonstrates, the AC offers only a handful of allegations regarding Platinum at all, none of which contain the "who, what, when, where, and how" necessary to state a claim for fraud.  As Plaintiff rightly puts it, the AC's allegations are more like "'footsteps' in the snow" (AC ¶ 31), amorphous and lacking the details required to survive Rule 9(b) and this Motion to Dismiss.

*Second*, and in any event, the AC does not even *generally* aver the elements required to state a RICO conspiracy or "receipt of stolen property" claim against Platinum.  As to the RICO claim, the AC does not allege that Platinum ever committed any overt act in furtherance of the alleged conspiracy, let alone that Plaintiff was somehow harmed by it.  Indeed, the only "act" Platinum is alleged to have committed was the purportedly "unlawful" April 2020 purchase of SHNT, and it is not alleged to have played *any* role in the alleged September 2020 conspiracy to "rip" Plaintiff's alleged "55% interest in SHNT" from its hands.  AC ¶¶ 3, 19.  And even if Plaintiff had standing to pursue its claim, the AC simply does not allege that Platinum ever entered into a conspiracy agreement.

Plaintiff's "stolen property" claim under Section 496 of the California Penal Code ("Section 496") is equally flawed.  Section 496 concerns actual stolen *goods* (*see* Section 496(b) (discussing sale of stolen property at "swap meets") but Plaintiff alleges the "stolen property" Platinum received was Jagex, a company.  As Plaintiff alleges, Jagex was "stolen property" because Platinum acquired SHNT in violation of an order from a Chinese court.  But even if that were true (and it is not), violating a court order would not render Jagex "stolen property" under Section 496,

which is to say Plaintiff is trying to pound a square peg into a round hole.  The Section 496 claim also fails because the AC does not allege that (i) Plaintiff was injured by Platinum's April 2020 "receipt" of Jagex, (ii) Platinum had actual knowledge that Jagex was "stolen," or (iii) any "stolen" property was "received" in California, where the statute applies.

For these reasons and as further set forth below, the Court should dismiss Plaintiff's claims against Platinum.  Because the AC is Plaintiff's second attempt to state a claim against Platinum, and again fails to plead specific facts (as opposed to bald conclusions) to support its claims, the AC should be dismissed with prejudice.

## II.   RELEVANT FACTUAL OVERVIEW

### A.   Background Regarding Platinum

This section will address the relevant background as it pertains to Platinum.

Platinum Fortune, LP is a Delaware limited partnership investment fund that Plaintiff and Di Xi Huang ("Huang") formed on April 11, 2019 to invest in SHNT, "a holding company that holds the 100% interest of Jagex," a video game company based in England.  AC ¶¶ 8, 19, 23.  Plaintiff was the general partner of Platinum from its inception through February 25, 2020, when Plaintiff chose to sell its interest in Platinum to MacArthur.  *Id.* ¶ 32.

In June 2019, while Plaintiff was still Platinum's general partner, the fund entered into an agreement to purchase SHNT from Shanghai Fukong ("Fukong"), "a publicly traded company on the Shanghai Stock Exchange" that Defendant Yan Jinggang ("Yan") was an 85% shareholder in.  *Id*. ¶¶ 21, 25.  According to Plaintiff, it provided the Shanghai Stock Exchange with the "due diligence" that allowed the Exchange to "validate the legality of [Fukong's] sale of SHNT to Platinum."  *Id.* at n.8.  As alleged, the sale closed and Platinum took ownership of Jagex on April 22, 2020 (or, as alleged, on April 28, 2020), two months *after* Plaintiff had sold its

1   general partner interest in Platinum to MacArthur.  *Id.* ¶¶ 32, 35(2).[1]

2   **B.   Other Allegations in the AC**

3   Though the remainder and bulk of the AC's factual allegations do not relate

4   to Platinum, this section will attempt to summarize and bring clarity around

5   Plaintiff's allegations as a whole.[2]

6   After Plaintiff sold its general partner interest in Platinum to MacArthur,

7   Plaintiff continued to independently pursue its acquisition of SHNT.  In "early

8   2020," Plaintiff learned that two Chinese state-owned creditors of SHNT—Huarong

9   International Trust Company ("Huarong") and China Minsheng Trust Company

10  ("Minsheng")—had initiated foreclosure proceedings against the company, which

11  would be followed by an auction.  *Id.* ¶ 33.  After failing to bid on the first auction

12  in March 2020, and while preparing for the second auction, Plaintiff submitted a

13  "formal offer" to directly purchase Jagex on March 21, 2020.  *Id.* ¶ 35.  However,

14  after submitting this offer, Plaintiff was unable to tender the purchase funds because

15  its lender's assets had been frozen, allegedly due to Yan bribing a Chinese

16  government official.  *Id.* ¶ 36-38.  Therefore, a second auction occurred and after no

17  party bid on the asset again, ownership in SHNT was allegedly judicially

18  transferred pursuant to an April 17, 2020 Chinese court order.  *Id.* ¶ 38.  As

19  excerpted, the Chinese court order (1) "lift[ed] the freezing of 100% equity in

20  [SHNT] held by [Fukong][3]" and (2) transferred a 55% equity stake in SHNT to

---

22  [1] The AC contains a second paragraph 35, which follows paragraph 38.  For ease of reference, this Motion will refer to the second paragraph 35 as "35(2)."

