James N. Kramer (SBN 154709)
jkramer@orrick.com
M. Todd Scott (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759

Kevin M. Askew (SBN 238866)
kaskew@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:  (213) 629-2020
Facsimile:   (213) 612-2499

Attorneys for Defendant
PLATINUM FORTUNE, LP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PLUTOS SAMA HOLDINGS, INC.<br><br>Plaintiff,<br>v.<br><br>JAGEX LIMITED; YAN JINGGANG; HUARONG INTERNATIONAL TRUST CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD TRUST; CHINA MINSHENG TRUST CO. LTD; PLATINUM FORTUNE, LP; THE CARLYLE GROUP; and DOES 1-20,<br><br>Defendants. | Case No. 8:21-cv-00133-JVS (JDEx)<br><br>**DEFENDANT PLATINUM FORTUNE, LP'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br><u>Hearing</u><br>Date:   September 20, 2021<br>Time:   1:30 pm<br>Judge:  Hon. James V. Selna<br>Ctrm:   10C |

## **TABLE OF CONTENTS**

A. Rule 9(b) Requires Dismissal of the Claims Against Platinum ....................... 2

    1. The RICO Conspiracy Claims Are Not Specifically Alleged ............... 3

    2. Plaintiff Does Not Dispute the Section 496(a) Stolen Property Claim is Not Specifically Alleged ...................................................... 4

B. The Claims Against Platinum Also Fail Under *Twombly* ............................... 5

    1. The AC Does Not Allege Facts to Show Platinum Violated the RICO Conspiracy Provision ............................................................... 5

    2. The Stolen Property Claim is Wrong on the Law, and Factually Baseless in Any Event ........................................................................ 10

C. The Claims Against Platinum Should Be Dismissed With Prejudice ............ 14

D. Conclusion ...................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................... 5

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993) ...................................................................... 9, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 1, 5, 9

*Berkeley Ltd. P'ship v. Arnold, White & Durkee*,
   118 F. Supp. 2d 668 (D. Md. 2000) ........................................................ 6, 13

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir.1995) ............................................................................ 14

*Bulan v. JP Morgan Chase Bank*,
   2011 WL 13266527 (N.D. Cal. Apr. 6, 2011) ......................................... 9, 10

*Carrico v. City & Cty. of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) ...................................................................... 14

*In re El Paso Pipeline Partners, L.P. Derivative Litig.*,
   132 A.3d 67 (Del. Ch. 2015), *rev'd on other grounds sub nom. El Paso
   Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016) ............. 6, 7

*Freeney v. Bank of Am. Corp.*,
   2016 WL 5897773 (C.D. Cal. Aug. 4, 2016) .................................................. 13

*Hueso v. Select Portfolio Servicing, Inc.*,
   2021 WL 1102452 (S.D. Cal. Mar. 23, 2021) ................................................ 12

*Instant Brands, Inc. v. DSV Sols., Inc.*,
   2020 WL 5947914 (C.D. Cal. Aug. 20, 2020) ................................................ 12

*Konik v. Time Warner Cable*,
   2010 WL 11549435 (C.D. Cal. July 19, 2010) ............................................ 8, 9

*Otte v. Naviscent, LLC*,
   624 B.R. 883 (N.D. Cal. 2021) ...................................................................... 12

*In re Packaged Seafood Prod. Antitrust Litig.*,
 338 F. Supp. 3d 1118 (S.D. Cal. 2018) .................................................................. 6

*People v. Kunkin*,
 9 Cal. 3d 245 (1973) ............................................................................................ 12

*Siry Inv., L.P. v. Farkhondehpour*,
 45 Cal. App. 5th 1098 (2020) ........................................................................ 11, 12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
 802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................................................. 3

*United States v. Cauble*,
 706 F.2d 1322 (5th Cir. 1983) ............................................................................. 10

*United States v. Gonzalez*,
 921 F.2d 1530 (11th Cir. 1991) ........................................................................... 10

*United States v. Perez*,
 962 F.3d 420 (9th Cir. 2020) ............................................................................... 14

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) .......................................................................... 2, 3

**Statutes and Rules**

18 U.S.C.
 § 201 ...................................................................................................................... 6
 § 1962(c) .............................................................................................................. 10

Cal. Pen. Code
 § 496 ............................................................................................................*passim*

Fed. R. Civ. P.
 Rule 8(a) ..................................................................................................... 1, 5, 15
 Rule 9(b) ......................................................................................................*passim*

