| | |
|---|---|
| 1 | James N. Kramer (SBN 154709) |
| 2 | jkramer@orrick.com<br>M. Todd Scott (SBN 226885) |
| 3 | tscott@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 4 | 405 Howard Street |
| 5 | San Francisco, California 94105<br>Telephone:  (415) 773-5700 |
| 6 | Facsimile:   (415) 773-5759 |
| 7 | Kevin M. Askew (SBN 238866) |
| 8 | kaskew@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 9 | 777 South Figueroa Street, Suite 3200<br>Los Angeles, California 90017 |
| 10 | Telephone:  (213) 629-2020<br>Facsimile:   (213) 612-2499 |
| 11 | |
| 12 | Attorneys for Defendant<br>PLATINUM FORTUNE, LP |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| PLUTOS SAMA HOLDINGS, INC.<br><br>    Plaintiff,<br><br>    v.<br><br>JAGEX LIMITED; YAN JINGGANG; HUARONG INTERNATIONAL TRUST CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD TRUST; CHINA MINSHENG TRUST CO. LTD; PLATINUM FORTUNE, LP; MACARTHUR FORTUNE HOLDING, LLC; BELLE LIU; DI XI HUANG, DUKE LI ZHU; and DOES 1-20,<br><br>    Defendants. | Case No. 8:21-cv-00133-JVS (JDEx)<br><br>**DEFENDANT PLATINUM FORTUNE, LP'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing<br>Date:     December 6, 2021<br>Time:     1:30 pm<br>Judge:   Hon. James V. Selna<br>Ctrm:     10C |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 6, 2021, at 1:30 p.m. or soon after, before the Honorable James V. Selna, United States District Judge for the Central District of California, located at 411 West 4th Street, Santa Ana, CA 92701-4516, Defendant Platinum Fortune, LP ("Platinum"), will and hereby does move to dismiss Plaintiff Plutos Sama Holdings, Inc.'s ("Plaintiff") Second Amended Complaint against Platinum pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion, the Memorandum of Points of Authorities below, the other papers and pleadings on file in this action, and any oral argument this Court may choose to consider.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 29, 2021.

Dated: November 5, 2021

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ James N. Kramer_
JAMES N. KRAMER
Attorneys for Defendant
PLATINUM FORTUNE, LP

- i -

PLATINUM'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................... 1

II.    BACKGROUND .......................................................................................... 1

    A.  The FAC Was Dismissed Because It Did Not Allege Specific Facts to Support Its Fraud-Based Claims Against Platinum ................. 2

    B.  The SAC Does Nothing to Cure the FAC's Failed Claims, and Presents a New, Contradictory Theory of Platinum's Liability ............ 3

III.   ARGUMENT ............................................................................................... 4

    A.  The RICO and Stolen Property Claims Fail For the Same Reasons As Before .............................................................................................. 4

        1.  The RICO Claim .................................................................... 5

        2.  The "Stolen Goods" Claim .................................................... 6

    B.  The SAC's "New" Interference Claims Against Platinum Are Dead On Arrival and Should Be Dismissed As Well ........................... 9

        1.  The SAC Fails to State a Claim for Intentional Interference with Contractual Relations Against Platinum ............................. 9

        2.  The SAC's Tortious Interference with Prospective Economic Relations Claim against Platinum Also Fails ........... 12

    C.  Plaintiff's Failed Claims Against Platinum Should Now Be Dismissed With Prejudice ................................................................ 13

IV.    CONCLUSION .......................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**                                                               **Page(s)**

*Arlow v. California Dep't of Corr.*,
    168 F. App'x 249 (9th Cir. 2006) .......................................................................... 13

*Beck v. Prupis*,
    529 U.S. 494 (2000) ................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 8

*Bulan v. JP Morgan Chase Bank*,
    2011 WL 13266527 (N.D. Cal. Apr. 6, 2011) ....................................................... 6

*Canyon Cty. v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) .................................................................................. 6

*Casey v. U.S. Bank Nat. Assn.*,
    127 Cal. App. 4th 1138 (2005) ............................................................................... 8

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
    765 F. Supp. 1467 (C.D. Cal. 1991) ....................................................................... 5

