Stephen D. Weisskopf (SBN 213596)
sweisskopf@levatolaw.com
LEVATOLAW, LLP
2029 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone:  310-734-2026

Attorneys for PLUTOS SAMA
HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUTOS SAMA HOLDINGS, INC. | Case No.: 8:21-cv-00133-JVS-JDE |
| Plaintiff, | |
| v. | **PLAINTIFF PLUTOS SAMA HOLDINGS, INC.'S OPPOSIITON TO DEFENDANT PLATINUM FORTUNE, LP'S MOTION TO DISMISS AMENDED COMPLAINT** |
| JAGEX LIMITED; YAN JINGGANG, HUARONG INTERNATIONAL TRUST CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD TRUST; CHINA MINSHENG TRUST CO, LTD; PLATINUM FORTUNE, LP; MACARTHUR FORTUNE HOLDING, LLC; BELLE LIU, DI XI HUANG; DUKE LI ZHU; and DOES 1-20 | Hearing |
| | Date:      December 6, 2021 |
| | Time:      1:30 pm |
| | Judge:    Hon. James V. Selna |
| | Ctrm:     10C |
| Defendants. | |

# Table of Contents

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................... 2

    A.    The RICO Conspiracy Claim Against Platinum Should Not
       Be Dismissed............................................................................................ 2

        1.    The Detailed Allegations Contained in the SAC More
            Than Adequately Satisfy the Necessary Elements of a
            RICO Conspiracy with Respect to Platinum ........................... 3

        2.    The SAC Does Not Include Any Contradictory
            Allegations ................................................................................ 8

    B.    Plaintiff Sufficiently Pled Its Claim Under Section 496 of the
       Penal Code ............................................................................................... 9

        1.    Plaintiff is Not Required to Satisfy the Heightened
            Pleading Requirement of Rule of Civil Procedure 9(b)
            Because Its Section 496 Claim is Not Grounded in
            Fraud ......................................................................................... 9

        2.    Plaintiff Has Properly Pled a Claim Under California
            Penal Code Section 496(a) ..................................................... 13

    C.    Plaintiff Has Successfully Plead a Claim for Tortious
       Interference with Contractual Relations ........................................... 17

    D.    Plaintiff Has Successfully Pled a Claim for Tortious
       Interference with Prospective Economic Relations .......................... 19

III.   CONCLUSION ......................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Authorities**

**Cases**

*Allure Labs, Inc. v. Markushevska*, 606 B.R. 51, 60 (N.D. Cal. 2019) ..................14

*American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349,
    353 (2d Cir. 1999)..............................................................................................18

*Bell v. Feibush*, 212 Cal.App.4th 1041 (2013)........................................................15

*Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) .........................................3-4

*Casey v. U.S. Bank Nat. Assn.*, 127 Cal.App.4th 1138, 1145-1146. (2005).......... 16

*Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 592 (C.D. Cal. 1998).......................18

*Fodor v. Blakey*, 2012 WL 12893986 (C.D. Cal. Feb. 21, 2012) ...........................13

*Foster Poultry Farms, Inc. v. Suntrust Bank*, 2008 WL 160960 at *37
    (E.D. Cal. 2008)..................................................................................................18

*Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ..................3- 4

*Kamal v. County of Los Angeles*, 2019 WL 7195903, at *4 (C.D. Cal. Nov.
    26, 2019)..............................................................................................................19

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768,
    775 (9th Cir. 2002)................................................................................................4

*Otte v. Naviscent*, 624 B.R. 883 (N.D. Cal. 2021)........................................................15

*People v. Anderson*, 210 Cal.App.3d 414, 420 (1989) .............................................14

*People v. Boyden*, 116 Cal.App.2d 278, 287 (1953)..................................................16

*People v. Gopal*, 171 Cal.App.3d 524, 541 (1985) ...................................................14

*People v. Kunkin*, 9 Cal.3d 245, 249 (1973) ....................................................... 14-15

*People v. Lodge*, 190 Cal.App.2d 865, 872 (1961) ..................................................16

*People v. McClain*, 115 Cal.App. 512, 516 (1931) ..................................................16

 *People v. Mercado*, 59 Cal.App. 69, 73 (1922)........................................................16

*Salinas v. United States*, 522 U.S. 52 (1997) .............................................................3

*Siry Inv., L.P. v. Farkhondepour*, 45 Cal. App. 5th 1098 (2020)..............................15

*Tatung Company Ltd. v. Hsu*, Case No. SA CV 13-1743-DOC (ANx),
    2015 WL 11089493, at *6 (C.D. Cal. Oct. 22, 2015) ..........................................4-7

*Turner v. Yates*, 57 U.S. 14, 25 (U.S. 1853)................................................. 18

*Switzer v. Wood*, 35 Cal.App.5th 116 (2019) ........................................15

*United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766
    F.3d 1002, 1006 (9th Cir. 2014..................................................................17

*Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009)......................14

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)...................12

**Statutes**
18 U.S.C. § 1962(d) ...........................................................................3, 8

Cal. Penal Code 496(a) .........................................................................14

Penal Code Section 496 ............................................................ 1, 9, 13-17

**Rules**
Fed. R. Civ. P. 9(b) ...........................................................2, 4, 8-9, 12-13

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

<u>**MEMORANDUM OR POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3      Plaintiff Plutos Sama Holdings, Inc. ("Plaintiff") hereby submits its

4 opposition to the Motion to Dismiss the Second Amended Complaint ("Motion")

5 filed by Defendant Platinum Fortune, LP ("Platinum").  Platinum's motion seeks

6 dismissal of each claim against it for violations of RICO, Penal Code Section

7 496, intentional interference with contractual relations and tortious interference

8 with prospective economic relations.

