James N. Kramer (SBN 154709)
jkramer@orrick.com
M. Todd Scott (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759

Kevin M. Askew (SBN 238866)
kaskew@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:  (213) 629-2020
Facsimile:   (213) 612-2499

Attorneys for Defendant
PLATINUM FORTUNE, LP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PLUTOS SAMA HOLDINGS, INC.<br><br>Plaintiff,<br><br>v.<br><br>JAGEX LIMITED; YAN JINGGANG; HUARONG INTERNATIONAL TRUST CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD; SHANGHAI HONGTOU NETWORK TECHNOLOGY CO. LTD TRUST; CHINA MINSHENG TRUST CO. LTD; PLATINUM FORTUNE, LP; MACARTHUR FORTUNE HOLDING, LLC; BELLE LIU; DI XI HUANG, DUKE LI ZHU; and DOES 1-20,<br><br>Defendants. | Case No. 8:21-cv-00133-JVS (JDEx)<br><br>**DEFENDANT PLATINUM FORTUNE, LP'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing<br>Date:    December 6, 2021<br>Time:    1:30 pm<br>Judge:   Hon. James V. Selna<br>Ctrm:    10C |

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ........................................................................................... 1

    A. The SAC's RICO Claim Must Be Dismissed ........................................ 1

    B. Plaintiff's Legally and Logically Untenable "Stolen Goods" Claim
       Must Also Be Dismissed ........................................................................ 4

    C. The SAC's "New" Interference Claims Fail To State A Claim
       Against Platinum ..................................................................................... 9

III. CONCLUSION ....................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                  **Page(s)**

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993) ......................................................................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 5

*Beroiz v. Wahl*,
   84 Cal. App. 4th 485 (2000) ..................................................................... 8

*Bulan v. JP Morgan Chase Bank*,
   2011 WL 13266527 (N.D. Cal. Apr. 6, 2011) ......................................... 3

*Chung Goh v. Prima Fin. Grp., Inc.*,
   2017 WL 7887860 (C.D. Cal. July 26, 2017) ......................................... 3

*Freeney v. Bank of Am. Corp.*,
   2016 WL 5897773 (C.D. Cal. Aug. 4, 2016) ........................................... 7

*GEC US 1 LLC v. Frontier Renewables, LLC*,
   2016 WL 4677585 (N.D. Cal. Sept. 7, 2016) .......................................... 6

*Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
   2016 WL 9045621 (C.D. Cal. Jan. 28, 2016) .......................................... 9

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ..................................................................... 3

*Hueso v. Select Portfolio Servicing, Inc.*,
   527 F. Supp. 3d 1210 (S.D. Cal. 2021) .................................................... 6

*Lavigne v. Herbalife, LTD*,
   2019 WL 6721619 (C.D. Cal. Oct. 22, 2019) ......................................... 3

*Moenig v. Bank of Am., N.A.*,
   2015 WL 2185245 (E.D. Cal. May 8, 2015) .......................................... 10

*Otte v. Naviscent, LLC*,
   624 B.R. 883 (N.D. Cal. 2021) .................................................................. 6

*People v. Kunkin*,
   9 Cal. 3d 245 (1973) .................................................................................. 6

- ii -

*People v. Tessman*,
 223 Cal. App. 4th 1293 (2014) ..................................................................7

*Rothman v. Jackson*,
 49 Cal. App. 4th 1134 (1996) ...................................................................8

*Siry Inv., L.P. v. Farkhondehpour*,
 45 Cal. App. 5th 1098 (2020) ...................................................................6

*Tatung Co. Ltd. v. Hsu*,
 2015 WL 11089493 (C.D. Cal. Oct. 22, 2015) ..................................3, 4

*United States v. Fiander*,
 547 F.3d 1036 (9th Cir. 2008) ..................................................................3

*United States v. Flores*,
 901 F.3d 1150 (9th Cir. 2018) ..................................................................7

*United States v. Valera*,
 845 F.2d 923 (11th Cir. 1988) ..................................................................4

*Verdugo-Gonzalez v. Holder*,
 581 F.3d 1059 (9th Cir. 2009) ..................................................................8

**Statutes and Rules**

18 U.S.C.
 § 1962 .........................................................................................................2

Cal. Pen. Code
 § 484(a) ......................................................................................................5
 § 496(a) ......................................................................................................8

Cal. Civ. Code
 § 47(b) ........................................................................................................8