23  [2] For another attempted summary, Platinum respectfully refers the Court to the background section of the Motion to Dismiss filed by The Carlyle Group ("Carlyle") (Dkt. No. 19 at 4-8), which precipitated Plaintiff voluntarily dismissing Carlyle from this case.  Dkt. No. 30.

26  [3] Though the excerpt specifically refers to equity held by "Shanghai *Fortune* Interactive Entertainment Co., Ltd." (emphasis added), the AC never introduces a separate party under that name and given the similarities with "Shanghai *Fukong* Interactive Entertainment Co., Ltd." (emphasis added), *i.e.*, Fukong, this Motion assumes that to be another typographical error.

- 4 -

Huarong.  *Id.*  Though Plaintiff also alleges that the Chinese court granted ownership to Minsheng, *id.* ¶ 35(2), the text of the order does not mention Minsheng once.

In response to Platinum acquiring Jagex in April 2020, the AC alleges that Huarong and Minsheng brought a lawsuit in the High Court of England to determine Jagex's ownership.  *Id.* ¶ 32 n.7, 35(2).  After the English court issued a "Stop Notice" on April 29, 2020 against transferring shares in Jagex, *id.* ¶ 35(2), the court dismissed the case in December 2020.  *Id.* ¶ 32 n.7.  Thereafter, on January 25, 2021, Carlyle purchased Jagex from Platinum.[4]  *Id.* ¶ 58.

While the litigation in England was pending, seemingly in defiance of the English court's stop notice, Plaintiff made two additional attempts to acquire Jagex, both of which failed.  First, Plaintiff attempted to acquire Minsheng's purported 45% interest in SHNT, but after Yan allegedly interfered, those negotiations fell apart in June 2020.  *Id.* ¶¶ 39-42.  Second, through a newly formed subsidiary, Plaintiff attempted to acquire Huarong's purported 55% interest in SHNT in another auction process in August 2020, but, as alleged, Huarong breached its obligations under the auction guidelines and the purchase was never completed.  *Id.* ¶¶ 43-47.  Nowhere does Plaintiff tie any of these subsequent attempts to acquire Jagex to Platinum.

### C.    Plaintiff's Accusations Against Platinum

Plaintiff claims Platinum's purchase of Jagex was "unlawful" because it violated an "April 17, 2020 Chinese Court award granting ownership" of Jagex to other parties.  AC ¶ 35(2).  Plaintiff also claims that (i) "[b]ased on third-party statements . . . the funds supplied by Platinum to facilitate the purchase of SHNT and Jagex were *stolen funds*," *id.* ¶ 30 (emphasis in original), and (ii) the "£5M

---

[4] Throughout the AC, Plaintiff consistently conflates Platinum, the entity, with MacArthur, its general partner.  *See*, *e.g.*, *id.* ¶ 32 n.7.  For purposes of consistency, this Motion will assume Platinum, the entity, purchased and sold Jagex, even where the AC states that MacArthur did.

bonus pool" paid to senior Jagex personnel in connection with the purchase was a "clear bribe" intended to cause them to "'keep quiet' about the facts that Platinum never had the money, [and] Platinum had seized control of the company illegally," *id.* ¶ 35(2).  On the basis of those accusations, Plaintiff avers claims against Platinum for Conspiracy to Violate Federal Civil RICO under 18 U.S.C. § 1962(d) ("Section 1962(d)") (Second Cause of Action), and Receipt of Stolen Property in Violation of California Penal Code § 496(a) ("Section 496(a)") (Ninth Cause of Action).

Plaintiff's claims plainly sound in fraud and therefore must be alleged with specificity, but the AC does not allege any facts, specific or otherwise, to show Platinum's purported wrongdoing.  As shown in the chart below, which lists the AC's allegations against Platinum, the AC barely mentions Platinum at all, and contains only *five* paragraphs that allege wrongdoing, which are shaded grey:

| The AC's Allegations About Platinum | |
|---|---|
| **AC ¶** | **Allegation** |
| 4 | Platinum "for [its] own financial gain, purchased a stolen asset" |
| 14 | Platinum "was the purported vehicle that, on information and belief, was used to unlawfully purchase SHNT and Jagex." |
| 23 | "Platinum was formed on April 11, 2019 in Delaware by Plaintiff," for "the purpose of managing the bidding and acquisition of SHNT and Jagex at the scheduled action," with "Plaintiff serving as the general partner owning 2%." |
| 25 | "Platinum, through Plaintiff, submitted a bid [for SHNT] and won the auction in June of 2019 at the list price of $500MM USD, which was subsequently raised to $530MM USD." |
| 30 | "Based on third-party statements, Plaintiff learned that the funds supplied by Platinum to facilitate the purchase of SHNT and Jagex were stolen funds" |
| 32 | Plaintiff "negotiated an exit from Platinum through a Membership Unit Purchase Agreement, executed on or about February 25, 2020, whereby Plaintiff sold its general partner interest in Platinum to MacArthur Fortune Holdings, LLC" |
| n.8 | "[T]he due diligence completed by the Shanghai Stock Exchange to validate the legality of the sale of SHNT to Platinum was based on Plaintiff as general partner and Plaintiff's ultimate beneficial owners and on Plaintiff's capacity as a qualified bidder and owner in due diligence." |
| 35(2) | "Platinum . . . unlawfully seized control of Jagex on April 22, 2020, in violation of the April 17, 2020 Chinese Court award granting ownership to Huarong (55%) and Minsheng (45%)." <br><br> The payment of a "£5M bonus pool" to "senior personnel" of Jagex in connection with Platinum's purchase of Jagex "was a clear bribe to the senior officials of Jagex to 'keep quiet' about the facts that Platinum never had the money, Platinum had seized control of the company illegally and Yan was behind it all." |
| 139-140 | "Platinum . . . purchased Jagex, an asset stolen or procured through theft or extortion," and "knew that Jagex had been stolen or procured through theft or extortion." |