1 | The Motion to Dismiss (the "Motion," Dkt. No. 38) filed by Platinum Fortune, LP ("Platinum") demonstrates that Plaintiff's fraud-based claims for conspiracy to violate RICO and receipt of stolen property must be dismissed under Rule 9(b) because the Amended Complaint (the "AC," Dkt. No. 9) does not allege particularized facts to show Platinum did anything wrong. The Motion also demonstrates that the AC does not even satisfy Rule 8(a), as its allegations of Platinum's wrongdoing are entirely conclusory, and do not contain the facts necessary to state a claim to relief that is plausible on its face, as required under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For those reasons, and as further discussed below, the AC should now be dismissed.

Plaintiff's Opposition to the Motion (the "Opposition" or "Opp.," Dkt. No. 42) does nothing to rebut the Motion's showing, and actually simplifies the Court's analysis by focusing the AC's sprawling, confusing allegations down to three central accusations of Platinum's purported wrongdoing.

First, Plaintiff asserts the AC states a RICO conspiracy claim because it alleges that on April 20, 2019, Platinum issued a "comfort letter" that made "numerous and very specific misrepresentations" to Plaintiff regarding Platinum's business. Opp. at 10, citing AC ¶ 28. But as the AC admits, at that time Plaintiff was Platinum's general partner, and the "comfort letter" was issued not by Platinum, but—at Plaintiff's specific request—by Platinum's limited partner, and made representations about the limited partner's business ties, *not* about Platinum. *See* AC ¶ 28. Alleged misstatements made by other parties *about themselves* obviously cannot form the basis of a claim against Platinum.

Second, Plaintiff argues the AC states a RICO conspiracy claim through "detailed allegations regarding the purported wrongful bribes to Chinese government officials and SHNT/Jagex employees that Platinum facilitated." Opp. at 10-11, citing AC ¶ 35-38, 40-41. But Platinum is not alleged to have bribed or "facilitated" the bribes of "Chinese government officials" (*see* AC ¶¶ 36-37 ("Yan

- 1 -

makes bribe to Chinese Government Official")), and Plaintiff cannot allege any facts to show the bonuses paid to Jagex employees were actually "clear bribes," as Plaintiff insists.  AC ¶ 35(2).[1]

Third, Plaintiff argues the AC states a Section 496 "stolen property" claim because it alleges Platinum acquired Jagex at a time it "knew that the property was stolen."  Opp. at 20.  But (i) Jagex, a corporate entity, is not "property" that can be "stolen" in the sense of theft or extortion, as required by the statute; (ii) the AC does not allege any facts to show how Jagex was "stolen," let alone that Platinum knew it was stolen; and (iii) in any event, Plaintiff could not have been harmed by the alleged "theft," because it did not have any rights or interest in Jagex at the time Platinum acquired Jagex.

The AC is Plaintiff's second failed attempt to state claims against Platinum. Because Plaintiff could never cure the AC's fatal flaws, its claims should now be dismissed with prejudice.

**A.     Rule 9(b) Requires Dismissal of the Claims Against Platinum**

Though Plaintiff accuses Platinum of participating in a fraudulent conspiracy (AC ¶ 90) and knowingly receiving "stolen property" (*id.* ¶ 140), the AC does not aver specific facts to support its salacious claims, as required by Rule 9(b).  *See* Motion at 8-10.  To the contrary, as the chart included in the Motion readily demonstrates (*see* Motion at 7), Plaintiff's allegations of Platinum's purported wrongdoing (shaded grey on the chart) are entirely conclusory, do not set forth the "who, what, when, where, and how" of the allegedly fraudulent conduct, and thus cannot be used to state fraud-based claims.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  For that reason alone, the AC must be dismissed as to Platinum.[2]

---

[1] As the Court will recall, the AC alleges two paragraphs numbered 35, the second of which (appearing on page 17 of the AC), is referred to as paragraph "35(2)."