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ................................................................................ 13

*Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*,
    2018 WL 1942139 (C.D. Cal. Feb. 20, 2018) ...................................................... 11

*Exec. Sec. Mgmt., Inc. v. Dahl*,
    830 F. Supp. 2d 883 (C.D. Cal. 2011) .................................................................. 10

*Freeney v. Bank of Am. Corp.*,
    2016 WL 5897773 (C.D. Cal. Aug. 4, 2016) ......................................................... 8

*GEC US 1 LLC v. Frontier Renewables, LLC*,
    2016 WL 4677585 (N.D. Cal. Sept. 7, 2016) ......................................................... 9

*Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
    2016 WL 9045621 (C.D. Cal. Jan. 28, 2016) ....................................................... 10

*Kamal v. Cty. of Los Angeles*,
   2019 WL 7195903 (C.D. Cal. Nov. 26, 2019), *aff'd sub nom.*
   *Kamal v. Farrow*, 859 F. App'x 802 (9th Cir. 2021) ..........................................12

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008)..................................................................................13

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988)..................................................................................13

*Moenig v. Bank of Am.*,
   2015 WL 2185245 (E.D. Cal. May 8, 2015).....................................................6, 11

*Pisciotta v. Teledyne Indus. Inc.*,
   91 F.3d 1326 (9th Cir. 1996)..................................................................................13

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985)....................................................................................5

*Siry Inv., L.P. v. Farkhondehpour*,
   45 Cal. App. 5th 1098 (2020)..................................................................................9

*Siry Inv. v. Farkhondehpour*,
   468 P.3d 701 (Cal. 2020).........................................................................................9

*Solis v. City of Fresno*,
   2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ..........................................................8

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998)................................................................................13

*Verdugo-Gonzalez v. Holder*,
   581 F.3d 1059 (9th Cir. 2009)..................................................................................7

*Zamanyan v. Northland Grp., Inc.*,
   2012 WL 2756644 (C.D. Cal. July 9, 2012) ...........................................................6

**Statutes and Rules**

18 U.S.C.
   § 1962(d)..................................................................................................................2

Cal. Pen. Code
   § 484(a)....................................................................................................................3

PLATINUM'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

§ 496 .................................................................................................................. 2, 7, 9
§ 496(a) .................................................................................................................. 2, 3

Fed. R. Civ. P.
    Rule 8 ................................................................................................................. 6, 7, 11
    Rule 8(a) ........................................................................................................................ 6
    Rule 9(b) ................................................................................................................ *passim*

## I. INTRODUCTION

The Court's September 22, 2021 order (the "Dismissal Order," Dkt. No. 47) dismissed Plaintiff's fraud-based claims against Platinum because they were not supported by the specific factual allegations required by Rule 9(b). That analysis applies with equal force to the Second Amended Complaint (the "SAC," Dkt. No. 48), which advances the same "conclusory legal statements" the Dismissal Order held to be insufficient to state a claim, and should therefore be dismissed for the same reason. Dismissal Order at 5. Indeed, as the redline of the SAC readily demonstrates,[1] the SAC does nothing to cure the deficiencies that led the Court to dismiss Plaintiff's earlier pleading.

The SAC further undercuts Plaintiff's case by repudiating what the Court previously called the "crux" of Plaintiff's case against Platinum—that Platinum "unlawfully purchased" Jagex (Dismissal Order at 4)—and instead alleges exactly the opposite, that Platinum "falsely claimed to have purchased Jagex." SAC ¶ 71. Plaintiff does not explain the dramatic reversal in its theory of liability, though there are no specific allegations to support the new theory in any event.

As discussed more fully below, because the SAC does not even attempt to cure the pleading flaws identified by the Dismissal Order, does not allege any specific facts in support of its trumped-up claims of fraud, and now presents a theory of liability that is contradictory and incomprehensible, its claims against Platinum should again be dismissed, this time with prejudice.

## II. BACKGROUND

The factual background to this dispute is summarized in the Dismissal Order. *See* Dismissal Order at 1-3. This section will briefly discuss the relevant procedural background and then address the changes Plaintiff made to the SAC.