9      With respect to Platinum's motion to dismiss the RICO conspiracy claim,

10 Platinum mischaracterizes the law and the facts.  In an effort to escape liability

11 for its participation in the RICO conspiracy, Platinum asserts a pleading standard

12 that is not supported by the law by arguing that Plaintiff must show that Platinum

13 itself performed two predicate acts and that Plaintiff was harmed as a proximate

14 result of Platinum's predicate acts.  As the relevant case law described below

15 establishes, however, to plead a RICO conspiracy a plaintiff need only show that

16 a specific conspirator performed predicate acts in furtherance of the RICO

17 conspiracy *or* that they merely agreed to participate in the conspiracy.  Not both.

18 Moreover, the Court may infer an agreement to participate from the relevant

19 facts.  The Second Amended Complaint ("SAC"), which includes more than

20 thirty-five (35) paragraphs describing in detail Platinum's unlawful conduct and

21 participation in the RICO conspiracy plus many more paragraphs describing in

22 detail the conduct of Platinum's agents and representatives such as Defendants

23 Duke Li Zhu, Belle Liu, Di Xi Huang and Macarthur Fortune Holding LLC.

24 These substantial allegations more than satisfy this standard.  Indeed, although it

25 is not required, the SAC includes sufficient allegations to show both that

26 Platinum agreed to participate in the RICO conspiracy, which harmed Plaintiff,

27 (which is all it must show) *and* that Platinum and its agents and representatives

28 engaged in overt predicate acts in furtherance of the RICO conspiracy that

1

harmed Plaintiff.  Analogous case law from this Court analyzing similar but much less detailed allegations than those presented here has denied similar motions to dismiss RICO conspiracy claims. The same result is warranted here.

Platinum's arguments against the Penal Code claim simply ignore the complaint allegations.  Initially, Platinum argues that Rule 9(b) applies to the Penal Code claim.  The SAC, however, alleges a specific set of facts supporting the Penal Code claim that does not involve fraud or sound in fraud.  Platinum simply ignores this and treats the SAC as if it is identical to the prior complaint. Regardless, Plaintiff has sufficiently pled the elements of the Penal Code claim even under a heightened standard.

Finally, Platinum seeks dismissal of the two interference claims, mainly based on the argument that Yan is not the agent of Platinum and his actions cannot be attributed to Platinum.  Plaintiff pled in detail Yan's involvement and control over Platinum such that Yan's actions can and should be attributed to Platinum.

For these and the reasons discussed below, Plaintiff respectfully requests that the Court deny Platinum's motion.  Alternatively, if the Court is inclined to grant it in whole or in part, Plaintiff requests leave to amend.

## II.   ARGUMENT

### A.   The RICO Conspiracy Claim Against Platinum Should Not Be Dismissed

Platinum mischaracterizes the law and facts in an effort to escape liability for its role in the RICO conspiracy described by Plaintiff in the SAC.  Moreover, Platinum's sophistic assertion that the SAC is internally inconsistent is based on an unreasonably artificial and narrow application of the English language and a highly inappropriately narrow reading of the SAC and thus should not and cannot impact this Court's review of the SAC or support Platinum's motion to dismiss.  As shown below, even a cursory review of the factual allegations set

forth in the SAC demonstrates that Plaintiff has more than adequately pled facts sufficient to satisfy the appropriate required elements of a RICO conspiracy claim.

**1.  The Detailed Allegations Contained in the SAC More Than Adequately Satisfy the Necessary Elements of a RICO Conspiracy with Respect to Platinum**

Platinum suggests that because the SAC purportedly does not show that Platinum ever did "anything specific in further of the purported conspiracy" the RICO conspiracy claim against Platinum must be dismissed.   (Motion to Dismiss, p. 5.) This assertion, however, is inconsistent with the requirements of the law applicable to a RICO conspiracy claim pursuant to Section 1962(d) and, moreover, misstates and ignores the substantial and detailed allegations regarding Platinum's involvement in the illicit conspiracy to seize and gain control over Jagex.

As the Supreme Court has held, a RICO conspiracy does not require a plaintiff to show that each defendant actually engaged in any overt or predicate acts, only that each defendant engaged in such an act *or* agreed to participate in the conspiracy to violate RICO.  *See e.g.*, *Salinas v. United States*, 522 U.S. 52 (1997).  As this Court has articulated:

> A defendant under § 1962(d) *need not have personally committed a predicate act, or even an overt act in furtherance of the RICO conspiracy*. *Salinas*, 552 U.S. at 63; *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). A RICO defendant must be "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8 F.3d at 1346. To establish a violation of § 1962(d), "Plaintiff must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."

1    *Howard*, 208 F.3d at 751 (*citing Baumer*, 8 F.3d at 1346). "The

2    *illegal agreement need not be express as long as its existence can be*

3    *inferred from the words, actions, or interdependence of activities*

4    *and persons involved*." *Oki Semiconductor Co. v. Wells Fargo*

5    *Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002)."

6    *Tatung Company Ltd. v. Hsu*, Case No. SA CV 13-1743-DOC (ANx),

7    2015 WL 11089493, at *6 (C.D. Cal. Oct. 22, 2015) (emphasis added) (denying

8    motion to dismiss RICO conspiracy claims against *all* Defendants on a variety of

9    bases).  As the *Tatung* court further noted, although Rule 9(b) requires that

10    "'allegations of fraud are specific enough to give defendants notice of the

11    particular misconduct which is alleged to constitute the fraud charged so that

12    they can defend against the charge," allegations relating to "'intent, knowledge,

13    and other conditions of a person's mind may be alleged generally'" because

14    "Rule 9(b)'s heightened pleading standard may be relaxed when the allegations

15    of fraud relate to matters particularly within the opposing party's knowledge,

16    such that a plaintiff cannot be expected to have personal knowledge."  Id. at *5-6

17    (internal citations omitted).[1]