Fed. R. Civ. P.
 Rule 8(a) .....................................................................................................5
 Rule 9(b) ............................................................................................1, 4, 5

- iii -

## I.    INTRODUCTION

The Motion to Dismiss (the "Motion" or "Mot.," Dkt. No. 49) filed by Platinum Fortune, LP ("Platinum") demonstrates that Plaintiff's Second Amended Complaint (the "SAC") does nothing to cure the defects identified by the Court's September 22, 2021 order dismissing the prior complaint (the "Dismissal Order," Dkt. No. 47).  As the redline attached to the Motion shows ("Mot. Ex. 1," Dkt. No. 49-2), the SAC does not allege any new specific facts to show Platinum conspired to violate RICO, or somehow aided in the purported "theft" of a business entity, and therefore those claims should again be dismissed, this time with prejudice.  The Motion further demonstrates that the SAC's "new" interference claims (that Plaintiff could have averred in its prior two complaints, but withheld until now), are equally contrived, and must also be dismissed.

Plaintiff's Opposition brief (the "Opposition" or "Opp.") does nothing to rebut the Motion's arguments, and instead spends pages arguing the SAC's rambling, incoherent allegations are not internally inconsistent, an argument that fails on its face.  The Opposition also asks the Court to give Plaintiff leave to amend yet again, but cannot even speculate as to how it could cure its conclusory accusations against Platinum, a corporate entity that is not alleged to have done anything to damage Plaintiff.

For the reasons set forth in the Motion and as further discussed below, Plaintiff's claims against Platinum should now be dismissed with prejudice.

## II.    ARGUMENT

### A.    The SAC's RICO Claim Must Be Dismissed

The Motion demonstrates that Plaintiff's RICO claim against Platinum must be dismissed because the SAC fails to satisfy Rule 9(b), and just as in the First Amended Complaint (the "FAC"), does not allege any specific facts to show Platinum ever used "stolen funds," made "clear bribes," or did anything specific in furtherance of the purported conspiracy.  *See* Mot. at 4-6, citing *Semegen v.*

- 1 -

*Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (dismissing complaint for "absence of particularity with respect to the alleged fraudulent participation" of individual named defendants).  Indeed, as in the FAC, the SAC's Third Cause of Action for Conspiracy to Violate RICO does not even mention Platinum by name, or attempt to explain what Platinum purportedly did to further the alleged conspiracy.  *See* SAC ¶¶ 121-127.

The Opposition insists the allegations to show the "overt wrongful acts in furtherance of the conspiracy by Platinum and Platinum's agents and representatives" are found at SAC ¶¶ 46, 58, 71 and 106(g).  *See* Opp. at 5, n. 2. But those cited paragraphs do not allege anything specific about Platinum at all. For example, while the SAC now claims that Yan, "through Platinum … took over control of the Jagex board of directors" (SAC ¶ 46), there are no facts alleged to show when or <u>how</u> Yan could have done such a thing, or how he purportedly did it "through Platinum."  Likewise, while Plaintiff now claims that that Platinum (or maybe MacArthur) "falsely claimed to have purchased Jagex" (*id.* ¶¶ 46, 71, 106(g)), there are no facts alleged to show what specific statement was false, why it was false at the time it was made, or how the allegedly false statement purportedly furthered the alleged conspiracy.[1]  As before, Plaintiff's allegations against Platinum are founded entirely on "conclusory legal statements," and thus are not averred with "sufficient particularity to state a claim under 18 U.S.C. § 1962 against Platinum."  Dismissal Order at 5.

Unable to specifically allege that Platinum ever committed on overt act in furtherance of the alleged conspiracy, Plaintiff argues it can establish a RICO conspiracy claim merely by alleging that Platinum agreed to "participate in the

---

[1] Plaintiff speculates that Platinum's allegedly false statement "create[d] market confusion and thereby … place[d] a cloud on the title of Jagex to prevent Plaintiff from negotiating a highly profitable re-sale of Jagex to interested third parties" (SAC ¶ 46), but there are no facts alleged to support that speculation.

conspiracy to violate RICO."  Opp. at 3, citing *Salinas v. United States*, 522 U.S. 52 (1997).  To make that showing, however, Plaintiff was required to specifically allege Platinum "knew about and agreed to facilitate [a] scheme" where another defendant committed the two predicate acts.  *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008), citing *United States v. Driver*, 535 F.3d 424, 432 (6th Cir. 2008) (plaintiff must establish defendant "agreed that someone would commit two predicate acts").  *See also Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense.") (citation omitted); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("[C]onspiracy to violate RICO requires a showing that defendant was aware of the essential nature and scope of the enterprise and intended to participate in it.") (citation omitted).