- 7 -

Noticeably absent from these allegations are any facts that establish, for example, *when* Jagex was "stolen" or *who* it was stolen from, *why* the bonuses paid to Jagex employees were "clear[ly] bribes," or, most importantly, *how* any of it has anything to do with Plaintiff, which admittedly sold its interest in Platinum in February 2020, before Platinum's purchase of SHNT and Jagex was completed. *Id.* ¶ 32.  Indeed, even if Platinum's purchase of SHNT and Jagex had violated an order by a Chinese court (and it did not), how did it have any effect on Plaintiff, which chose to dispose of its holdings months earlier?  And why has Plaintiff not taken up that violation with the Chinese court that allegedly issued the order?  None of these foundational questions are answered by the AC.

## III.    THE AC DOES NOT STATE A CLAIM AND SHOULD BE DISMISSED

As the Court is aware, in reviewing a Rule 12(b)(6) motion, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Rather, the AC must allege "enough *facts* to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added), and create "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[L]abels and conclusions," or "naked assertions" do not satisfy Rule 12(b)(6).  *Id.*

Where, as here, the plaintiff alleges claims that sound in fraud, the complaint must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff allege particularized facts demonstrating the "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted), because "conclusory

allegation[s] devoid of factual content does not satisfy Rule 12(b)(6)'s pleading standard, much less Rule 9(b)'s heightened pleading standard." *Ryan v. Microsoft Corp.*, 2015 WL 1738352, at *15 (N.D. Cal. Apr. 10, 2015).

Where, as here, a plaintiff alleges a course of fraudulent conduct involving multiple defendants, it cannot simply "lump multiple defendants together" through group pleading, *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007), but pursuant to Rule 9(b) must specify the "role of each defendant in the fraud," *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991); *see also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (dismissing complaint for "absence of particularity with respect to the alleged fraudulent participation" of individual named defendants). Put simply, each defendant must be given notice of "the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it did] anything wrong." *Semegen*, 780 F.2d at 731.

Pleading actionable claims under Rule 9(b) is no easy task—nor is it meant to be, given how "allegations of fraud are particularly injurious to business and professional reputations." *Comwest, Inc.*, 765 F. Supp. at 1471. In fact, when companies like Platinum engage in "transactions that are facially legitimate . . . and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997–98 (9th Cir. 2014).

Rule 9(b)'s stringent requirements for alleging fraud apply to RICO claims, *see, e.g., Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010), *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); and claims alleging knowing receipt of stolen goods under California Penal Code Section 496(a), *see Fodor v. Blakey*, 2012 WL 12893985, at *13 (C.D. Cal. Feb. 21, 2012) ("[P]laintiffs' § 496 claim relies almost entirely on the preceding allegations of

- 9 -

fraudulent conduct, and must comply with Rule 9(b) as a result.").  Heightened standards are particularly apt for claims under RICO which "was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."  *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005).

### A.   Rule 9(b) Requires Dismissal Because Plaintiff's Fraud-Based Allegations Are Not Specifically Pled

As the chart above shows, the AC makes only a handful of allegations about Platinum's purported wrongdoing, averring in conclusory terms that Platinum "purchased a stolen asset" (AC ¶ 4), "unlawfully purchase[d] SHNT and Jagex" (*id.* ¶ 14), purchased SHNT/Jagex with "stolen funds" (*id.* ¶ 30), "unlawfully seized control of Jagex . . . in violation of the April 17, 2020 Chinese Court award granting ownership" to other parties (*id.* ¶ 35(2)), paid "a clear bribe to the senior officials of Jagex" (*id.*), and purchased Jagex knowing it "had been stolen or procured through theft or extortion" (*id.* ¶¶ 139-40).[5]

But none of those allegations contain any specific "time, place, persons, [or] statements made," that are required to state a fraud claim under Rule 9(b).  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 n.7 (9th Cir. 1994).  For example, Plaintiff's RICO allegations against Platinum (*see* AC ¶¶ 91-93) do not even reference Platinum by name, do not indicate what action Platinum purportedly took in furtherance of a conspiracy, do not cite any communication to or from Platinum that would support claims of a conspiracy and indeed, do not allege how anything Platinum did caused any specific injury to Plaintiff.  Those non-specific allegations fail Rule 9(b) as a matter of law, and require dismissal.  *Swartz*, 476 F.3d at 765

---

[5] Plaintiff could have added specificity to its allegations had it followed the Court's order to supplement its AC with a RICO Case Statement, Dkt. No. 8 at 2, but it chose not to do so.