[2] Plaintiff argues that Rule 9(b) can sometimes be satisfied by mere allegations of "information and belief," but admits that exception applies only when the

### 1. The RICO Conspiracy Claims Are Not Specifically Alleged

Plaintiff argues that Rule 9(b) does not apply to the First Cause of Action for Violation of RICO because the claim "do[es] not sound in fraud but merely involve[s] allegations of illegal bribes." Opp. at 8, citing AC ¶¶ 77-81, 88 and 91. But the First Cause of Action is not averred against Platinum. Platinum is charged under the Second Cause of Action, for *conspiracy* to violate RICO "in an effort to *defraud* Plaintiff" (AC ¶ 90, emphasis added), a claim the Opposition does not dispute is subject to the heightened pleadings requirements of Rule 9(b). *See* Motion at 9 (citing cases); *Vess,* 317 F.3d at 1106-07 (holding that allegations of a fraudulent conspiracy needed to satisfy Rule 9(b)). Because the Opposition does not dispute the Motion's showing that Rule 9(b) applies to the RICO conspiracy claim, Plaintiff concedes the point for purposes of the Motion. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (plaintiff's "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

Plaintiff insists the specific facts required to plead a RICO conspiracy claim are alleged in AC paragraph 28, which purports to detail "Platinum's misrepresentations" to Plaintiff. *See* Opp. at 10, citing AC ¶ 28. But paragraph 28 does not contain any allegations about *Platinum's* actions at all, and thus cannot be used to satisfy Rule 9(b).[3] To the contrary, it alleges that in response to Plaintiff's request for a "comfort letter," "Belle Liu and [Di Xi] Huang[,] in connection with their role [as the limited partner] at Platinum[,] made numerous and very specific

---

allegations of information and belief are "accompanied by a statement of [specific] facts" (Opp. at 10, citation omitted), which is plainly lacking here. *See* Motion at 10.

[3] While Plaintiff argues that Rule 9(b) does not require the AC to "specifically reference Platinum by name" (Opp. at 10, n.1), the Motion shows that under Rule 9(b) Plaintiff is required to allege the "role of each defendant in the fraud," and cannot "lump multiple defendants together." Motion at 9 (citations omitted).

misrepresentations to Plaintiff regarding *their* connections or ties to SHNT or Fukong and *their* intentions regarding the SHNT/Jagex transaction." Opp. at 10, citing AC ¶ 28 (emphasis added). Allegations regarding *Liu and Huang*'s representations about "their connections" and "their intentions"—*not* Platinum's—cannot be used to state a claim for fraud against Platinum.[4] That is particularly true given that Plaintiff was Platinum's general partner when the comfort letter was issued (AC ¶ 32), and thus would have been in the position to know that Liu and Huang were not speaking on the entity of Platinum's behalf.

Plaintiff also asserts that its "allegations regarding the purported wrongful bribes to Chinese government officials and SHNT/Jagex employees that Platinum facilitated clearly satisfy Rule 9(b) because they indicate who made the payments, how the payments were made, the specific amount of such payments and the approximate dates of such payments." Opp. at 10-11, citing AC ¶¶ 35-38, 40-41. But Platinum is not alleged to have bribed "Chinese government officials" (*see* AC ¶¶ 36-37 ("Yan makes bribe to Chinese Government Official")), and Plaintiff cannot allege any facts to support its ludicrous assertion that the bonuses paid to Jagex employees were actually "clear bribes" to get them to "keep quiet" about the fact that "Platinum had seized control of the company illegally." *Id.* ¶ 35(2). Plaintiff calling the bonuses "bribes" does not make them so, and does not satisfy Rule 9(b)'s requirement to plead particularized facts to show fraud.

### 2.    Plaintiff Does Not Dispute the Section 496(a) Stolen Property Claim is Not Specifically Alleged

Plaintiff argues that Rule 9(b) should not apply to its Section 496(a) "stolen property" claim because the claim purportedly "do[es] not sound in fraud." Opp. at

---

[4] As the AC admits, Plaintiff requested the comfort letter on April 10, 2019, *before Platinum was even formed* (AC ¶¶ 23, 28), and specifically sought assurances that "*Huang* was not affiliated with SHNT or Fukong," and "that *Huang* did not have any … financial relationship with SHNT and Fukong. *Id.* ¶ 28 (emphasis added). For Plaintiff to now claim the letter concerned Platinum is disingenuous at best.

- 4 -

20. In fact, the Section 496(a) claim specifically incorporates by reference all of the AC's preceding allegations of Platinum's purported fraudulent conduct (*see* AC ¶ 133), and alleges that Platinum's purported theft occurred "by false pretense," of which fraud is an integral element. *Id.* ¶ 138 (defining "theft by false pretense" as where a person "fraudulently gets or obtains possession of money, or property" through "any false or fraudulent representation or pretense"). As authority cited in the Motion holds—and Plaintiff does not dispute—where a Section 496 "claim relies almost entirely on the preceding allegations of fraudulent conduct, [it] must comply with Rule 9(b) as a result." Motion at 9-10, citing *Fodor v. Blakey*, 2012 WL 12893985, at *13 (C.D. Cal. Feb. 21, 2012).