---

[1] Attached as Exhibit 1 to the Declaration of James N. Kramer and herein referenced as Ex. 1.

### A. The FAC Was Dismissed Because It Did Not Allege Specific Facts to Support Its Fraud-Based Claims Against Platinum

The Dismissal Order dismissed both of the claims averred against Platinum in the First Amended Complaint (the "FAC," Dkt. No. 9): conspiracy to violate Federal Civil RICO, 18 U.S.C. § 1962(d), and receipt of stolen property under California Penal Code § 496(a). In the Dismissal Order, the Court held that both claims sounded in fraud, yet the FAC "fail[ed] to allege fraudulent conduct on behalf of Platinum with sufficient particularity to satisfy Rule 9(b)," and on that basis alone dismissed them. Dismissal Order at 6.

As to the RICO claim, the FAC alleged that Platinum conspired to defraud Plaintiff by "unlawfully purchasing" SHNT/Jagex with "stolen funds," and then paid "clear bribes" to Jagex employees to keep them quiet about it. Dismissal Order at 4-5, citing FAC ¶¶ 30, 35(2). But the Court held the FAC's allegations were founded on "conclusory legal statements," and that

> [m]erely describing something as "stolen funds," "a clear bribe," or stating that Platinum "unlawfully seized control" is insufficient to meet the Rule 9(b) pleading standard. There are no indications of the source of the "stolen funds" that Platinum allegedly supplied, how to distinguish a corporate bonus from a "clear bribe," or why the acquisition was an unlawful seizure of control instead of a legitimate sale of a company pursuant to Chinese law.

*Id.* at 5.

On the stolen goods claim, the Dismissal Order noted that the claim was founded solely on Plaintiff's allegation that Platinum "purchased Jagex, an asset [purportedly] stolen or procured through theft or extortion," and that there were "no additional facts or allegations included within the cause of action." Dismissal Order at 5. As before, because the SAC failed to "allege fraudulent conduct on behalf of Platinum with sufficient particularity," the Court held that it "fail[ed] to state a claim under California Penal Code § 496 against Platinum." *Id.* at 6.

Though the FAC represented Plaintiff's second attempt to state a claim against Platinum (having previously amended once of right), the Dismissal Order

gave Plaintiff leave to again amend its claims in the SAC.  Dismissal Order at 6-7.

### B. The SAC Does Nothing to Cure the FAC's Failed Claims, and Presents a New, Contradictory Theory of Platinum's Liability

As the redline comparison of the SAC to the FAC shows, Plaintiff did nothing to address the pleading deficiencies identified in the Dismissal Order.  *See* Ex. 1.  Indeed, the SAC does not add even one sufficiently specific fact—date, time, place—to buttress Plaintiff's RICO allegations (*see id.* at SAC ¶¶ 32-49) or its stolen property allegations (*see id.* at SAC ¶¶ 68-75), and continues to repeat the same "conclusory legal statements" the Dismissal Order already held were insufficient to state a claim.  *See, e.g., id.* at SAC ¶ 3 ("wrongfully obtained funds"), ¶ 16 ("unlawfully purchase[d]"), ¶ 29(a) ("funds were not lawfully obtained"); ¶ 58 ("unlawful seizure," "bribes to Jagex employees").  There are no new facts alleged to show Platinum was financed with "stolen funds," no new facts to show it made "clear bribes," and no new facts to show it "unlawfully seized control" of Jagex.  *See id.* at SAC ¶¶ 37, 47, 49.

To the contrary, as noted above, the SAC now inexplicably reverses course, and alleges that Platinum did <u>not</u> take control of Jagex.  To be clear, in the FAC, the "crux of Plutos' allegation" was that Platinum's "<u>purchase of SHNT and Jagex</u> . . . was unlawful," and enabled Platinum to "unlawfully <u>seize[] control</u> of Jagex."  Dismissal Order at 4, citing FAC ¶¶ 11, 30, 35(2).  Now, the SAC asserts that Platinum did not acquire Jagex, but instead "falsely claimed to have purchased Jagex."  SAC ¶ 71.  Likewise, Platinum is no longer alleged to have "violated California Penal Code §§ 484(a) and 496(a) by <u>purchasing Jagex</u>" (Dismissal Order at 3, citing FAC ¶¶ 133-143 (emphasis added)), but rather to have "aid[ed] and assist[ed] in <u>the Carlyle Group's purported acquisition</u> of 100% of the shares of Jagex" (*see* Ex. 1 at SAC ¶ 74 (emphasis added)).[2]  Plaintiff offers no reason for