18         Thus, Platinum's assertion that the RICO conspiracy claim asserted

---

[1] Platinum's cited authorities relating to Rule 9(b) also provide little instruction. *See* Platinum MTD at p.5 (*citing Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) and *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  Both of Platinum's cited authorities generally discuss the heightened pleading standard pursuant to Rule 9(b) but otherwise are of little relevance.  In *Comvest*, for example, the Court granted a motion to dismiss because, unlike the detailed allegations of the SAC setting forth in no less than thirty-five separate paragraphs detailing the specific role and conduct of Platinum, the plaintiff in *Comvest* only included "conclusory allegations that all of the "defendants ..., and each of them, directly and indirectly, aiding and abetting each other, and acting in concert, and through each other and through [other defendants] fraudulently induced plaintiff.*" Comvest*, 765 F. Supp. at 1471.  Moreover, neither *Comvest* or *Semegen* dealt with a claim under RICO Section 1962(d) and thus neither case addressed a situation such as here where a plaintiff need not plead that each specific defendant actually engaged in any specific overt or predicate act so long as they can show facts sufficient to infer that that they had knowledge of and agreed to participate in the conspiracy.  *Id.*

1  against it must be dismissed because Plaintiff has not adequately alleged any

2  overt or predicate act by Platinum itself is inconsistent with the law and the facts

3  presented here.  The SAC contains more than sufficient details to infer that

4  Platinum had knowledge of the RICO conspiracy and agreed to participate in the

5  RICO conspiracy. [2]

6        The details of the court's holding in the *Tatung* case are particularly

7  instructive.[3]  In that case the court was, as here, faced with a motion to dismiss

8  RICO conspiracy claims where it had previously dismissed the plaintiff's

9  complaint without prejudice as to the RICO conspiracy claims.  Following the

10  *Tatung* plaintiff's filing of an amended complaint, the court refused to dismiss

11  the RICO conspiracy claims even though, similar to here, the plaintiff's amended

12

13  [2] Moreover, Platinum has in fact alleged overt wrongful acts in furtherance of the conspiracy by Platinum and Platinum's agents and representatives that can and should be attributed to Platinum.  *See, e.g.*, SAC at ¶ 71 (describing Platinum's false claims that it purchased Jagex for $530MM), ¶ 46 (describing Platinum's unlawful seizure of Jagex based on fraudulent back-dated documents); ¶ 58 (describing Platinum's unlawful seizure of Jagex and bribes to Jagex employees) and ¶ 106(g) (describing Macarthur's false claim that neither Macarthur nor Platinum received the U.K. stop order)

14

15

16  [3] Platinum's cited RICO related authority (*Beck v. Prupis*, 529 U.S. 494 (2000), *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) and *Bulan v. JP Morgan Chase Bank*, 2011 WL 13266527 (N.D. Cal. Apr. 6, 2011)), are not inapposite but as cited by Platinum misrepresent the standard.  As indicated by *Tatung* and the authority cited therein, Plaintiff need not show an over or predicate act *and* an agreement to participate in a RICO conspiracy, Plaintiff need only show that Platinum performed overt or predicate acts *or* that Platinum agreement to participate in the RICO conspiracy.  *Compare Beck*, 529 U.S. 494 (2000) and *Bulan*, 2011 WL 13266527 *with Salinas*, 522 U.S. 52; *Howard*, 208 F.3d 741; and *Tatung* 2015 WL 11089493.  Similarly, Platinum suggests that Plaintiff must allege that it was proximately harmed by some over act of Platinum (*citing Canyon Cty.* 519 F.3d 969) but that is simply not the case because, as discussed, to prevail on a RICO conspiracy claim a plaintiff need not show that each specific conspirator engaged in an overt or predicate act but merely that each conspirator engaged in an overt or predicate act *or* agreed to participate in the conspiracy.  Indeed, as Plaintiff's own cited authority *Beck* indicates, Plaintiff need only show it was harmed as a result of an overt act performed on behalf of the conspiracy as a whole.  *See Beck*, 529 U.S. at 504-507 (discussing that Plaintiff must merely show they were harmed by a tortious act committed in connection with the conspiracy).  Thus, Plaintiff need not show that it was harmed as a result of any tortious predicate act by Platinum specifically but merely that it was harmed as a proximate result of some tortious predicate act of any of the RICO conspirators.

17

18

19

20

21

22

23

24

25

26

27

28

complaint primarily just "supplemented" details regarding the allegations and "reframed" the RICO allegations without significant change to the main underlying allegations. *Id.* at *1.

The *Tatung* court then went through each group of similarly situated defendants and refused to dismiss the RICO conspiracy claims as to any of the defendants. *Id.* For example, with respect to certain former employees the court reviewed the allegations and found them sufficient where the plaintiff generally described each former employees' role in the alleged RICO conspiracy. *See id.* at *7. Plaintiff here has done that and has also provided details regarding each individual employee or agents specific over and predicate acts in furtherance of the RICO conspiracy including, among other things, numerous bribes to a variety of parties and numerous fraudulent statements, which are described in detail. For example, Plaintiff has clearly described the roles of Macarthur, Belle, Duke and Huang at Platinum and has described the specific fraudulent activities that each of these individuals has engaged in with more than sufficient details relating to the who, what, when and where. *See, e.g.*, SAC at ¶¶ 28-29, 33-35, 38-39, 46-47, 74-75 and 83-88.