Here, though, there are no specific facts alleged to show that any defendant violated a substantive provision of RICO, let alone specific allegations to show "how, why, when, or where [Platinum] agreed to participate" in that purported violation.  *Chung Goh v. Prima Fin. Grp., Inc.*, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017).  Put simply, Plaintiff does not allege the specific facts required to "show the existence of an agreement between two or more persons that clearly amounted to a meeting of the minds," *Bulan v. JP Morgan Chase Bank*, 2011 WL 13266527, at *7 (N.D. Cal. Apr. 6, 2011), and "[c]onclusory allegations that RICO defendants entered into an agreement are insufficient" to state a claim as a matter of law, *Lavigne v. Herbalife, LTD*, 2019 WL 6721619, at *9 (C.D. Cal. Oct. 22, 2019) (citation omitted).  *See also Baumer*, 8 F.3d at 1346 ("a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is [alleged to be] somehow affiliated with a RICO enterprise.") (citation omitted).

Plaintiff cites *Tatung Co. Ltd. v. Hsu*, 2015 WL 11089493 (C.D. Cal. Oct. 22, 2015) to argue that Platinum's agreement to violate RICO can be inferred from the

- 3 -

alleged violations of its affiliates, which are purportedly alleged at SAC at ¶¶ 28-29, 33-35, 38-39, 46-47, 74-75 and 83-88.  *See* Opp. at 6.  But as the Redline shows (*see* Mot. Ex. 1), those cited allegations are largely repeated verbatim from the dismissed FAC, and none of them assert any specific facts from which Platinum's alleged agreement to violate RICO can be inferred.  In other words, in sharp contrast to the complaint in *Tatung*, there are no "specific allegations in the [SAC to] adequately allege [Platinum's] agreement to violate RICO with the [listed affiliates] through an agreement to conduct the affairs of the Enterprise through a pattern of racketeering activity."  2015 WL 11089493, at *9.  And again, "[a]ssociation, alone, with the enterprise is, of course, insufficient for violation of RICO."  *United States v. Valera*, 845 F.2d 923, 929 (11th Cir. 1988).

Plaintiff further argues that Platinum's agreement to violate RICO can be inferred because Platinum was "create[ed]" and "designed to further the fraudulent Enterprise."  Opp. at 7, citing *Tatung*, 2015 WL 11089493, at *9.   But the SAC alleges that "Platinum was formed … by Plaintiff" for the "purpose of managing the bidding and acquisition of SHNT and Jagex." (SAC ¶ 28).  As the Motion shows, contradictory allegations like those permeate the SAC, and cannot be used to state a RICO conspiracy claim as a matter of law.  Mot. at 6, citing *Moenig v. Bank of Am., N.A.*, 2015 WL 2185245, at *4 (E.D. Cal. May 8, 2015).

**B.     Plaintiff's Legally and Logically Untenable "Stolen Goods" Claim Must Also Be Dismissed**

As the Motion predicted (Mot. at 6-7), Plaintiff argues that its Section 496 stolen property claim is no longer subject to Rule 9(b) because the SAC deletes the "incorporation by reference" language from its Tenth Cause of Action.  *See* Mot. Ex. 1 at SAC ¶ 167.  As Plaintiff would have it, the Tenth Cause of Action now "does not incorporate all prior allegations," and is based on a "discrete set of facts relevant to the Penal Code claim that does not involve any allegations of fraud." Opp. at 9-10 (emphasis in original).

- 4 -

But that deletion instantly dooms the stolen property claim, because the pleadings under that Count (SAC ¶¶ 167-175) are entirely conclusory, and offer only the bare assertions that Platinum "aided in the sale of Jagex to The Carlyle Group" (*id.* ¶ 172), and "knew that Jagex had been stolen" (*id.* ¶ 173), allegations that do not begin to state a claim even under the lesser standard of Rule 8(a). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Tacitly admitting that the allegations contained within the Tenth Cause of Action are insufficient to state a Section 496 claim, Plaintiff cites to <u>exactly those allegations that are purportedly no longer incorporated by reference</u> to argue in favor of the claim. *See* Opp. at 10-11, citing SAC ¶¶ 30-40, 45, 47, 55, 57-61, 68-69, 73. Plaintiff insists that "[n]owhere in the SAC does [it] allege that Platinum made any misrepresentation or engaged in any fraudulent conduct" that would trigger Rule 9(b) (*see* Opp. at 12), but the SAC plainly alleges that to perpetrate its alleged theft, "Platinum … <u>falsely claimed</u> to have purchased Jagex" (*id.* ¶ 71, emphasis added), used "<u>fraudulent</u> back-dated purported amendments to the original SPA between Platinum and SHNT" (*id.* ¶ 46, emphasis added). As the Court held in the Dismissal Order, those allegations sound in fraud and thus invoke the heightened pleading standards of Rule 9(b) (Dismissal Order at 5), a standard that the SAC again utterly fails to satisfy. *See* Motion at 7-9.