1  ("[A] plaintiff must, at a minimum, identify the role of each defendant in the

2  alleged fraudulent scheme.") (internal quotation marks, brackets, and citation

3  omitted).

4      By the same token, Plaintiff asserts Platinum knew Jagex was a "stolen

5  asset" at the time it was purchased in April 2020 (AC ¶ 14), but there are no

6  allegations, none, to describe when Jagex was "stolen," who it was "stolen" from,

7  how one could "steal" a company, or when Platinum purportedly learned it was

8  stolen.  At most, the AC asserts that Platinum's purchase of SHNT/Jagex—which

9  was initiated in June 2019, and "validated" by the Shanghai Stock Exchange (*id.* ¶

10  25 & n. 8)—somehow violated an April 17, 2020 order by a Chinese court (*id.* ¶

11  35(2)).  But again, the AC does not allege specific facts to show how Platinum's

12  purchase violated the order, that Platinum was even aware of the order, or, most

13  importantly, how violating a court order could render a company "stolen."

14      Plaintiff's accusations about "stolen funds" and "clear bribes" have even less

15  support.  *Id.* ¶¶ 30, 35(2).  As to the former, the AC admits the "stolen funds" claim

16  is "[b]ased on third-party statements," and not Plaintiff's own understanding.  *Id.* ¶

17  30.  Allegations of unproven statements taken from unnamed sources cannot be

18  used to state a claim under Rule 9(b).  *See, e.g.*, *Cho v. UCBH Holdings*, Inc., 890

19  F. Supp. 2d 1190, 1203 (N.D. Cal. 2012); *Pace v. Quintanilla*, 2015 WL 652719, at

20  *7 (C.D. Cal. Feb. 13, 2015).  As to the latter, the fact that Plaintiff insists

21  employee bonuses were actually "clear bribes" does not make it so.

22      Still other allegations are made on "information and belief" (*see* AC ¶ 14),

23  which also cannot be used to satisfy Rule 9(b) as a matter of law.  *Solis v. City of*

24  *Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly*

25  and *Iqbal* era, pleading on information and belief, without more, is insufficient to

26  survive a motion to dismiss for failure to state a claim.").  And the AC also

27  repeatedly and impermissibly lumps Platinum together with the 26 other

28  defendants.  AC ¶¶ 87-93; *Swartz*, 476 F.3d at 764.  Contrary to the goal of Rule

9(b), this group pleading leaves Platinum guessing at which allegations are directed at it, and which are meant for other defendants.  *See Semegen*, 780 F.2d at 731.

At bottom, Plaintiff has averred very serious accusations of racketeering against Platinum for purportedly scheming with the other defendants to steal from Plaintiff.  But the AC does not allege any facts to show that Platinum ever took any specific action or made any specific communication in furtherance of the purported scheme.  As such, the claims must be dismissed pursuant to Rule 9(b).

### B.    The AC Does Not Even *Generally* Aver a Claim

As noted, the AC avers two claims against Platinum, for conspiracy to violate RICO, AC ¶¶ 87-93, and receipt of stolen property, *id.* ¶¶ 133-143, both of which sound in fraud and must be dismissed because they are not specifically pled.  But the AC also fails to even generally aver the claims' required elements, and must be dismissed for that reason as well.

### 1.    The AC Does Not State the Elements of a RICO Conspiracy Claim Against Platinum

The federal RICO provisions make it "unlawful for any person to conspire to violate" any substantive provision of RICO, 18 U.S.C. § 1962(d), and give a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c) ("Section 1964(c)").  Because Plaintiff neither has standing to sue Platinum under Section 1964(c), nor states a conspiracy claim under Section 1962(d), the AC's conclusory allegations must be dismissed.[6]

---

[6] The AC also cannot state a claim against Platinum for conspiring to commit racketeering without first averring a substantive RICO violation.  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Because there are many other grounds upon which this Court should dismiss the conspiracy claim, Platinum will not endeavor here to untangle the web of substantive RICO claims aimed at Yan.

- 12 -

a.   **The AC Does Not Allege That Platinum Committed an Independently Wrongful Overt Act**

To have standing to sue under Section 1964(c) for conspiracy to violate RICO, the plaintiff must show that its injuries were proximately caused by an "overt act" of the defendant that is independently wrongful under the RICO statutes. *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000). An "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)." *Id.* at 505. In other words, "a person injured by an over[t] act done in furtherance of a RICO conspiracy has no cause of action unless the overt act proximately causing his injury *is itself an act of racketeering*." *Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*, 2013 WL 11323601, at *8 (C.D. Cal. Dec. 13, 2013) (emphasis added).

While the overt act requirement is typically satisfied by the allegations of a substantive RICO violation, Plaintiff here does not allege that Platinum committed a substantive RICO violation. Instead, Plaintiff alleges that Yan violated the substantive provisions of the RICO wire fraud statute, *see* AC ¶¶ 59-86, and that Platinum—lumped-in as one of "all Defendants"—somehow conspired with Yan and thereby violated the RICO conspiracy provision. *Id*. ¶¶ 87-93.