The Opposition does not (and cannot) argue that Plaintiff's Section 496 claim satisfies Rule 9(b), and thus effectively concedes the claim must be dismissed on that basis. *See* Opp. at 20.

### B. The Claims Against Platinum Also Fail Under *Twombly*

Though Rule 9(b) demands dismissal of Plaintiff's claims against Platinum, the claims also fail under Rule 8(a) and the U.S. Supreme Court's decision in *Twombly*, which requires that Plaintiff allege "enough *facts* to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to state a claim under Rule 8(a), Plaintiff must allege facts to create "more than a sheer possibility that a defendant has acted unlawfully"). Because the AC's unsupported, conclusory allegations do not meet that standard, the claims against Platinum must be dismissed for that separate reason as well.

#### 1. The AC Does Not Allege Facts to Show Platinum Violated the RICO Conspiracy Provision

The Motion demonstrates three independent reasons why Plaintiff's RICO conspiracy claims fail to satisfy Rule 8(a) and *Twombly*, none of which are rebutted by the Opposition. *See* Motion at 13-18.

*First*, the AC does not allege that Platinum committed an overt act that was independently wrongful under the RICO statutes. *See* Motion at 13, citing *Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*, 2013 WL 11323601, at *8 (C.D. Cal. Dec. 13, 2013). For example, while the AC alleges that Yan bribed Chinese officials (AC ¶¶ 24(b), 36, 40), it does not allege Platinum was involved in Yan's alleged bribes, and does not allege any facts to show how Platinum purportedly "facilitated" those bribes. Further, as discussed above, there are zero facts alleged to support Plaintiff's trumped-up claim that the bonuses paid to Jagex employees were actually "clear bribes," (*id.* ¶ 35(2)), which in any event, would not be independently wrongful under RICO. *See* 18 U.S.C. § 201 (prohibiting bribery of "a public official").

Likewise, while the AC alleges that Yan committed wire fraud, the AC does not allege that Platinum was involved in Yan's alleged acts. AC ¶¶ 70-76. Instead, Plaintiff asserts that Platinum committed wire fraud because its limited partner, Huang, and his agent, Liu, made "misrepresentations" to Plaintiff in an April 20, 2019 response to its request for a "comfort letter." Opp. at 12-13. "By definition," however, "a limited partner is a passive investor" that "does not participate in the control of the business of a partnership." *In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 132 A.3d 67, 83 n.5 (Del. Ch. 2015), *rev'd on other grounds sub nom. El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016). As such, the alleged misrepresentations by Platinum's limited partner cannot be imputed to Platinum absent a fact-based reason to do so. *See* Motion at 14, citing *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1184 (S.D. Cal. 2018) (refusing to impute the actions of a limited partner where plaintiff fails to "advance any arguments why the actions of limited partners of Lion Capital . . . should be imputed to Lion Capital").[5] *See also Berkeley Ltd. P'ship v. Arnold,*

---

[5] Plaintiff argues *In re Packaged Seafood* is distinguishable because the limited partners there were also employees of a different company. Opp. at 13. But that is

*White & Durkee*, 118 F. Supp. 2d 668, 672 (D. Md. 2000) ("Defendant fails to present a convincing argument that Mr. Jefferson or Mr. Myntti as limited partners, had the ability to act on behalf of [the limited partnership].").

Here, there are no facts alleged to show that Huang or Liu had the authority to act on Platinum's behalf, particularly when Plaintiff was then the general (and therefore operating) partner of Platinum at the time. *See In re El Paso Pipeline Partners*, 132 A.3d at 83 n.5 ("[G]eneral partners conduct the day-to-day business and affairs of the limited partnership and are involved in controlling the management of the limited partnership's business."). More importantly, while Plaintiff insists Huang and Liu's alleged misrepresentations in the comfort letter were "made on behalf *of the partnership*" and "with respect to *the business of the partnership*" (Opp. at 13) (emphasis added), as discussed above, the AC plainly alleges that Huang and Liu's representations concerned "*their* connections or ties to SHNT or Fukong and *their* intentions regarding the SHNT/Jagex transaction"—not Platinum's. Opp. at 10, citing AC ¶ 28 (emphasis added). Put simply, the AC's allegations themselves establish that Huang and Liu were not giving comfort "on behalf of the partnership" (Opp. at 13), but rather on behalf of *themselves* (AC ¶ 28), and it is therefore nonsensical to assert their statements can be imputed to Platinum.