---

[2] As the Court will recall, rather than respond to Carlyle's motion to dismiss, Plaintiff voluntarily dismissed Carlyle from this action.  Dkt. No. 30.  Plaintiff

this reversal in its theory of liability, and does not allege any specific facts to support its new theory in any event.

The SAC also now charges Platinum with two claims previously averred only against Defendant Yan: (i) intentional interference with contractual relations (Seventh Cause of Action), and (ii) tortious interference with prospective economic relations (Eighth Cause of Action). *See* Ex. 1 at SAC ¶¶ 146-161. Plaintiff does not explain why these claims are only now being averred against Platinum, and cannot offer any fact-based support for the claims, though Plaintiff now insists (without any factual basis) that Yan was actually an "agent for Platinum," and that Yan's alleged wrongdoing can therefore be imputed to the Company. *See id.* at ¶¶ 148-149.

## III. ARGUMENT

### A. The RICO and Stolen Property Claims Fail For the Same Reasons As Before

The Court should dismiss the SAC's RICO and stolen property claims for the same reasons identified in the Dismissal Order. As the Court held there, both claims sound in fraud, and thus Plaintiff was required to specifically allege "the who, what, when, where, and how" of the fraudulent conduct charged. Dismissal Order at 3, *citing Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). But as in the FAC, the SAC again fails to allege either claim "with sufficient particularity to satisfy Rule 9(b)" (Dismissal Order at 6), and thus the claims must again be dismissed, this time with prejudice.

---

subsequently filed suit against Carlyle in California state court, though Carlyle cross-claimed against Plaintiff for malicious prosecution on the grounds that Plaintiff's "stolen goods" allegations were knowingly false.

### 1. The RICO Claim

On the RICO claim, the SAC again fails to allege any facts to show that Platinum ever used "stolen funds," made "clear bribes," or otherwise did anything specific in furtherance of the purported conspiracy. *See* Ex. 1 at SAC ¶¶ 37, 47, 49. The SAC also again fails to specify what independently wrongful "overt act" Platinum is alleged to have undertaken in favor of the conspiracy (*see* Ex. 1 at SAC ¶¶ 121-127), and in fact pleads the cause of action <u>without ever mentioning Platinum by name</u> (*see id.*). As before, such generalized allegations cannot be used to state a claim for fraud, and therefore the RICO claim must be dismissed pursuant to Rule 9(b). *See, e.g., Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) (under Rule 9(b) the plaintiff must specify the "role of each defendant in the fraud"); *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (dismissing complaint for "absence of particularity with respect to the alleged fraudulent participation" of individual named defendants).

The SAC further undermines Plaintiff's RICO claim because it now admits that Platinum never actually "seized control" over Jagex, as alleged previously (*see* FAC ¶ 35(2)), but merely held one of several competing "claim[s] to ownership of Jagex," which it ultimately released during the course of a lawsuit in England. *See* Ex. 1 at SAC ¶¶ 73-74. The SAC also now disclaims the FAC's allegation that Platinum "relied on 'stolen funds' to complete th[e] purchase" of Jagex (Dismissal Order at 4), and instead avers that Platinum "never paid a penny for Jagex" at all (Ex. 1 at SAC ¶ 73).