Particularly noteworthy for the purposes of Platinum's motion to dismiss here, however, is the *Tatung* court's treatment of two entity defendants. These entity defendants were not alleged to have engaged in any specific overt fraudulent acts but were alleged to have agreed to participate in the conspiracy. *Id.* at *8-9. The entities moved to dismiss on the basis that the plaintiff "had not alleged the RICO conspiracy claims with specificity and that these defendants either agreed to a substantive violation of RICO or agreed to violate the statute through two predicate offenses." *Id.* at *8. The court, however, denied their motion holding that the complaint contained: (a) sufficiently "detailed allegations regarding how [the entities] were created and received assets to prevent recovery of those assets by [another entity]'s creditors[;]" (b) that the agreement to

participate in the conspiracy could be inferred from the specific allegations regarding the conduct of the entities employees and officers because "[c]orporations can conspire with their officers to violate RICO[;]" and (c) that an inference of knowledge could be found because the entities "creation itself was designed to further the fraudulent Enterprise, and that the entities have been knowingly run by the same persons who ran other members of the Enterprise to continue to shelter assets." *Id.* at \*9.  In addition to the specific allegations regarding Platinum's wrongful actions, Plaintiff here has made very similar allegations with respect to Platinum.  As Plaintiff has alleged, Platinum was created "to provide corporate cover for [Yan] to reinvest his wrongfully obtained funds into SHNT and Jagex and thus maintain control over those entities," and Platinum was controlled by agents of Yan who also controlled Macarthur.  *See, e.g.*, SAC at ¶¶ 3-4 (describing Yan's creation of Platinum and Macarthur for illicit purposes and his control over these entities through common agents including Duke, Belle and Huang), ¶ 28 (same), ¶ 29 (describing Yan's funding of Platinum with unlawful funds), ¶¶ 35-38 (same), ¶ 39 (describing Macarthur's activities as general partner of Platinum including fraudulently claiming Platinum had acquired Jagex and paid $530MM to purchase Jagex), and ¶¶ 46-39 (describing Platinum's unlawful seize of control over Jagex and Macarthur's fraudulent statement denying the existence of the U.K. stop notice proceedings). While Platinum raised numerous concerns regarding alleged group pleading in the prior complaint, Plaintiff has now more than cured this issue by specifically outlining not only Platinum's role, actions, agreement to participate in and knowledge of the RICO conspiracy, but also the role, actions, agreement to participate in and knowledge of Platinum's officers, employees and general partner (Macarthur) in exhausting detail.  Indeed, whereas in the prior complaint, Platinum made much of the limited references to Platinum specifically, Platinum's corporate purpose, specific actions or inactions and knowledge of the

7

RICO conspiracy are now specifically referenced and detailed in no less than thirty-five (35) paragraphs of the SAC as well as numerous footnotes *and* the Section 1962(d) specific allegations relating to all the Defendants participation in the RICO conspiracy.  *See id.* at ¶¶ 3-5, 15-16, 28-30, 32-33, 35-37, 38-39, 46-49, 58, 70-75, 80, 86-88, 90, 105-107 and 112,  In addition, the specific acts of Platinum's officers and executives including Duke, Belle, Huang and Macarthur are further detailed in other paragraphs including specific details on what fraudulent statements or actions were taken, when they were taken, who made them and, to the best of Plaintiff's knowledge, where all the relevant parties were believed to be when they were made.

Accordingly, because the SAC more than adequately pleads facts, in sufficient detail to satisfy Rule 9(b), demonstrating all of the required elements of a RICO conspiracy claim pursuant to Section 1962(d) with respect to Platinum, Platinum's motion to dismiss the RICO conspiracy claim can and should be denied.

## 2.  The SAC Does Not Include Any Contradictory Allegations

Perhaps recognizing the futility of their legal argument, Platinum desperately mischaracterizes the SAC's allegations in an effort to manufacture an alleged internal contradiction.  (*See* Motion to Dismiss, pp. 5-6.)  Contrary to Platinum's assertions, however, a plain reading of the SAC indicates there are no internal contradictions.

Specifically, Platinum claims that Plaintiff's allegations that Platinum used unlawfully obtained funds to "facilitate the purchase of SHNT and Jagex" is inconsistent with Plaintiff's allegation that Platinum "never paid a penny for Jagex." (*See* Motion to Dismiss, p. 5-6 (citing SAC at ¶¶ 37 & 73).)  As described in detail in the SAC, however, Platinum used unlawfully obtained funds to, among other things, support its general operations, to support its participation in the auction to purchase Jagex, to facilitate costs associated with

its legal troubles in the U.K. and to generally facilitate its unlawful seizure of Jagex and its false claims that it had "purchased" Jagex even though Platinum never in fact paid the alleged purchase price of $530MM.  *See, e.g.*, SAC at ¶¶ 87-88, 90 & 106(a) (describing the use of Yan's unlawful racketeering proceeds to pay Platinum operating costs and transaction related costs, which facilitated Platinum's unlawful seizure of Jagex).  There is no contradiction in these allegations but instead these allegations merely demonstrate Platinum's involvement in the illicit scheme to take control over Jagex without ever actually paying the purported purchase price while, falsely claiming to the world that Platinum had purchased Jagex for a price of $530MM.

### B. Plaintiff Sufficiently Pled Its Claim Under Section 496 of the Penal Code

#### 1. Plaintiff is Not Required to Satisfy the Heightened Pleading Requirement of Rule of Civil Procedure 9(b) Because Its Section 496 Claim is Not Grounded in Fraud

Plaintiff's claim that Platinum violated Penal Code Section 496 is based on a discrete subset of facts separate from the facts related to the RICO claim. These discrete facts do not allege any fraudulent conduct by Plaintiff such that the heightened pleading requirements of Rule 9(b) would apply.  Platinum's motion argues that because the Second Amended Complaint ("SAC") "repeats nearly all of the FAC's fraud allegations verbatim, the "[Section] 496 claim relies almost entirely on [those] preceding allegations of fraudulent conduct," and "compliance with Rule 9(b) is [therefore] required."  (Motion, p. 7). Platinum simply ignores the new allegations in the SAC specific to the Penal Code claim and that the Penal Code claim *does not* incorporate all prior allegations.  (*See* SAC (Docket No. 48), ¶ 167-175.)  In the Court's order granting the motion to dismiss the FAC, the Court relied in part on the fact that the Penal Code claim incorporated all the allegation in the complaint, which

1   included allegations of fraud.  The SAC does not do so because, as stated, there

2   is a discrete set of facts relevant to the Penal Code claim that does not involve

3   any allegations of fraud.