As the Motion explains, even if Rule 9(b) did not require dismissal of the stolen goods claim, the claim would nonetheless fail under Rule 8(a), for at least three reasons.

First, Jagex is not stolen property under California law, nor could it be. Plaintiff's only explanation for how Jagex was "stolen" is that "Huarong breached its contractual obligation" to sell Jagex to Plaintiff, and thus Huarong's transfer of its 55% interest in Jagex to Minsheng was a "breach of contract." Opp. at 14. But theft is not defined under the California Penal Code to include a breach of contract. *See* Cal. Pen. Code § 484(a). Moreover, Plaintiff cannot cite a single decision

- 5 -

1    where a court has applied Section 496 to the purported theft of a business entity.

2    *Cf. GEC US 1 LLC v. Frontier Renewables, LLC*, 2016 WL 4677585, at *9 (N.D.

3    Cal. Sept. 7, 2016) ("The allegations in the FAC establish only that defendants

4    misconstrue Frontier's ownership of Wright Solar and that Frontier has publicly

5    taken the position that it owns 100% of Wright Solar. Without more, allowing this

6    claim to proceed on these allegations would sanction the use of the penal code to

7    redress ordinary business disputes over ownership interests – an untenable result.").

8           Instead, courts have routinely rejected the application of Section 496 where,

9    as here, "the plaintiff merely alleges and proves conduct involving fraud,

10   misrepresentation, conversion, or some other type of theft that does not involve

11   'stolen' property." *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1134

12   (2020) (collecting cases). Plaintiff argues *Siry* has no precedential effect because

13   the decision is on appeal (Opp. at 15), but the cases on which its reasoning is

14   premised certainly do, and federal courts in California have continued to follow its

15   reasoning in the interim. *See Instant Brands, Inc. v. DSV Sols.*, Inc., 2020 WL

16   5947914, at *4-5 (C.D. Cal. Aug. 20, 2020); *Hueso v. Select Portfolio Servicing,*

17   *Inc.*, 527 F. Supp. 3d 1210, 1231-1232 (S.D. Cal. 2021). Plaintiff also claims "a

18   recent federal decision reject[s] *Siry*" (Opp. at 15, citing *Otte v. Naviscent, LLC*,

19   624 B.R. 883, 913 (N.D. Cal. 2021), but in fact *Otte* buttresses *Siry*, and holds that

20   money constitutes "property" under Section 496 because it is capable of being

21   "stolen," that is, "taken through the crime of embezzlement." *Otte*, 624 B.R. at

22   913. *See also People v. Kunkin*, 9 Cal. 3d 245, 250 (1973) (Section 496 "include[s]

23   property which has been obtained not only by theft by larceny (i.e., stealing) but

24   also by such other forms of theft as embezzlement."). Business entities like Jagex,

25   however, cannot be "stolen," "taken" or "embezzled," and thus Plaintiff's claims

26   are necessarily grounded in allegations of fraud, misrepresentation, and conversion,

27   which is an impermissible use of the Penal Code. *See Siry*, 45 Cal. App. 5th at

28   1137 (2020) ("Because imposing treble damages in cases alleging fraud,

- 6 -

1    misrepresentation, breach of fiduciary duty and other torts outside the context of

2    stolen property does nothing to advance the legislative purpose to 'dry up the

3    market for stolen goods,' we cannot even infer any legislative intent to affect this

4    significant change.") (internal quotation marks omitted).