Here, Plaintiff alleges "[e]ach Defendant committed at least one" of the following overt acts in furtherance of Yan's conspiracy to commit wire fraud: (1) "misleading Plaintiff as to its connection with the enterprise Jagex," (2) "making misleading statements to the Plaintiff regarding Huarong's intentions of transferring its 55% interest in SHNT and Jagex to the Plaintiff," (3) "facilitating the payment of all bribes as described above," and (4) "concealing their intentions to allow Yan to maintain control of Jagex regardless of actual ownership." *Id*. ¶ 91.

As discussed above, these group-pled, conclusory allegations do not satisfy the heightened pleading requirements of Rule 9(b). But even under the more

- 13 -

relaxed standards of Rule 8(a) the allegations do not state a claim against Platinum, because the acts alleged are not "independently wrongful under any substantive provision of the [RICO] statute." *Beck*, 529 U.S. at 506.  Indeed, the AC does not even try to explain which substantive provisions of the RICO statute were purportedly violated by Platinum's alleged acts.  *See* AC ¶¶ 87-93.[7]  On that basis alone the RICO claim must be dismissed.

Plaintiff's conclusory RICO allegations against Platinum are also largely refuted by the AC itself.  For example, while Plaintiff alleges that it was misled about Yan's supposed involvement in the Jagex transaction, the AC admits the allegedly misleading statements were made by Platinum's limited partner Huang (or his alleged agents), *not* by Platinum.  AC ¶¶ 28, 31.  Those statements cannot simply be imputed to Platinum.  *See*, *e.g.*, *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1184 n.36 (S.D. Cal. 2018) (refusing to impute limited partner actions to the partnership entity).

In any event, those allegedly misleading statements from Huang or his alleged agent Belle Liu were made from Hong Kong or Australia (where the two reside, respectively), AC ¶¶ 28, 31, and courts have recognized that the "wire fraud statute does not have extraterritorial application and may not serve as a predicate act for a RICO claim premised on foreign-based activities." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 555 (S.D.N.Y. 2018).  It goes without saying, but a scheme involving foreign residents Huang and Belle Lui (and, again, *not* Platinum) misrepresenting the intentions of Yan (presumably, a Chinese national) and his attempts to control Jagex (an English company) through a Chinese auction process is indeed "principally foreign in nature and only

---

[7] While Plaintiff alleges that Yan engaged in wire fraud, the AC makes no such allegation regarding Platinum (AC ¶ 88), and does not even generally allege the required elements of a wire fraud claim against Platinum, including, for example, that Platinum devised a scheme with specific intent to defraud Plaintiff.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986).

- 14 -

1    incidentally touche[s] the United States." *Id.* at 557.

2         It should also be noted that at the time the alleged misrepresentations were

3    made, Plaintiff was then the *general partner* of Platinum, AC ¶¶ 28, 31, and it is

4    entirely unclear how a limited partnership, the entity, could mislead its general

5    partner, who ostensibly operated the limited partnership.  Nor does the vague

6    statement that Platinum "mislead[] Plaintiff as to its connection with the enterprise

7    Jagex" offer any clarity around what the misrepresentation even was.  AC ¶ 91.

8    And the alleged "misleading statements" that occurred *after* Plaintiff sold its

9    general partner interest in Platinum, *i.e.*, those regarding "Huarong's intentions of

10   transferring its 55% interest in SHNT and Jagex to the Plaintiff," had nothing to do

11   with Platinum, and Plaintiff makes no suggestion otherwise.  *Id.*

12        Plaintiff may argue that Platinum's acts were violative of RICO's bribery

13   provisions, but the AC does not attempt to plead Platinum's involvement in bribery

14   of "a public official," as required by the statute.  18 U.S.C. § 201.  At most, the AC

15   insists that Platinum gave "clear bribes" to Jagex employees, AC ¶ 35(2), but even

16   if that were true (and it is not, they were given bonuses), Jagex employees are not

17   "public officials" under the law.  18 U.S.C. § 201(a)(1).  Furthermore, Plaintiff's

18   conclusory assertion that employee bonuses were "bribes" "does not tend to

19   exclude a plausible and innocuous alternative explanation," like a company

20   rewarding its management team after the closing of a big deal.  *See Eclectic*

21   *Properties*, 751 F.3d at 998.

**b.      The AC Does Not Allege That Plaintiff Was
          Proximately Injured by Platinum's Overt Acts**

24        To have civil RICO standing under section 1964(c), a "plaintiff must show:

25   (1) that his alleged harm qualifies as injury to his business or property; and (2) that

26   his harm was 'by reason of' the RICO violation."  *Canyon Cty. v. Syngenta Seeds,*

27   *Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citation omitted).  "RICO does not provide

28   a cause of action for all types of injury to property interests, but only for injuries

- 15 -

1  resulting in 'concrete financial loss.'" *Diaz*, 420 F.3d at 898 (citation omitted).