*Second,* even if Plaintiff could allege a cognizable overt act by Platinum, the AC does not allege facts to show that Plaintiff was proximately injured by it. *See* Motion at 15-17, citing *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 (N.D. Cal. 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ("mere recitations of the causation element of the RICO claim do not provide sufficient grounds for entitlement to relief"). Plaintiff argues that by "facilitating bribes to foreign

---

exactly the scenario here, as Huang and Liu are alleged to be "agents of Yan." AC ¶ 23. What matters is whether the AC alleges facts to show Huang's statements should be imputed to Platinum, and it does not.

officials and misleading Plaintiff regarding its involvement with Yan and SHNT/Jagex, Platinum caused Plaintiff to lose 100s of millions of dollars in connection with the SHNT/Jagex transaction." Opp. at 14, citing AC ¶¶ 91-93.[6] But Plaintiff does not allege that it ever had a cognizable property interest in "SHNT/Jagex" (*see* Motion at 16-17, citing *Kamal v. Cty. of Los Angeles*, 2019 WL 7195903, at *4 (C.D. Cal. Nov. 26, 2019)), and even if it did Platinum is not alleged to have directly caused an injury to that interest (*see* Motion at 16, citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). To the contrary, Plaintiff claims that in August 2020 it acquired a prospective interest in SHNT/Jagex from Huarong, and *Huarong* allegedly breached its obligation to deliver that interest. AC ¶¶ 43-58. Put simply, by Plaintiff's own allegations, it was Huarong, not Platinum, that directly caused Plaintiff's injuries. *Id.*

Plaintiff argues that Platinum's alleged misstatements about Yan's purported "involvement with the transaction" interfered with Plaintiff's "ability to proceed with the transaction" to purchase Jagex. AC ¶ 31; Opp. at 15. But even if Platinum had made the alleged misstatements in the April 20, 2019 "comfort letter," and it did not, the AC alleges Plaintiff learned the truth of Yan's supposed "involvement with the transaction" in February 2020 (AC ¶ 31), *before* Plaintiff made the alleged bid to acquire Jagex in August 2020 (*id.* ¶ 44), and thus the alleged misstatement could not have injured Plaintiff as a matter of law. *See*, *e.g.*, *Konik v. Time Warner Cable*, 2010 WL 11549435, at *10 (C.D. Cal. July 19, 2010) ("If . . . Plaintiffs knew that TWC'*'*s misrepresentations were false prior to sustaining any injury, their claims necessarily fail."). Moreover, it was Plaintiff's *voluntary* decision to sell its general partner interest in Platinum in February 2020 that interfered with its ability

---

[6] Tellingly, these cited paragraphs do not mention Platinum at all. As discussed, Platinum is not alleged to have made any bribes to foreign officials, the AC does not allege any facts to show Platinum somehow "facilitated" Yan's alleged bribes (s*ee id.* ¶¶ 24(b), 36, 40), and any purported misrepresentations were made by Huang and Liu about and on behalf of *themselves* (*id.* ¶ 28).

to close on the Jagex deal, not any alleged misrepresentation.  AC ¶¶ 31-32; *see* Motion at 20.  Put simply, in February of 2020 Plaintiff knew that Platinum was in the process of acquiring Jagex (Plaintiff admittedly drove that process (*see id.*, n. 8)), yet *chose* to sell its stake in Platinum and no longer "proceed with the transaction."

*Third*, and fundamentally, Plaintiff fails to plead that Platinum agreed to participate in a conspiracy under Section 1962(d).  *See* Motion at 6-7.  Plaintiff argues that Platinum's agreement to violate RICO can simply be "inferred" from the "long-standing relationship between the conspirators including Yan and the current members of Platinum" and their "joint motive of making a profit by wrongfully seizing control over SHNT/Jagex" (Opp. at 16), but Plaintiff does not and cannot cite any *facts* alleged in the AC to support those sweeping generalizations (*see id.*), let alone any caselaw to support the proposition that arguing an inference excuses Plaintiff's obligation under *Twombly* to offer well-pleaded facts.