Notably, the SAC still avers the FAC's original allegations while also pleading new, contradictory allegations. *Compare* Ex. 1 at SAC ¶ 37 ("Based on third-party statements, Plaintiff learned that <u>the funds supplied by Platinum to facilitate the purchase of SHNT and Jagex were stolen funds</u> from Fukong and Yan.") (emphasis added) *and id.* at SAC ¶ 58 ("Moreover, as a result of Platinum's unlawful seizure of Jagex…") *with id.* at SAC ¶ 71 ("To begin, when Platinum and

- 5 -

MacArthur falsely claimed to have purchased Jagex…") *and id.* at SAC ¶ 73 ("Platinum and Macarthur, despite knowing that they never paid a penny for Jagex…"). In the Ninth Circuit, contradictory allegations like those in the SAC cannot be used to satisfy Rule 8(a)'s pleading burden, let alone the heightened standards of Rule 9(b) required here. *See*, *e.g.*, *Moenig v. Bank of Am.*, 2015 WL 2185245, at \*4 (E.D. Cal. May 8, 2015) ("These contradictory factual allegations do not meet Rule 8's requirement of a 'short and plain statement.'"); *Zamanyan v. Northland Grp., Inc.*, 2012 WL 2756644, at \*1 (C.D. Cal. July 9, 2012) ("Zamanyan's Complaint fails against all defendants because the contradictory nature of his factual allegations forecloses recovery.").

Even beyond Rule 9(b), the SAC does nothing to cure the substantive failures of Plaintiff's RICO conspiracy claim against Platinum, and yet again fails to plead an independently wrongful overt act by Platinum in furtherance of the conspiracy, *see Beck v. Prupis*, 529 U.S. 494, 505-06 (2000), or that Plaintiff was proximately injured by Platinum's alleged acts, *see Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975-83 (9th Cir. 2008), or that Platinum ever agreed to participate in a RICO conspiracy, *see Bulan v. JP Morgan Chase Bank*, 2011 WL 13266527, at \*7–8 (N.D. Cal. Apr. 6, 2011). A fuller discussion of these failures can be found in Platinum's Motion to Dismiss Plaintiff's FAC. *See* Dkt. No. 43 at 5-10.

### 2. The "Stolen Goods" Claim

On the stolen goods claim, it would appear that Plaintiff is trying to avoid the Dismissal Order's holding that the claim sounds in fraud (Dismissal Order at 5), because the SAC deletes the word "fraud" from the stolen goods allegations (*see* Ex. 1 at SAC ¶ 68), and deletes the "incorporation by reference" allegation the Dismissal Order cited in holding Rule 9(b) applies to the claim (*compare* Dismissal Order at 5, citing FAC ¶ 133, *with* Ex. 1 at SAC ¶ 133). Presumably, Plaintiff will cite those deletions to argue the SAC need not satisfy Rule 9(b) to plead a stolen

goods claim against Platinum.[3]

But Plaintiff's selective deletions do not change the pleading requirements for its fraud-based stolen property claim. Because the SAC repeats nearly all of the FAC's fraud allegations verbatim (*see* Ex. 1), the "496 claim relies almost entirely on [those] preceding allegations of fraudulent conduct," and "compliance with Rule 9(b) is [therefore] required" (Dismissal Order at 5, citing *Fodor v. Blakey*, 2012 WL 12893985, at *13 (C.D. Cal. Feb 21, 2012)). Plaintiff cannot avoid the heightened pleading requirements of Rule 9(b) by selectively word-smithing allegations already determined to sound in fraud.[4]

The only reason Plaintiff is seeking to avoid Rule 9(b), of course, is because the SAC cannot add any specific facts to buttress Plaintiff's claim that Platinum "purchased Jagex, an asset [purportedly] stolen or procured through theft or extortion." Dismissal Order at 5. *See* Ex. 1 at SAC ¶¶ 68-72. To the contrary, the SAC now seemingly abandons that allegation, and instead asserts that Platinum only "<u>purported</u> to acquire Jagex through theft." *See id.* at SAC ¶ 172 (emphasis added).[5] Even under the lower pleading standard of Rule 8, "purporting" to steal something cannot give rise to a Section 496 claim, because the statute requires the defendant to be "in possession of" the stolen goods for liability to attach. *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009) (citing *People v.*

---

[3] Of course, it begs the question of how Jagex, an intangible corporate entity, could ever be "stolen" <u>other than</u> through fraudulent means. As the SAC alleges, to steal a corporate entity would necessarily require "theft by false pretense[s]" (SAC ¶ 171), of which fraud is an essential element.