4         The facts relevant to the Penal Code claim are as follows.  Plaintiff alleges

5   that Platinum bid on and won an auction for SHNT and Jagex ("Jagex") in June

6   2019 (when Plaintiff was still associated with Platinum).  (SAC, ¶ 30.)  However,

7   the transaction was never finalized, and Platinum did not acquire Jagex.  (*Id*. at ¶

8   31.)  At this time, Plaintiff learned of Yan's involvement with Platinum and

9   opted to sell its general partner interest to MacArthur, who became the new

10  general partner of Platinum.  (*Id*. at ¶¶ 32-39.)  In early 2020, two Chinese banks,

11  Huarong and Minsheng, initiated foreclosure proceedings against Jagex.  (*Id*. at ¶

12  40.)  On April 17, 2020, a Chinese court issued an order transferring 100%

13  interest in Jagex to Huarong and Minsheng (Huarong received a 55% interest and

14  Minsheng received a 45% interest).  (*Id*. at ¶ 45.)  On April 22, 2020, Platinum

15  attempted to unlawfully seize control of Jagex, five days after the Chinese court

16  issued an order transferring 100% interest in Jagex to Huarong and Minsheng.

17  (*Id*. at ¶¶ 46-47.)  Huarong and Minsheng rushed into a court in England and

18  obtained a Stop Notice blocking Platinum's purported ownership interest and

19  blocking any transfer of Jagex shares.  (*Id*. at ¶ 47.)  Huarong subsequently

20  placed its 55% interest in Jagex up for auction.  (*Id*. at ¶ 55.)  In August 2020,

21  Plaintiff, through a Chinese subsidiary, bid on and won Huarong's 55%

22  ownership interest in Jagex at a public auction.  (*Id*. at ¶ 55.)  Plaintiff was in the

23  process of completing that transaction when Yan (acting individually and on

24  behalf of Platinum/Macarthur) engaged in illegal activities to influence Huarong

25  not to complete the transfer.  (*Id*. at ¶¶ 57-61, 68-69.)  At some point in time in a

26  mysterious transaction, Huarong purports to have transferred its 55% interest in

27  Jagex to Minsheng.  In the state court litigation against The Carlyle Group

28  ("Carlyle"), one of its associate directors, Andrew Tan, submitted a declaration

regarding Carlyle's purported acquisition of Jagex. (*Id*. at ¶ 69.) Carlyle, one of the largest private equity companies in the world, in a transaction valued at $686 million dollars, on the critical issue of how Huarong transferred its 55% interest, could only state in meek terms that it "understood" that Minsheng owned 100% of Jagex and that Carlyle had an "understanding" that Minsheng acquired Huarong's 55% interest. (*Id*.) Shockingly, Carlyle admitted it "was not privy to the specific details" of the acquisition, but essentially relied on representations made by Huarong and Minsheng, two notoriously corrupt banks. (*Id*.) There is no documentation of this transfer because if it occurred, it was illegal given that Huarong knew it was contractually obligated to transfer its 55% interest to Plaintiff and had no legal right to transfer it to Minsheng.

Next, Minsheng appears to have sold 100% of its interest in Jagex to Carlyle (*id*.) but not before Yan and Platinum signed legal documents aiding in Carlyle purported acquisition of a stolen asset. Platinum, despite knowing it never paid a penny for Jagex and had no legal right to any shares in Jagex, did not relinquish its claim to Jagex, as evidenced by the continued Stop Order issued by the court in England. (*Id*. at ¶ 73.) After (and potentially before) Plaintiff's successful auction bid, Platinum began negotiations with Carlyle to aid and assist Carlyle's purported acquisition of 100% of the share of Jagex. (*Id*.) Despite Platinum's bogus claim to ownership of Jagex, Carlyle nonetheless felt it was important to get its release of Platinum's claimed interest in Jagex. (*Id*.) This was accomplished by Platinum, and others, signing a "Framework Deed" prepared by Carlyle that cleared the path for Carlyle's purported acquisition of 100% of Jagex from Minsheng. (*Id*.) The Deed was executed on or about December 10, 2020 by Duke, individually and on behalf of Platinum. (*Id*.) Without this document, Carlyle could not or would not have been able to purportedly acquire 100% of Jagex from Minsheng. Yan and Platinum therefore assisted in the sale of an asset, a portion of which was stolen, i.e., the 55%

1  interest Minsheng acquired from Huarong.

2        Nowhere in the SAC does Plaintiff allege that Platinum made any

3  misrepresentation or engaged in any fraudulent conduct.  Instead, that Platinum

4  aided in the sale of Huarong's 55% interest in Jagex (transferred improperly to

5  Minsheng) to Carlyle knowing it was a stolen asset.  Theft can occur with or

6  without any type of fraud and here it occurred without fraud.  For example, an

7  individual could walk into a store and claim that he paid for an item, but it was

8  not included in his bag for some reason.  A salesperson could rely on that

9  misrepresentation and give the person the item.  That would be a theft by fraud.

10  Conversely, a person could walk into a store, pick up an item, and run out of the

11  store without paying for it.  That is also a theft but does not involve any fraud.

12  Here, the latter applies.  Huarong, essentially, ran into the store and stole

13  Plaintiff's 55% interest in Jagex and purported to transfer it to Minsheng.

14  Platinum then aided in the sale of that stolen property by signing documents

15  releasing any interest it claimed in Jagex, a necessary step that allowed Carlyle to

16  purchase 100% of Jagex from Minsheng.  None of this sounds in fraud.