5         Plaintiff's analogy to the situation where a person "walk[s] into a store,

6    pick[s] up an item, and run[s] out of the store without paying for it" (Opp. at 12)

7    only proves the point.  Plaintiff calls that situation "a theft [that] does not involve

8    any fraud" (*id.*), but it is ridiculous to assert that Platinum (or anyone else) could

9    "pick up" a business entity, which exists only as a matter of contract, and "run out

10   of the store without paying for it." *Id.*  Thus, Plaintiff is left alleging that Huarong

11   breached a contract with Plaintiff, which is not theft, and that Platinum "<u>purported</u>

12   to acquire Jagex through theft" (SAC ¶ 172, emphasis added), which also is not

13   theft, and therefore completely fails to explain how Jagex became stolen property.

14        Second, even if Jagex could be "stolen property," which it cannot, the SAC

15   fails to plead facts showing that Platinum had knowledge that it was stolen.  *See*

16   Motion at 8.  Plaintiff argues that Platinum's knowledge was "circumstantial and

17   deductive" (Opp. at 16), but "[u]nder § 496 a defendant cannot be convicted of

18   receiving stolen property unless it had <u>actual knowledge</u> that the goods it received

19   or sold were in fact stolen," *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at

20   *12 (C.D. Cal. Aug. 4, 2016) (emphasis added), a standard the SAC does not begin

21   to satisfy.  *See also United States v. Flores*, 901 F.3d 1150, 1161 (9th Cir. 2018)

22   ("The mens rea element [of § 496] requires actual knowledge of or belief that the

23   property is stolen."); *People v. Tessman*, 223 Cal. App. 4th 1293, 1302 (2014) ("A

24   necessary element of [§ 496] is actual knowledge that the property received or sold

25   was stolen").  Plaintiff insists Platinum "knew exactly what was happening with

26   Jagex at all times through Yan" (Opp. at 16), but there are no allegations to show

27   that Yan and Platinum ever communicated about Jagex, at all.  Plaintiff also claims

28   Platinum knew Jagex was "stolen" through "discussions with Huarong" (Opp. at

- 7 -

16), but that claim completely misstates the SAC, which alleges that "<u>Plaintiff</u> also entered negotiations directly with Huarong for a private sale of its 55% ownership interest in SHNT and Jagex."  SAC ¶ 54 (emphasis added).

Third, the SAC fails to allege facts to show that Platinum aided or abetted Carlyle's purported receipt of stolen property.  *See* Motion at 8-9.  Plaintiff disputes the Motion's showing that it must establish Platinum gave "substantial" assistance to Carlyle, arguing that standard is used only in "routine aiding and abetting claim[s]."  Opp. at 16.  But "routine aiding and abetting" is exactly what is alleged here.  *See* SAC ¶ 167 ("Both Platinum and Macarthur, for their own financial gain, have … (2) aided and abetted the other parties in selling, receiving and/or concealing stolen property").  Indeed, Plaintiff's own cited authority (Opp. at 14) holds that there is "a categorical match between the full range of conduct proscribed under section 496(a) of the California Penal Code and the generic definition of a theft offense," which "includes the crime of 'aiding and abetting' a theft offense." *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009).

Of course, even if Plaintiff were not required to establish that Platinum gave substantial assistance to Carlyle in its purported theft, the SAC does not allege that Platinum provided <u>any</u> assistance to a theft at all.  At most, Plaintiff alleges that Platinum somehow "aided" Carlyle in its receipt of Jagex (a supposedly stolen asset) by "creat[ing] a cloud on title on Jagex's shares that resulted in litigation in England."  SAC ¶ 71. Plaintiff does not even try to explain how litigation over ownership rights could abet a theft,[2] though California's litigation privilege, Cal. Civ. Code § 47(b), bars claims based on litigation in any event.  *Beroiz v. Wahl*, 84 Cal. App. 4th 485, 494 (2000) (holding that California's litigation privilege applies to foreign jurisdictions); *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1140 (1996)

---

[2] If anything, if Plaintiff had any legitimate claim of ownership in Jagex, the initiation of a litigation in England over title to Jagex should have benefited <u>Plaintiff</u>, not Carlyle.

- 8 -

("The privilege applies to any publication or other communication required or permitted by law in the course of a judicial or quasi-judicial proceeding to achieve the objects of the litigation, whether or not the publication is made in the courtroom or in court pleadings, and whether or not any function of the court or its officers is involved").