2  "Without a harm to a specific business or property interest—a categorical inquiry

3  typically determined by reference to state law—there is no injury to business or

4  property within the meaning of RICO." *Id.* at 900. An expectancy interest alone is

5  insufficient. *See Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1090 (C.D. Cal. 2011).

6        For proximate cause, the "central question" is "whether the alleged violation

7  led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S.

8  451, 461 (2006); *see also, e.g., Hemi Grp., LLC v. City of New York*, 559 U.S. 1,

9  10–12 (2010) (reaffirming that "in the RICO context, the focus is on the directness

10  of the relationship between the conduct and the harm," and dismissing RICO claims

11  because plaintiff's "theory of causation is far too indirect"); *In re Volkswagen*

12  *"Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 4581340, at

13  *10 (N.D. Cal. Sept. 20, 2019) (rejecting foreseeability in favor of the directness

14  standard and holding that because the alleged injuries were "well beyond the first

15  step in the causal chain," proximate cause was lacking).

16        Here, Plaintiff avers only that it was generally "injured in its business and

17  property" by the "Defendants" who "proximately caused" those undefined injuries.

18  AC ¶ 93. Those conclusory allegations do not satisfy Rule 9(b), but also fail under

19  Rule 8(a), because "mere recitations of the causation element of the RICO claim do

20  not provide sufficient grounds for entitlement to relief." *In re Actimmune Mktg.*

21  *Litig.*, 614 F. Supp. 2d 1037, 1051 (N.D. Cal. 2009), *aff'd*, 464 F. App'x 651 (9th

22  Cir. 2011).

23        To the extent that Plaintiff claims it was injured by interference with its

24  *prospective* business relations, Plaintiff notably only alleges that tort against Yan,

25  not Platinum, *see* AC ¶¶ 120-27, and does not even attempt to plead the elements of

26  that claim against Platinum. *See, e.g., Kamal v. Cty. of Los Angeles*, 2019 WL

27  7195903, at *4 (C.D. Cal. Nov. 26, 2019) (to plead a claim for interference with

28  prospective relations a plaintiff must show, among other elements, an "existing

- 16 -

economic relationship between plaintiff and a third party, with the probability of future economic benefit" and "intentional acts on the part of defendant designed to disrupt that relationship.").

Plaintiff alleges that Huang (and his agents) made misrepresentations to Plaintiff about "Yan's involvement with the transaction," but even if those misrepresentations could be imputed to Platinum (and as discussed above, they cannot), they have no "direct connection" to Plaintiff's alleged injury, as they are alleged to have done little more than delay Plaintiff's exit from Platinum. *See* AC ¶¶ 31-32. The alleged misrepresentations therefore are not the actual cause of Plaintiff's supposed injuries, because "but-for" the alleged misrepresentations, Plaintiff still would have voluntarily chosen to separate from Platinum in any event, and therefore still would not have acquired Jagex. To the extent Plaintiff was delayed in making that voluntary decision, it does not and cannot explain how that delay harmed it, particularly given the subsequent and superseding alleged wrongdoings by others that purportedly deprived Plaintiff of acquiring Jagex. Put simply, even if Plaintiff had possessed a cognizable property interest in Jagex at the time of Platinum's acquisition, and it did not, Platinum's alleged wrongdoing is far too attenuated from Plaintiff's purported injury to state a claim. *See Anza*, 547 U.S. at 459–60 ("The element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws.").

### c.   Even if Plaintiff Had Standing to Allege Its RICO Conspiracy Claim, the AC Fails to State a Claim Under Section 1962(d)

To establish a violation of Section 1962(d), the plaintiff "must allege facts that show the existence of an agreement between two or more persons that clearly amounted to a meeting of the minds." *Bulan v. JP Morgan Chase Bank*, 2011 WL

13266527, at *7 (N.D. Cal. Apr. 6, 2011).  This agreement must be comprised of two separate agreements: "an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).  In addition, conspiracy to violate RICO requires a showing that the defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it."  *Id.* (citation omitted).

Here, Plaintiff does not allege *any* facts showing how Platinum entered into a conspiracy to "divert money from Jagex to [its] own benefit, to facilitate the payment of bribes in an effort to defraud Plaintiff and other investors, and to ensure the Defendant Yan maintained control of Jagex."  AC ¶ 90.  Instead, Plaintiff once again group pleads in a conclusory fashion that "Defendants agreed to the overall objectives of Yan."  *Id.* ¶ 92.  But again, "[c]onclusory allegations that RICO defendants entered into an agreement are insufficient" to state a claim,  *Lavigne v. Herbalife, LTD*, 2019 WL 6721619, at *9 (C.D. Cal. Oct. 22, 2019) (citation omitted), and, in any event, the AC does not allege that Platinum ever agreed to conduct the affairs of the enterprise or to commit at least two predicate acts in furtherance of a conspiracy.  *Baumer*, 8 F.3d at 1346.  And the claim that "[t]he conspiracy commenced at least as early as 2018," AC ¶ 89, further confuses things because Platinum was not formed until April 11, 2019—and when it was formed, it was formed by *Plaintiff* and *Plaintiff* served as its general partner until February 25, 2020.  *Id.* ¶¶ 23, 32.  Platinum doubts that Plaintiff is claiming it (as the operating partner) entered into a conspiracy agreement on Platinum's behalf, though it is impossible to tell given the AC's puzzle pleading.

## 2.     Plaintiff Fails to Allege Platinum Received Stolen Goods.

With no viable path under the RICO statute, Plaintiff turns to a novel construction of the California Penal Code to allege that Platinum (as well as now-dismissed Defendant Carlyle) "received and/or concealed stolen property"—*i.e.*,

- 18 -

1    Jagex—or "aided and abetted" others in doing so in violation of Section 496(a).

2    AC ¶ 134.  Under "California law, the crime of 'receipt of stolen property' . . .

3    consists of three elements: (a) the property was stolen, and (b) the defendant was in

4    possession of it, (c) knowing it was stolen," *Verdugo-Gonzalez v. Holder*, 581 F.3d

5    1059, 1061 (9th Cir. 2009) (citing *People v. Anderson*, 210 Cal. App. 3d 414, 420

6    (1989)), and "[anyone] who has been injured" by the purchase or receipt of stolen

7    property may bring a claim for treble damages.  *See* Cal. Pen. Code § 496(c).

8            As noted above, Plaintiff's stolen property claim fails because it does not

9    meet the requirements of Rule 9(b) for alleging fraud.  But it also fails for several

10   other reasons.

11           ***First***, the California Legislature never intended for Section 496 to apply to

12   fraud-theft claims, because it was enacted as a means "to dry up the market for

13   stolen goods." *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1136

14   (2020) (citation omitted).[8]  For this reason, courts have rejected the application of

15   Section 496(c) in cases "where the plaintiff merely alleges and proves conduct

16   involving fraud, misrepresentation, conversion, or some other type of theft that does

17   not involve 'stolen' property." *Id.* at 1134 (collecting cases).  Indeed, to do

18   otherwise would "transmogrify the law of remedies" by permitting treble damages

19   for any tort involving property. *Id.* at 1135.  Plus, the punitive damages statutes

20   would effectively be repealed if courts allowed treble recovery under

21   preponderance of evidence standards instead of through proof of "oppression,

22   fraud, or malice" by clear and convincing evidence. *Id.* at 1136.  Thus, granting

23   Plaintiff use of the penal code for an ordinary (yet baseless) business dispute would

24   be entirely improper. *GEC US 1 LLC v. Frontier Renewables, LLC*, 2016 WL

25   4677585, at *9 (N.D. Cal. Sept. 7, 2016) (refusing to "sanction the use of the penal

26   _____

27   [8] The California Supreme Court granted review of *Siry* to resolve a conflict in the
     appellate courts on this issue.  *Siry Inv. v. Farkhondehpour*, 468 P.3d 701 (Cal.
28   2020).  Until then, the *Siry* court's analysis on this issue is the most persuasive and
     therefore this Court should follow its reasoning.

code to redress ordinary business disputes over ownership interests – an untenable result.").

*Second*, Plaintiff has no standing to sue under Section 496(a) because it was not plausibly injured by Platinum's purported "receipt" of "stolen goods."  Plaintiff alleges that Platinum "received" Jagex at some point in April 2020, AC ¶¶ 32, 35(2), but there are no allegations to show that Plaintiff had a cognizable property interest in Jagex at that time, and therefore it could not have been injured by Platinum's acquisition.  Furthermore, Plaintiff admits that it *voluntarily* sold its interest in Platinum in February 2020, *id.* ¶¶ 31-32, before Platinum's acquisition of Jagex was even completed, and today retains certain *benefits* from the acquisition. *Id.* ¶ 32 n.9 (Plaintiff asserts that it "has rights under the [Membership Unit Purchase Agreement with MacArthur] . . . should any Court ultimately rule that Platnium (sic) legally acquired SHNT and Jagex").  It defies logic that Plaintiff could voluntarily sell its general partner interest in Platinum to MacArthur, at a time it knew full well Platinum was purchasing SHNT and Jagex, *id.* ¶ 32, receive benefits from that acquisition, and now claim to have been harmed by it.

*Third*, the AC does nothing to show that Platinum "had actual knowledge that the goods it received or sold were in fact stolen."  *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *12 (C.D. Cal. Aug. 4, 2016).  As it does throughout the AC, Plaintiff alleges in conclusory fashion that "both Platinum and The Carlyle Group knew that Jagex had been stolen," AC ¶ 140, but such formulaic recitations of the elements of a cause of action are to be disregarded.  *Twombly*, 550 U.S. at 555.  Further, in other places the AC concedes that Platinum's acquisition of SHNT and Jagex was lawful.  AC ¶ 32 n.7 (stating that an English court adjudicated and then dismissed a dispute over claims of ownership in Jagex); *id.* at n.8 (stating that "the Shanghai Stock Exchange [] validate[d] the legality of the sale of SHNT to Platnium (sic)"); *id.* ¶ 32 n.9 (reserving rights should "any Court ultimately rule that Platnium (sic) legally acquired SHNT and Jagex").

- 20 -

1    Indeed, the AC does not even allege facts to establish that Jagex was, in fact,

2    "stolen."  Though Plaintiff suggests that Jagex was stolen in a manner constituting

3    "theft by false pretense[s]," *id.* ¶ 138, Plaintiff completely fails to plead the

4    elements of that crime.  *See People v. Wooten*, 44 Cal. App. 4th 1834, 1842 (1996)

5    ("A theft conviction on the theory of false pretenses requires proof that (1) the

6    defendant made a false pretense or representation to the owner of property; (2) with

7    the intent to defraud the owner of that property; and (3) the owner transferred the

8    property to the defendant in reliance on the representation.").  Once again, and in

9    violation of Rule 9(b), Platinum is left guessing as to what the "false pretenses"

10   could be, when they were made, or who purportedly made them.  And while

11   Plaintiff alleges misrepresentations by Huang, Platinum's limited partner, or

12   Huang's agents, AC ¶¶ 28, 31, those purported misrepresentations were to Plaintiff,

13   not the "owner of [the Jagex] property," Fukong.  *Id.* ¶ 21; *see Wooten*, 44 Cal.

14   App. 4th at 1842.  In any event, as discussed above, Plaintiff fails to describe any

15   misrepresentations by Platinum, the entity, and misrepresentations by its limited

16   partner (or a limited partner's agents) cannot be imputed to the limited partnership.

17   *In re Packaged Seafood*, 338 F. Supp. 3d at 1184 n.36.  Likewise, under the second

18   and third elements, Plaintiff does not allege facts showing that Platinum "intended

19   to defraud" Fukong (the then-owner of Jagex) or that Fukong transferred its

20   interests in Jagex to Platinum "in reliance on" any alleged misrepresentation.  *See*

21   *Wooten*, 44 Cal. App. 4th at 1842.

22   The AC alleges that Platinum acquired Jagex in violation of a Chinese court

23   order, AC ¶ 35(2), but does not allege how that renders Jagex "stolen" under

24   California Penal Code § 484(a).  And even if simply violating a Chinese court order

25   converted Jagex into "stolen property" (it does not), the AC itself contradicts the

26   claim that Platinum violated the order in the first place.  As the AC alleges, the

27   Chinese court actually "lift[ed] the freezing of 100% equity of [SHNT]," meaning

28   Platinum was free to acquire that equity.  AC ¶ 38.

- 21 -

Moreover, to trigger Section 496, "[t]he property must be stolen at the time it is received or concealed."  *Hennessy v. Infinity Ins. Co.*, 358 F. Supp. 3d 1074, 1081 (C.D. Cal. 2019).  Plaintiff does not allege that Jagex had the character of being "stolen" at the time Platinum acquired it from Fukong, but instead claims that Platinum was the one who stole it.  AC ¶ 35(2) ("Platinum . . . unlawfully seized control of Jagex . . .").  If Platinum supposedly stole Jagex, it could not have also "received" that stolen property.  *See Instant Brands, Inc. v. DSV Sols., Inc.*, 2020 WL 5947914, at *5 (C.D. Cal. Aug. 20, 2020) (dismissing Section 496 claim because plaintiff did not allege that the property was stolen at the time it was unlawfully withheld); *Grouse River Outfitters Ltd v. NetSuite, Inc.*, 2016 WL 5930273, at *15 (N.D. Cal. Oct. 12, 2016) (noting the dual liability issue of convicting a person for both stealing property and then receiving that same stolen property).  Plaintiff does not sufficiently allege that Jagex was stolen property or that Platinum knew that it was and therefore fails to state the elements of a receipt of stolen property claim.

**Fourth**, the stolen property claim fails because the California Penal Code has no application to the wholly extraterritorial conduct at issue.  *See generally* Cal. Penal Code § 777 (a "person is liable to punishment by the laws of this State, *for a public offense committed by him therein*") (emphasis added); *see also United States v. Perez*, 962 F.3d 420, 440 (9th Cir. 2020) ("California's jurisdictional statutes and case law explicitly rule out punishing an act committed entirely in another country[.]").  Put simply, even if Platinum had "stolen" Jagex, that "stealing" would have occurred in China, where the company auction occurred, AC ¶ 22 (calling the Jagex sale a "regulated Chinese auction"), or in England, where the "stolen property," *i.e.*, Jagex, is headquartered, *id.* ¶ 8—*not* in California.  Because Section 496 has no application to foreign fraud-theft claims like this one, Plaintiff's claim is not even actionable.

1    **IV.    CONCLUSION**

2           The AC represents Plaintiff's second attempt to plead a claim against

3    Platinum, but for the reasons discussed above, it again fails to satisfy the

4    requirements of Rule 9(b) and Rule 8(a), and therefore must be dismissed.  Because

5    Plaintiff could never aver the specific facts required to state a RICO claim against

6    Platinum, and because the Section 496 "stolen goods" claim has no place in this

7    business dispute, the claims should be dismissed with prejudice.

8

9    Dated:  June 14, 2021              Respectfully submitted,

10                                      ORRICK, HERRINGTON & SUTCLIFFE LLP

11

12                                      By:    _____*/s/ James N. Kramer*_____
                                               JAMES N. KRAMER
13                                             Attorneys for Defendant
                                               PLATINUM FORTUNE, LP
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT PLATINUM'S MOTION TO DISMISS AMENDED COMPLAINT