Further, while Plaintiff would like to "infer" Platinum's agreement to conspire from the purported "long-standing relationship" between Yan and "the current members of Platinum," the AC does not allege that Yan has a relationship with Platinum's current general partner, MacArthur Fortune Holdings, LLC, at all (MacArthur is not even named a defendant to this lawsuit), and the only relationship alleged between Yan and Platinum's limited partner Huang is that the two were "associates."  AC ¶ 23.  Even if that conclusory assertion is true, "association, alone, with the enterprise is, of course, insufficient for violation of RICO: an individual must *agree* to participate in the affairs of the [conspiracy] enterprise."  *Baumer v. Pachl*, 8 F.3d 1341, 1347 (9th Cir. 1993) (quoting *United States v. Valera*, 845 F.2d 923, 929 (11th Cir.1988)).  Because the AC fails to allege *facts* showing that Platinum agreed to participate in the alleged conspiracy to violate RICO, the RICO claim must be dismissed.  *See Bulan v. JP Morgan Chase*

*Bank*, 2011 WL 13266527, at *7-8 (N.D. Cal. Apr. 6, 2011). The RICO claim should also be dismissed because AC does not allege—and Plaintiff never argues—that Platinum "was aware of the essential nature and scope of the enterprise and intended to participate in it." *See Baumer*, 8 F.3d at 1346.

In a last-ditch effort, Plaintiff argues it is not required to allege facts to show that Platinum agreed to participate in a conspiracy, and can state a claim for RICO conspiracy simply by claiming that Platinum participated in two predicate acts in violation of RICO Section 1962(c). Opp. at 16-17. But Plaintiff's backward logic—asserting that a RICO conspiracy claim can be plead without the existence of an agreement to conspire—is contrary to the law. *See, e.g.*, *Bulan*, 2011 WL 13266527, at *7-8; *Baumer*, 8 F.3d at 1346 ("[A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise . . . In a RICO conspiracy, as in all conspiracies, agreement is essential.") (citation omitted).[7] In fact, if Plaintiff's theory of liability were correct, then every violation of Section 1962(c) would automatically be a violation of Section 1962(d). In any event, the AC does not allege that Platinum violated two or more predicate acts, because as discussed above, Plaintiff's allegations about "clear bribes" and "comfort letter" misrepresentations are plainly insufficient to state a claim.

### 2. The Stolen Property Claim is Wrong on the Law, and Factually Baseless in Any Event

The Motion demonstrates that Plaintiff's Section 496 stolen property claim is wrongly averred because Jagex, a corporate entity, is not "property" that can be "stolen," as contemplated by a statute enacted "to dry up the market for stolen goods." *See* Motion at 18-19, citing *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal.

---

[7] *See also United States v. Gonzalez*, 921 F.2d 1530, 1539 (11th Cir. 1991) ("A RICO conspiracy requires proof of an agreement to violate a substantive RICO provision."); *United States v. Cauble*, 706 F.2d 1322, 1341 n.64 (5th Cir. 1983) (agreement is "vital element" of RICO conspiracy claim).

App. 5th 1098, 1136 (2020) (citation omitted).  The Motion further shows that even if Section 496 could apply in these circumstances, the AC does not allege any facts to establish the elements of the claim, and, in any event, Plaintiff *could not have been harmed* by the alleged "theft," because it did not have any rights or interest in Jagex at the time it was purportedly "stolen."  Motion at 20-22.

Plaintiff argues that "[a]nything that could be the subject of a theft can also be property under section 496," including intangible property such as trade secrets.  Opp. at 18, citing *People v. Gopal,* 171 Cal. App. 3d 524, 541 (1985).  But the subject of the purported theft here, SHNT/Jagex (as Plaintiff puts it),[8] could not be "the subject of a theft."  As alleged, SHNT is a "holding trust" that "*cannot be traded . . . without following specific Chinese law*" (AC ¶¶ 9, 19 (emphasis added)), and Jagex is a "limited liability company formed under the laws of England" (*id.* ¶ 8).  Neither of those business entities can be "stolen" or subject to a "theft"—they exist as a matter of contract, and filings with the state.  And while Plaintiff insists "there is plenty of authority where state and federal courts apply Penal Code Section 496 to cases similar to this one" (Opp. at 21), Plaintiff cannot cite a single decision where a court has applied Section 496 to the purported theft of a business entity like a holding trust or limited liability corporation (*see id.*).

On the other hand, as the Motion shows, courts have routinely rejected the application of Section 496 where, as here, "the plaintiff merely alleges and proves conduct involving fraud, misrepresentation, conversion, or some other type of theft that does not involve 'stolen' property."  *Siry*, 45 Cal. App. 5th at 1134 (collecting cases).  Plaintiff argues *Siry* has no "precedential effect" because the decision is on appeal (Opp. at 20), but the cases on which its reasoning is premised certainly do, and federal courts in California have continued to follow its reasoning in the

---

[8] Though the AC alleges the purportedly stolen property was merely "Jagex" (*see* AC ¶¶ 139-40), the Opposition repeatedly states that "SHNT/Jagex [is the] stolen property" (Opp. at 19).  That contradiction alone demands dismissal of the claim.

- 11 -

interim. *See Instant Brands, Inc. v. DSV Sols., Inc.*, 2020 WL 5947914, at *4-5 (C.D. Cal. Aug. 20, 2020); *Hueso v. Select Portfolio Servicing, Inc.*, 2021 WL 1102452, at *14-15 (S.D. Cal. Mar. 23, 2021). Plaintiff also claims "a recent federal decision reject[s] *Siry*" (Opp. at 21, citing *Otte v. Naviscent, LLC*, 624 B.R. 883, 913 (N.D. Cal. 2021), but in fact *Otte* buttresses *Siry*, and holds that money constitutes "property" under Section 496 *because* it is capable of being "stolen," that is, "taken through the crime of embezzlement." *Otte*, 624 B.R. at 913. *See also People v. Kunkin*, 9 Cal. 3d 245, 250 (1973) (Section 496 "include[s] property which has been obtained not only by theft by larceny (*i.e.*, stealing) but also by such other forms of theft as embezzlement."). Business entities like Jagex cannot be "stolen," "taken" or "embezzled," and thus Plaintiff's claims are necessarily grounded in allegations of "fraud, misrepresentation, [and] conversion," *Siry*, 45 Cal. App. 5th at 1134, *not* theft, as required by Section 496. *See, e.g.*, AC ¶¶ 90 (defendants sought to "defraud Plaintiff"); 91 (defendants "mislead[] Plaintiff"); 106 (alleging conversion); 133 (incorporating those allegations into the Section 496 claim).

Even if a business entity like Jagex *could* be "stolen," Plaintiff does not allege any facts to show that Jagex was stolen, and at most asserts that Platinum's alleged acquisition of Jagex somehow violated a Chinese court order issued five days previously. Opp. at 19, citing AC ¶ 35(2). But Plaintiff does not and cannot explain how Platinum purportedly violating a court order rendered Jagex "stolen," and indeed, does not allege that Platinum was even aware of the court order at the time the acquisition allegedly closed, as required by Section 496(a).[9] Instead, Plaintiff argues that "it can be deduced that Platinum knew that the property was

---

[9] Furthermore, while the AC alleges Platinum's purported "receipt" of Jagex violated an April 2020 Chinese court order, it also alleges that in December of 2020 an English court finally resolved the dispute over Jagex's ownership (AC ¶ 32 n.7), effectively mooting the purportedly violated Chinse court order.

- 12 -

stolen" because of its limited partner's alleged "association with Yan." Opp. at 20. But "actual knowledge that the goods [a defendant] received or sold were in fact stolen" requires much more than mere association with an alleged criminal, *see Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *12 (C.D. Cal. Aug. 4, 2016), and, as discussed, the knowledge of a limited partner cannot automatically be imputed to a limited partnership. *See Berkeley Ltd. P'ship*, 118 F. Supp. 2d at 672 (holding that the knowledge of limited partners cannot be imputed to a limited partnership). Nor are there any allegations, in any event, to show that even Platinum's limited partner was aware of the Chinese court order.

Plaintiff argues that because "Plaintiff's successful bid at auction for Huarong's 55% interest in SHNT/Jagex was public information," Platinum must have known that Jagex was "stolen property." Opp. at 20. But Platinum is alleged to have "unlawfully seized control of Jagex on April 22, 2020" (AC ¶ 35(2)), four months *before* Plaintiff alleges it bid on Huarong's interest in Jagex on August 30, 2020 (*id.* ¶ 44). Plaintiff also argues that Platinum is liable under Section 496 because it aided and abetted "Carlyle's receipt of SHNT/Jagex" (Opp. at 20), but Carlyle was voluntarily dismissed from this case (Dkt. No. 30), and is not alleged to have unlawfully "seized" Jagex, at all.

Putting all of those flaws to one side, Plaintiff's Section 496 claim must also be dismissed because Plaintiff's theory of injury is far too speculative, attenuated, and implausible to grant it standing to sue under Section 496(a). *See* Motion at 20. Plaintiff admits, as it must, that because it sold its stake in Platinum, it did not have an interest in Jagex when Platinum allegedly acquired it in April 2020 (AC ¶ 32), and while the Opposition claims Platinum somehow later interfered with Plaintiff's purported "contractual right to acquire SHNT/Jagex" from Huarong (Opp. at 22), it cannot cite any allegation to support that claim (*see id.*).

Finally, as the Motion demonstrates, the California Penal Code does not apply to the extraterritorial conduct at issue, and thus the Section 496 claim is not

1  actionable.  *See* Motion at 22, citing *United States v. Perez*, 962 F.3d 420, 440 (9th
2  Cir. 2020).  Contrary to the Opposition's arguments (*see* Opp. at 22), what matters
3  is *not* where Platinum was formed (Delaware, not California, AC ¶ 23) or where it
4  has offices (or especially not where a different defendant, Yan, resides), but where
5  the alleged "crime [was] committed."  *See Perez*, 962 F.3d at 440.  Plaintiff does
6  not allege a single act of "stealing" that occurred in California, but instead claims
7  that the theft occurred through an auction process in China (Opp. at 19) or else it
8  must have occurred in England, where Jagex is headquartered.  AC ¶ 8.  Claims
9  arising in those foreign jurisdictions cannot be adjudicated here.

        **C.**    **The Claims Against Platinum Should Be Dismissed With Prejudice**

Though leave to amend is regularly granted, it may be denied where, as here, amendment would be futile or subject to dismissal.  *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *see also Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995) ("[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend.").  As discussed, the AC represents Plaintiff's second attempt to state a claim against Platinum, yet its allegations readily demonstrate Plaintiff could never state a RICO conspiracy or Section 496 claim against Platinum, and that therefore the claims should be dismissed with prejudice.

The chronology of events alleged in the AC aptly demonstrate why Plaintiff could never aver a RICO conspiracy claim against Platinum.  Plaintiff admits that it did not acquire an interest in Jagex until September 4, 2020 (AC ¶ 44), and thus it could not have been harmed by Platinum's alleged April 22, 2020 acquisition of Jagex (*id.* ¶ 35(2)), or May 2020 payment of Jagex employee bonuses (what Plaintiff calls "clear bribes") (*id.*).  *Since* September 4, 2020, during the period when Plaintiff claims it has possessed an interest in Jagex, Platinum is not alleged to have done *anything* in furtherance of the purported conspiracy (*see id.* ¶¶ 39-58).

In effect, the AC tacitly admits that Plaintiff cannot cure its RICO conspiracy claim against Platinum, and the claim should therefore be dismissed with prejudice.

The Section 496 claim is simply wrongly averred, and cannot be cured as a matter of law. As discussed, Plaintiff's alleged "stolen property," Jagex, is not "property" at all, but a corporate entity that could not be "stolen" in the manner of "theft or extortion" contemplated by the statute. Thus, even if Plaintiff could sufficiently allege that Platinum purchased Jagex in knowing violation of a Chinese bankruptcy court order, that allegation still would not plead a claim under Section 496. Nor could Plaintiff ever show it was harmed by Platinum's April 22, 2020 alleged "receipt" of Jagex (AC ¶ 35(2)), as Plaintiff admittedly did not acquire an interest in the Company until later. And to the extent Plaintiff alleges Platinum aided and abetted Carlyle's receipt of the purportedly stolen Jagex, the claim against Carlyle has been voluntarily dismissed, and Plaintiff cannot state an aiding and abetting claim absent a primary violation. Because Plaintiff could never cure those fatal disconnects, the Section 496 claim should be dismissed with prejudice.

### D. Conclusion

The AC represents Plaintiff's second attempt to plead a claim against Platinum, but it again fails to satisfy the requirements of Rule 9(b) and Rule 8(a). Because Plaintiff could never aver the facts required to state a RICO claim against Platinum, and because the Section 496 "stolen goods" claim is wrongly averred, the claims should be dismissed with prejudice.

Dated: September 3, 2021

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By:     */s/ James N. Kramer*
        JAMES N. KRAMER
        Attorneys for Defendant
        PLATINUM FORTUNE, LP