[4] Platinum notes that because Plaintiff deleted the "incorporation by reference" allegation in its stolen property claim (*see* Ex. 1 at SAC ¶ 133), the claim is now premised solely on the allegations contained in the statement of the claim itself (*id.* at SAC ¶¶ 167-175), which say nothing specific about Platinum's actions at all.

[5] As discussed above, however, contradictions to Plaintiff's revised theory remain in the SAC, which therefore independently require its dismissal. *See, e.g.*, Ex. 1 at SAC ¶ 58 ("Platinum's unlawful seizure of Jagex"). The fact that Plaintiff cannot get straight a central element to its theory of liability—whether or not Platinum acquired Jagex—highlights the speculative and incoherent nature of this action.

*Anderson*, 210 Cal. App. 3d 414, 420 (1989).

Faced with that insurmountable obstacle, the SAC now claims if Platinum did not purchase the "stolen good" of Jagex, then it must have violated Section 496 by "aid[ing] in the sale of Jagex to the Carlyle Group." *See* Ex. 1 at SAC ¶ 172. But there are no allegations in the SAC to show the corporate entity of Jagex was (or could be) "stolen" at the time Carlyle purchased it, let alone facts alleged to raise an inference that Platinum then had "actual knowledge" that Jagex was "in fact stolen." *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *12 (C.D. Cal. Aug. 4, 2016). Plaintiff's formulaic recitation that "both Platinum and Macarthur knew that Jagex had been stolen" (Ex. 1 at SAC ¶ 173) must be disregarded, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), as must its allegations of Platinum's knowledge on "information and belief." *See Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."). And simply alleging that Plaintiff's auction with Huarong in China was "public" (Ex. 1 at SAC ¶ 72) does not plead Platinum's actual knowledge that Jagex was "in fact stolen."[6]

Those fatal flaws aside, the SAC also fails to allege facts to show that Platinum somehow gave "substantial assistance" to Carlyle's purported theft, such that it constituted aiding and abetting under California tort law, *see Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005), and does not even attempt to explain how Platinum's purported "aid" in Carlyle's purchasing of Jagex proximately injured Plaintiff, such that Plaintiff even has standing to sue under Section 496(c). The SAC alleges that Huarong broke its agreement to sell Jagex to Plaintiff, and instead sold that interest to Minsheng, which in turn sold that interest

---

[6] There are also no facts alleged to support Plaintiff's speculative claim that Platinum somehow knew "through Yan" that Jagex was "stolen." Ex. 1 at SAC ¶ 72.

to Carlyle (Ex. 1 at SAC ¶ 69), but the SAC does not allege that Platinum's claim of ownership had any effect on those transfers of ownership or otherwise caused them to occur.

At bottom, Plaintiff's stolen property claim fails as a matter of law because Section 496 was enacted as a means "to dry up the market for stolen goods," *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1136 (2020) (emphasis added and citation omitted), and thus has no application in a dispute over an ephemeral corporate entity.[7]  As such, courts have routinely rejected the application of Section 496(c) in cases "where the plaintiff merely alleges and proves conduct involving fraud, misrepresentation, conversion, or some other type of theft that does not involve 'stolen' property." *Id.* at 1134 (collecting cases).  Indeed, to do otherwise would "transmogrify the law of remedies" by permitting treble damages for any tort involving property. *Id.* at 1135.  Thus, granting Plaintiff use of the penal code for an ordinary (yet baseless) business dispute would be entirely improper. *GEC US 1 LLC v. Frontier Renewables, LLC*, 2016 WL 4677585, at *9 (N.D. Cal. Sept. 7, 2016) (refusing to "sanction the use of the penal code to redress ordinary business disputes over ownership interests – an untenable result.").

    **B.**    **The SAC's "New" Interference Claims Against Platinum Are Dead On Arrival and Should Be Dismissed As Well**

        **1.**    **The SAC Fails to State a Claim for Intentional Interference with Contractual Relations Against Platinum**

The SAC adds Platinum and Macarthur to its Seventh Cause of Action for Intentional Interference with Contractual Relations, which was originally only alleged against Yan. *See* Ex. 1 at SAC ¶¶ 146-153.  The full extent of Plaintiff's amendment to this claim is found in paragraphs 148 and 149, which now assert that

---

[7] The California Supreme Court granted review of *Siry* to resolve a conflict in the appellate courts on this issue. *Siry Inv. v. Farkhondehpour*, 468 P.3d 701 (Cal. 2020). Until then, the *Siry* court's analysis on this issue is the most persuasive and therefore this Court should follow its reasoning.

- 9 -

Yan was acting "acting as [an] agent for Platinum and MacArthur (and later the Carlyle Group)." *Id.* at SAC ¶¶ 148, 149.  This minor tweak fails to plead an actionable intentional interference with contractual relations claim against Platinum for multiple reasons.

First, Platinum cannot be liable for Yan's actions as an agent absent allegations to show the existence of an agency relationship.  *See Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, 2016 WL 9045621, at *3 (C.D. Cal. Jan. 28, 2016) ("Facts establishing the[] elements [of an agency relationship] must be pled to proceed against a defendant based on an agency theory.").  "Under California law, agency is either 'actual' or 'ostensible.'"  *Id.*  Agency is "actual when the agent is really employed by the principal" and ostensible "when the principal intentionally, or by want of care, causes a third person to believe another to be his agent who is not really employed by him."  *Id.*

Here, the SAC does not and cannot allege that Yan was ever employed by Platinum or otherwise "act[ed] as [an actual] agent for Platinum."  SAC ¶¶ 148, 149.  To the contrary, the SAC repeatedly (yet baselessly) alleges that it was Yan that controlled Platinum or its business partners, *i.e.*, that Platinum was the agent of Yan and not vice versa.  *See, e.g., id.* at ¶ 15 ("Upon learning of Yan's control over and funding of Platinum's limited partner and his agents…"); *id.* ¶ 16 ("Macarthur was established by agents of Yan at Yan's direction to act as a proxy for Yan's illicit scheme and take control over Platinum Fortune…"); *id.* ¶ 72 ("Platinum and MacArthur had such knowledge through Yan, who was controlling both…").  It is nonsensical and indeed contrary to the basics of agency law that Yan could simultaneously control Platinum and also be Platinum's agent.  *See, e.g., Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883, 899 (C.D. Cal. 2011) ("In California, an agency relationship arises when one person (a 'principal') manifests assent to another person (an 'agent') that <u>the agent shall act on the principal's behalf and subject to the principal's control,</u> and the agent manifests assent or otherwise

- 10 -

PLATINUM'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

consents so to act.") (internal quotation marks and citation omitted, emphasis added); *see also Moenig*, 2015 WL 2185245, at *4 ("These contradictory factual allegations do not meet Rule 8's requirement of a 'short and plain statement.'").

The SAC also does not and cannot allege that Platinum ever "intentionally or by want of care" caused Huarong (or anyone else) to believe that Yan was acting as its ostensible agent. To the contrary, the SAC alleges that Yan was acting on his own accord when he purportedly bribed Huarong officials or otherwise furthered the purported conspiracy. *See*, *e.g.*, SAC ¶ 59. Put simply, there is no basis to assert that Yan was Platinum's actual or ostensible agent, and thus Plaintiff's last-minute attempt to shoehorn Platinum into a claim aimed at Yan should be disregarded.

To the extent Plaintiff argues Platinum is directly liable for intentional interference with a contract, outside of its purported agency relationship with Yan, that argument fails as well. A plaintiff alleging intentional interference with contractual relations must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*, 2018 WL 1942139, at *9 (C.D. Cal. Feb. 20, 2018). Here, the SAC does not allege that Platinum ever had knowledge of Plaintiff's purported contract with Huarong, that Platinum intended to disrupt or induce a breach of that contract, or that Platinum was a substantial factor in disrupting the contractual relationship—all necessary elements to the claim. *See id.*; *cf.*, *e.g.*, SAC ¶ 151 ("Yan intended to disrupt the performance of the contract.") (emphasis added). Accordingly, the interference with contract claim must be dismissed.

### 2. The SAC's Tortious Interference with Prospective Economic Relations Claim against Platinum Also Fails

Plaintiff's amendment to include Platinum in its claim against Yan for tortious interference with prospective economic relations is similarly misguided and equally flawed. For the SAC's Eighth Cause of Action, Plaintiff does not even bother to amend the underlying allegations to include Platinum, but instead only adds Platinum to the title. *See* Ex. 1 at SAC ¶¶ 154-161. As before, Plaintiff's thinly veiled attempt to kludge Platinum into this claim designed for Yan fails completely.

To allege a viable tortious interference with prospective economic relations claim under California law, a plaintiff must show: "(1) an existing economic relationship between plaintiff and a third party, with the probability of future economic benefit; (2) defendant's knowledge of the relationship; (3) intentional acts on the part of defendant designed to disrupt that relationship, (4) actual disruption of the relationship; and (5) economic harm to plaintiff proximately caused by defendants' acts." *Kamal v. Cty. of Los Angeles*, 2019 WL 7195903, at *4 (C.D. Cal. Nov. 26, 2019), *aff'd sub nom. Kamal v. Farrow*, 859 F. App'x 802 (9th Cir. 2021). Plaintiff alleges none of these elements against Platinum, but once again instead focuses entirely on Yan. *See, e.g.*, SAC ¶ 156 ("Defendant Yan was aware of Plaintiff's relationship with Minsheng and existence of the contract…"); *id.* ¶ 157 ("Yan bribed officers and/or employees of Minsheng…"); *id.* ¶ 158 ("Yan intended to disrupt the performance of the contract."). Similarly, none of the allegations about Plaintiff's negotiations with Minsheng detail any involvement whatsoever by Platinum. *See id.* ¶¶ 50-53. To the extent that Platinum's inclusion in this claim is once again predicated on an unfounded theory of agency, as discussed above, Plaintiff does not and cannot plead the existence of an agency relationship. For these reasons, the tortious interference with prospective economic relations claim must be dismissed as well.

## C. Plaintiff's Failed Claims Against Platinum Should Now Be Dismissed With Prejudice

The SAC's claims against Platinum should be dismissed with prejudice because Plaintiff ignored the Dismissal Order and did not even <u>try</u> to add specific facts to support the FAC's failed claims, a tacit admission that it cannot. *See, e.g., Arlow v. California Dep't of Corr.*, 168 F. App'x 249, 250 (9th Cir. 2006) (affirming dismissal with prejudice where "the district court had already allowed [plaintiff] an opportunity to cure the deficiencies in his original complaint and had provided specific instructions on appropriate pleading."); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809-810 (9th Cir. 1988) ("[r]epeated failure to cure deficiencies by amendments previously allowed" is a "valid reason for a district court to deny a party leave to amend."). Further amendment "would be an exercise in futility" because Plaintiff has failed numerous times to plead a cognizable claim or <u>a single specific fact</u> regarding Platinum's purported wrongdoing. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (the general rule that parties should be allowed to amend their pleadings "does not extend to cases in which any amendment would be an exercise in futility . . . or where the amended complaint would also be subject to dismissal"); *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (affirming dismissal of complaint without leave to amend "because any amendment would be futile"); *Pisciotta v. Teledyne Indus. Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (affirming denial of motion for leave to amend a complaint to allege a claim that appellants "do not contend that they can properly plea[]"); *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal without leave to amend because "the pleading could not possibly be cured by the allegation of other facts").

The SAC's "new" interference causes of action against Platinum do not change that analysis, because Plaintiff could have easily averred those claims against Platinum in its past complaints, but it elected not to do so, and offers zero

reason for its iterative pleadings. In any event, the "new" interference claims have zero basis in fact, as discussed above, and thus it would be highly prejudicial to Platinum to let Plaintiff benefit from its purposeful delay by giving it still further opportunities to present failed claims it could have averred before.

## IV. CONCLUSION

For the reasons articulated in the Dismissal Order and further discussed above, the SAC's allegations against Platinum should be dismissed in full. Because the SAC represents Plaintiff's third failed attempt to state a claim, the claims should now be dismissed with prejudice.

Dated: November 5, 2021

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ James N. Kramer*
JAMES N. KRAMER
Attorneys for Defendant
PLATINUM FORTUNE, LP