17        Notably, even if the Court were to find that Section 9(b) applies, Plaintiff's

18  SAC pleads the facts necessary to establish the requisite specificity: "Averments

19  of fraud must be accompanied by "the who, what, when, where, and how" of the

20  misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

21  Cir. 2003).  Plaintiff has identified the "who" as defendant, Platinum Fortune,

22  LP. (SAC, at ¶¶ 58-75.)  The "what" is the purported sale of 100% interest in

23  Jagex to Minsheng then Carlyle even though Platinum knew that Plaintiff legally

24  retained 55% interest therein.  (*Id*. at ¶ 68-75.)  The timeframe is late-January

25  2021 when members of Carlyle were placed on the board of Jagex, and Carlyle

26  suddenly announced the purchase.  (*Id*. at ¶ 68.)  Plaintiff provides great detail to

27  illustrate the "how" by describing (1) the efforts it took for Plaintiff to bid on and

28  win Huarong's 55% effort in SHNT/Jagex (*Id*. at ¶ 54-55), (2) the creation of a

1   binding contract between Plaintiff and Huarong (*Id*. at ¶ 55-56), (3) how

2   Platinum's bribes induced Huarong's breach of its contractual obligation to

3   Plaintiff and, ultimately, the sale of its interest to Minsheng.

4          To support its position that Rule 9(b) applies, Platinum relies on

5   inapplicable authority, *Fodor v. Blakey*, 2012 WL 12893986 (C.D. Cal. Feb. 21,

6   2012), and ignores the above complaint allegations.  In *Fodor*, plaintiffs alleged

7   that defendant represented himself to plaintiffs as a "famous record producer and

8   business manager with extensive experience helping his "famous clientele"

9   manage their money and investments." *Fodor*, 2012 WL 12893986 at *1.

10  Defendant approached plaintiffs about using his "extensive talents" as a skilled

11  broker, investment, and business manager to manage their investment portfolios.

12  *Id*. at *2.  Further, defendant "specifically and repeatedly stated that he had all

13  the necessary qualifications and licenses to serve as an investment advisor…"

14  *Id*.  Unbeknownst to plaintiffs at the time, defendant made the above

15  representations knowing that he was not licensed by the SEC as an investment

16  advisor or securities broker, and that he was not licensed by the state of

17  California to sell securities to investors.  *Id*.  Relying on defendant's

18  misrepresentations, plaintiffs gave defendant approximately $8 million to invest

19  in seven (fraudulent) investment schemes.  *Id*.  Undoubtably, the facts in *Fodor*

20  are grounded in a fraud cause of action because it is evident that but for the

21  defendant's blatant lies, plaintiffs would not have entrusted defendant with their

22  money. *Id.*

23         The present case is distinguishable from *Fodor* because the allegations in

24  support of the Section 496 claim do not sound in fraud.  Rather, they involve a

25  conspiracy among parties to steal portions of Jagex and the resulting theft

26  thereof.  Thus, the heightened pleading requirements of Rule 9(b) do not apply.

27         **2.      Plaintiff Has Properly Pled a Claim Under California**

28                   **Penal Code Section 496(a)**

13

Under California law, a properly plead Section 496(a) claim requires the plaintiff to establish that: (i) property was stolen, (ii) defendant aided in the selling of the stolen asset, (iii) knowing it was stolen. *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009); *People v. Anderson*, 210 Cal.App.3d 414, 420 (1989).  As stated, the statute covers individuals who provide "aid" in concealing, selling, or withholding stolen property from the owner, knowing the property to be stolen or so obtained.  *See* Cal. Penal Code § 496(a).  "Assuming a defendant's knowledge that the properly at issue was stolen, section 496(a) may be violated in either of two ways: (1) by buying or receiving any property that has been stolen or (2) by concealing, selling, withholding, or aiding in concealing, selling, or withholding any property from the owner."  *Allure Labs, Inc. v. Markushevska*, 606 B.R. 51, 60 (N.D. Cal. 2019).

<u>First</u>, the element that property was stolen has been sufficiently pled.  The broad language of Section 496 applies to "any property."  *People v. Kunkin*, 9 Cal.3d 245, 249 (1973).  Consequently, "[a]nything that could be the subject of a theft can also be property under section 496" including intangible property and trade secrets.  *People v. Gopal*, 171 Cal.App.3d 524, 541 (1985).  Moreover, Section 496's broad language is "intended to include property which has been obtained not only by theft by larceny (i.e., stealing) but also by such other forms of theft as embezzlement."  *Kunkin*, 9 Cal.3d at 249.

Next, there has been a theft of Jagex.  As discussed above in detail, Huarong breached its contractual obligation to Plaintiff to sell its 55% interest in Jagex based on the improper conduct of Yan (individually and on behalf of Platinum).  Huarong then purportedly sold its 55% interest in Jagex to Minsheng (although the details of this purported transaction are unknown to Plaintiff at this time and unknown to Carlyle who now claims to own Jagex).  Huarong's transfer of its 55% interest in Jagex to Minsheng was a breach of contract and a theft

1    from Plaintiff.  Then, Minsheng purportedly sold 100% of Jagex to Carlyle,

2    another sale of a stolen asset.

3          Platinum, in its Motion, cites to *Siry Inv., L.P. v. Farkhondepour*, 45 Cal.

4    App. 5th 1098 (2020) in its attempt to establish that Section 496 is inapplicable

5    to intangible goods.  (Motion, p. 9.)  Platinum claims that even though the

6    California Supreme Court has granted review of *Siry* to resolve a conflict on this

7    very issue, the Court should follow the *Siry* court's analysis.  (*Id*.)  Other than a

8    conclusory statement presented in a footnote, Platinum does not provide any

9    persuasive reasoning as to why the Court should follow the contested ruling in

10    *Siry* as opposed to the well-established precedent in *Kunkin* that Section 496

11    applies to any property."

12          A recent federal decision rejected *Siry*, *Otte v. Naviscent*, 624 B.R. 883

13    (N.D. Cal. 2021).  *Otte* involved money that a debtor embezzled from a former

14    client while providing bookkeeping services.  The court found that "[t]he

15    underlying conduct in our case is the crime of embezzlement, not a tort." *Otte¸*

16    624 B.R. at 913. As such, "[a]pplying section 496 here would not upend

17    California tort law."  *Id.*  The court concluded that *Siry* "is not on all fours with

18    this case." *Id.*  *Siry* is also inconsistent with *Switzer v. Wood*, 35 Cal.App.5th 116

19    (2019) and *Bell v. Feibush*, 212 Cal.App.4th 1041 (2013).  Plaintiff believes

20    these are the better reasoned decisions and the California Supreme Court will

21    side with those cases, as should this Court.

22          Second, Platinum "aided" in the sale of Jagex.  As discussed, Yan, acting

23    individually and on behalf of Platinum engaged in illegal conduct to block the

24    sale of Huarong's 55% interest in Jagex to Plaintiff which led to the purported

25    sale of that interest to Minsheng.  Then, to aid in the sale between Minsheng and

26    Carlyle, Yan and Platinum signed legal documents releasing whatever purported

27    rights they had in Jagex so that Carlyle could acquire 100% interest in Jagex

28    from Minsheng.  Without Yan and Platinum's actions the sale to Carlyle would

1    not have occurred.

2        Platinum argues that Plaintiff did not sufficiently plead that Platinum

3  "substantially" aided in the sale of Jagex to Carlyle, citing to a single case, *Casey*

4  *v. U.S. Bank Nat. Assn.*, 127 Cal.App.4th 1138, 1145-1146. (2005).  The *Casey*

5  case does not involve Section 496 of the Penal Code, rather it involves a routine

6  aiding and abetting claim, which does require "substantial" assistance.  Section

7  496 of the Penal Code, however, does not require "substantial" aid.  The

8  language of the statute merely states that it applies to every person that "aids in

9  concealing, selling, or withholding any property."  The word "substantial" does

10  not appear in the statute and Platinum does not cite to any authority to support

11  adding this heightened requirement to the statute.  Platinum is simply wrong in

12  arguing "substantial" aid is required.

13     Third, Plaintiff contends that Platinum knew that Huarong's 55% interest

14  was stolen.  While knowledge is an essential element for satisfactorily pleading a

15  claim under Section 496, actual knowledge is not required.  *People v. Lodge*, 190

16  Cal.App.2d 865, 872 (1961); *People v. Boyden*, 116 Cal.App.2d 278, 287 (1953).

17  Knowledge may be circumstantial and deductive.  *People v. McClain*, 115

18  Cal.App. 512, 516 (1931); *People v. Mercado*, 59 Cal.App. 69, 73 (1922).  Here,

19  Plaintiff alleges that Yan was controlling Platinum and acting as its agent and

20  that Platinum knew exactly what was happening with Jagex at all times through

21  Yan.  Plaintiff alleges that it purchased Huarong's 55% interest in Jagex and had

22  a legal right of ownership in that interest.  (SAC at ¶¶ 56-58.)  Plaintiff further

23  alleges that Yan interfered in the transfer of Huarong's interest to Plaintiff by

24  bribing Huarong to breach its contractual obligations to Plaintiff and sell its

25  interest in Jagex to Minsheng instead.  (*Id.* at ¶ 58.)

26     There is a plethora of circumstantial evidence from which it can properly

27  be inferred that Platinum knew of Plaintiff's legally binding interest in Jagex.

28  Platinum had discussions with Huarong regarding a possible private purchase of

1  Huarong's interest in Jagex.  (SAC, at ¶ 54.)  Platinum and MacArthur had, at

2  one point, falsely claimed to have purchased Jagex, appointed a Board of

3  Directors and opened an office in Irvine, California (*Id.* at ¶ 71.)  From these

4  facts, it can be inferred that Platinum kept a close watch on Huarong's interest,

5  awaiting the perfect opportunity to seize it.  It follows that Platinum was fully

6  aware of the results of the public auction for the sale of Huarong's interest in

7  Jagex.

8        Platinum has sufficient pled is claim for violation of Section 496 of the

9  Penal Code.

10        **C.    Plaintiff Has Successfully Plead a Claim for Tortious**

11              **Interference with Contractual Relations**

12        The elements for the tort of intentional interference with contractual

13  relations are (1) a valid contract between plaintiff and a third party, (2)

14  defendant's knowledge of this contract, (3) defendant's intentional acts designed

15  to induce a breach or disruption of the contractual relationship, and (4) resulting

16  damage.  *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*,

17  766 F.3d 1002, 1006 (9th Cir. 2014).

18        As explained above, a valid contract was formed between Plaintiff and

19  Huarong.  (SAC at ¶ 56.)  Circumstantial evidence (e.g., Platinum's previous

20  attempts to steal Jagex (*id.* at ¶ 39), the public nature of the auction (*id.* ¶ at 72.))

21  clearly demonstrates Platinum's knowledge of the contract.  Platinum through

22  Yan bribed Huarong to breach its contractual obligations to Plaintiff and sell its

23  interest in Jagex (the interest which Huarong was legally obligated to transfer to

24  Plaintiff) to Minsheng.  (*Id.* at ¶ 68.)  As a result of Platinum's tortious

25  interference with Plaintiff's and Huarong's contract, Plaintiff suffered monetary

26  damages and never received its rightful ownership interest in Jagex.  (*Id.* at ¶¶

27  160-161.)

28        Platinum alleges that it cannot be liable for Yan's actions as an agent

17

1   absent

2   allegations to show the existence of an agency relationship.  (Motion, p. 10.)

3   Thus, Platinum reasons that it is "nonsensical and indeed contrary to the basics

4   of agency law that Yan could simultaneously control Platinum and also be

5   Platinum's agent."  (*Id*.)  Platinum offers no evidence to substantiate these

6   conclusory allegations aside from miscellaneous quotations from a few cases that

7   do not address Platinum's incorrect theory.

8        If fact, other courts have acknowledged that an individual may act as both

9   principal and agent.  *See Foster Poultry Farms, Inc. v. Suntrust Bank*, 2008 WL

10  160960 at *37 (E.D. Cal. 2008)("Where an agent act in the dual role of agent and

11  principal for itself and others and performs all duties under a contract, it should

12  be fully liable; Restatement (2d) of Agency, Section 328, Comment b ("In many

13  cases, the agent is a party to the contract made by him on behalf of a disclosed

14  principal and, as such, is responsible for its performance."); *American Bureau of

15  Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir 1999)("There is

16  no merit in Tencara's argument, which is based on the mistaken notion that a

17  party must be either solely a principal or solely an agent."); *Diaz v. Allstate Ins.

18  Group*, 185 F.R.D. 581, 592 (C.D. Cal. 1998)("The Court finds that it is

19  reasonably possible that the recently-added defendants served as agents of

20  Allstate and independent contractors *at the same time*); *Turner v. Yates*, 57 U.S.

21  14, 25 (U.S. 1853)("If one party has dealt with another as an agent, it would be

22  strange if the transaction should be held invalid because it was proved on trial

23  that he was principal – and *é converso*.  The substantial question, in such a case,

24  is a question of power to do an act; and this power may be shown, either by he

25  had it in his own right or derived it from another.")

26       Here, the SAC establishes that Yan and Platinum are, and always have

27  been, one in the same: Platinum is a special purpose vehicle entity that was

28  established to purchase Jagex through an auction process.  (SAC at ¶ 15.)

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiff was approached by agents of Yan and agreed to form Platinum for the purpose of bidding on and acquiring Jagex at an auction. (*Id*. at ¶ 28.) Plaintiff served as general partner of Platinum owning 2%. (*Id*.) At the time of formation, Plaintiff was unaware that funds supplied by Platinum to facilitate the purchase of Jagex were stolen funds from Yan. (*Id*.). After further investigation, when Yan's involvement in Platinum became apparent, Plaintiff sold its general partner interest in Platinum to MacArthur. (*Id*. at ¶ 39.) MacArthur is Yan's corporate proxy, created to serve Yan's objective to maintain control of Jagex by whatever means necessary. (*Id*. at ¶ 3.) Thus, Plaintiff's sale of its general partner interest in Platinum to MacArthur was, in effect, a sale to Yan. Yan, as both principal and agent of Platinum, carries out his criminal schemes through Platinum and MacArthur.

### D. Plaintiff Has Successfully Pled a Claim for Tortious Interference with Prospective Economic Relations

Under California law, to properly plead tortious interference with prospective economic relations, a plaintiff must show: "(1) an existing economic relationship between plaintiff and a third-party, with the probability of future economic benefit; (2) defendant's knowledge of the relationship; (3) intentional acts on part of defendant designed to disrupt that relationship, (4) actual disruption of the relationship; and (5) economic harm to plaintiff proximately caused by defendant's acts." *Kamal v. City of Los Angeles*, 2019 WL 7195903, at *4 (C.D. Cal. Nov. 26, 2019).

Here, Plaintiff bid on and won Huarong's interest in Jagex, creating a contractual as well as economic relationship between the parties. (SAC, at ¶¶ 54-56.) Platinum was aware, based upon the circumstantial evidence described above, that Plaintiff had won Huarong's interest in Jagex at a public auction. (*Id*. at ¶ 72.) Platinum intentionally bribed Huarong to cease communications with Plaintiff and breach its obligation to finalize its transactions with Plaintiff. (*Id*. at

¶¶. 58-60, 149.)  Huarong accepted the bribe and Platinum facilitated the transfer of interest to Minsheng then Carlyle despite Plaintiff's established ownership interest.  (*Id*. at ¶¶ 68-75, 157-161.)  As a result of Platinum's nefarious actions, Plaintiff suffered economic harm did not receive the benefit of its contract with Huarong.  (*Id*. at ¶ 157-161.)

Lastly, for the reasons explained above and contrary to Platinum's baseless allegations, an agency relationship between Yan and Platinum can, and does, exist.

## III.   CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that the Court deny Platinum's Motion to Dismiss.  To the extent that the Court agrees with Defendant's Motion to Dismiss, Plaintiff requests leave to amend its Second Amended Complaint.

Date:  November 15, 2021                    LEVATOLAW, LLP

                                            /s/  Stephen D. Weisskopf

                                            Stephen D. Weisskopf
                                            Attorneys for Plaintiff
                                            PLUTOS SAMA HOLDINGS, INC.

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

<u>**PROOF OF SERVICE**</u>

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2029 Century Park East, Suite 400, Los Angeles, California 90067.

     On November 15, 2021, I served true copies of the following document(s) described as **PLAINTIFF'S OPPOSITION TO DEFENDANT PLATINUM'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** on the interested parties in this action as follows:

James N. Kramer (jkramer@orrick.com)
M. Todd Scott (tscott@orrick.com)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105

Kevin M. Askew (kaskew@orrick.com)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address sweisskopf@levatolaw.com to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on November 15, 2021 at Los Angeles, California.

       /s/  Stephen D. Weisskopf
       Stephen D. Weisskopf