Finally, Plaintiff does not contest, and therefore concedes, that the SAC fails to explain how Platinum's purported "aid" in Carlyle's receipt of Jagex proximately injured Plaintiff, such that Plaintiff even has standing under Section 496(c).  *See* Mot. at 8.  As the SAC alleges, Huarong breached its contract with Plaintiff and instead sold its interest in Jagex to Minsheng, who then sold that interest to Carlyle.  SAC ¶ 69.  Nowhere does Plaintiff explain why these transfers (which Platinum was admittedly never a part of) would not have occurred without Platinum's allegedly "bogus claim to ownership" (SAC ¶ 74), especially inasmuch as Plaintiff now admits Platinum "had no legal right to any shares in Jagex" (*id.* ¶ 73).

## C.     The SAC's "New" Interference Claims Fail To State A Claim Against Platinum

Plaintiff's Opposition tacitly admits that both of its tortious interference claims against Platinum depend on Yan's actions being imputed to Platinum, insofar as Platinum is not alleged to have directly interfered with Plaintiff's purported contract with Huarong.  *See*, *e.g.*, Opp. at 17 ("Platinum through Yan bribed Huarong to breach its contractual obligations to Plaintiff…" (emphasis added)); SAC ¶¶ 57-67 (section entitled "Huarong Breached the Contract with Plaintiff due to Yan's interference," detailing Yan's, not Platinum's, alleged interference).  But as the Motion demonstrates, the SAC does not allege any facts to show that Yan ever acted as Platinum's agent or that his actions could otherwise be imputed to the entity.  *See Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, 2016 WL 9045621, at *3 (C.D. Cal. Jan. 28, 2016) ("Facts establishing the[] elements [of an agency relationship] must be pled to proceed against a defendant

- 9 -

1    based on an agency theory.").

2          Indeed, as the Motion further demonstrates (Mot. at 10-11), the SAC is

3    internally contradictory and asserts both that Yan was the agent of Platinum and

4    that Platinum was the agent of Yan.  *Compare, e.g.,* SAC at. ¶ 72 ("Platinum and

5    MacArthur had such knowledge through Yan, who was controlling both") *with id.* ¶

6    148 ("Defendant Yan, individually and acting as agent for Platinum").  Because an

7    individual cannot simultaneously control the person it is supposedly being

8    controlled by, "these contradictory factual allegations do not meet Rule 8's

9    requirement of a 'short and plain statement.'"  *See Moenig*, 2015 WL 2185245, at

10   *4.  Plaintiff's citation to decisions holding that an individual may act as both a

11   principal for itself and an agent for others does nothing to change that analysis.

12   Opp. at 18.

13         Plaintiff's poorly repurposed interference claims fail for other reasons, as

14   well.  First, the SAC never even generally alleges that Platinum intended to disrupt

15   Plaintiff's purported contractual or economic relations, an essential element to both

16   claims.  *See* Mot. at 11-12.  And though both interference claims incorporate by

17   reference the preceding 145 paragraphs of the Complaint, Plaintiff's failure to

18   delineate Platinum's involvement (as opposed to Yan) is a prime example of

19   impermissible shotgun pleading.  *See Bristol SL Holdings, Inc. v. Cigna Health Life*

20   *Ins. Co.*, WL 2027955, at *2 (C.D. Cal. Jan. 6, 2020) ("Shotgun pleadings are

21   pleadings that overwhelm defendants with an unclear mass of allegations and make

22   it difficult or impossible for defendants to make informed responses to the

23   plaintiff's allegations. They are unacceptable.").

24         Lastly, while Plaintiff now contends that the SAC's Eight Cause of Action

25   for tortious interference with prospective economic relations is grounded in

26   Plaintiff's purported contractual relations with <u>Huarong</u> (Opp. at 19-20), the SAC

27   pleads that claim based on Plaintiff's purported relations with <u>Minsheng</u> (SAC ¶¶

28   154-161).  Accordingly, Plaintiff entirely fails to oppose (and thus concedes)

- 10 -

1  Platinum's arguments regarding the SAC's allegations regarding Minsheng.  *See*

2  Mot. at 12.

3  **III.  CONCLUSION**

4          For the reasons articulated in the Dismissal Order and further discussed

5  above, the SAC's allegations against Platinum should be dismissed in full.  Because

6  the SAC represents Plaintiff's third failed attempt to state a claim, the claims should

7  now be dismissed with prejudice.

8

9  Dated:  November 22, 2021          Respectfully submitted,

10                                     ORRICK, HERRINGTON & SUTCLIFFE LLP

11

12                                     By:  _____/s/ James N. Kramer_____

13                                              JAMES N. KRAMER
                                             Attorneys for Defendant
14                                           PLATINUM FORTUNE, LP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -